**No. 25-3386**

# In the United States Court of Appeals for the Ninth Circuit

René Quiñonez, and Movement Ink, LLC,

*Plaintiffs-Appellants,*

v.

United States of America, et al.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of California
No. 3:22-cv-03195-WHO
Hon. William H. Orrick

## APPELLANTS' EXCERPTS OF RECORD
## VOLUME 7 of 13

Anna M. Barvir
Michel & Associates, P.C.
180 E. Ocean Blvd., Ste. 200
Long Beach, CA 90802
(562) 216-4444
abarvir@michellawyers.com

Jaba Tsitsuashvili
Patrick Jaicomo
Bobbi Taylor
Anya Bidwell
Institute for Justice
901 N. Glebe Rd., Ste. 900
Arlington, VA 22203
(703) 682-9320
jtsitsuashvili@ij.org

*Counsel for Plaintiffs-Appellants*

Jaba Tsitsuashvili (CA Bar No. 309012)
Patrick Jaicomo* (MI Bar No. P-75705)
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Phone: (703) 682-9320
Fax: (703) 682-9321
jtsitsuashvili@ij.org
pjaicomo@ij.org

*Admitted pro hac vice

Anna M. Barvir (CA Bar No. 268728)
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
Phone: (562) 216-4444
Fax: (562) 216-4445
abarvir@michellawyers.com

*Counsel for Plaintiffs*

Stephanie Hinds (CA Bar No 154284)
*United States Attorney*
Michael Lo (NY Bar No. 4325163)
*Chief, Civil Division*
Michael A. Keough (NY Bar No. 5199666)
*Assistant United States Attorney*
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-7234
michael.keough@usdoj.gov

*Counsel for the United States*

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

RENÉ QUIÑONEZ and MOVEMENT INK LLC,

Plaintiffs,

v.

DOES 1 through 5, United States Postal Service and United States Postal Inspection Service officials in their individual capacities,

Defendants.

Case No. 3:22-cv-3195-WHO

**STIPULATED REQUEST TO FILE FIRST AMENDED COMPLAINT**

Judge: Hon. William H. Orrick

Plaintiffs and the United States respectfully stipulate under Federal Rule of Civil Procedure 15(a)(2) and Local Rule 7-12 that Plaintiffs may file a First Amended Complaint containing the amendments set forth below. Pursuant to Local Rule 10-1, Plaintiffs' First Amended Complaint is being filed simultaneously with this stipulation.

Should the Court require its leave for Plaintiffs to file the First Amended Complaint, Plaintiffs respectfully request that the Court "freely give leave" because "justice so requires," Fed.

R. Civ. P. 15(a)(2), for the following reasons: Plaintiffs recently obtained the names of the previously unnamed Doe defendants, on September 2, 2022; the time for Plaintiffs to bring a claim under the Federal Tort Claims Act recently accrued, on September 12, 2022; the Court previously granted case management adjustments based on Plaintiffs' anticipated filing of an amended complaint, *see* ECF 27, 29; and the United States does not object to Plaintiffs' proposed amendments.

Plaintiffs and the United States stipulate that Plaintiffs may amend their Complaint (ECF 1) to include:

1. Named individuals as Defendants, originally named as "Does 1 through 5," and the acts alleged to have been committed by each of those individuals;

2. The United States of America as a Defendant with respect to claims arising under the Federal Tort Claims Act; and

3. An allegation related to the six-month agency exhaustion requirement under the Federal Tort Claims Act.

Plaintiffs and the United States further stipulate that any responsive pleading by the United States or a named individual defendant shall be due 30 days after service of the Amended Complaint on all defendants pursuant to Rule 4 of the Federal Rules of Civil Procedure.

Plaintiffs and the United States further stipulate that the motion to dismiss filed by the United States (ECF 25) will be moot upon the filing of the Amended Complaint.

This stipulation is not intended to waive and does not waive any defenses on behalf of any defendant, including but not limited to any defense that may be raised under Rule 12 of the Federal Rules of Civil Procedure. The stipulated request to file and Plaintiffs' request in the alternative for leave to file are supported by the accompanying declaration by Plaintiffs' counsel.

Dated: September 21, 2022

s/ Jaba Tsitsuashvili
Jaba Tsitsuashvili (CA Bar No. 309012)
Patrick Jaicomo* (MI Bar No. P-75705)
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Phone: (703) 682-9320
Fax: (703) 682-9321
jtsitsuashvili@ij.org
pjaicomo@ij.org

*Admitted pro hac vice

Anna M. Barvir (CA Bar No. 268728)
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Fax: (562) 216-4445
abarvir@michellawyers.com

*Counsel for Plaintiffs*

s/ Michael A. Keough**
Stephanie Hinds (CA Bar No 154284)
*United States Attorney*
Michael Lo (NY Bar No. 4325163)
*Chief, Civil Division*
Michael A. Keough (NY Bar No. 5199666)
*Assistant United States Attorney*
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-7234
michael.keough@usdoj.gov

*Counsel for the United States*

***Pursuant to Civ. L.R. 5-1(h)(3), the filer of the document has obtained approval from this signatory.*

PURSUANT TO STIPULATION, IT IS SO ORDERED.

Dated: September 23, 2022

Hon. William H. Orrick United States District Court Judge

United States District Court
Northern District of California

Jaba Tsitsuashvili (CA Bar No. 309012)
Patrick Jaicomo* (MI Bar No. P-75705)
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Phone: (703) 682-9320
Fax: (703) 682-9321
jtsitsuashvili@ij.org
pjaicomo@ij.org

*Admitted pro hac vice

Anna M. Barvir (CA Bar No. 268728)
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
Phone: (562) 216-4444
Fax: (562) 216-4445
abarvir@michellawyers.com

*Counsel for Plaintiffs*

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

RENÉ QUIÑONEZ and MOVEMENT INK LLC,

Plaintiffs,

v.

UNITED STATES OF AMERICA; and JEFF AGSTER, EVA CHAN, STEPHEN FAJARDO, MARK HODGES, ROBIN LEE, and DOES 1 through 2, United States Postal Service and United States Postal Inspection Service officials in their individual capacities,

Defendants.

Case No. 3:22-cv-3195-WHO

**FIRST AMENDED COMPLAINT**

**DEMAND FOR JURY TRIAL**

Judge: Hon. William H. Orrick

United States District Court
Northern District of California

**INTRODUCTION**

1. The Fourth Amendment guarantees us the right to be secure in our papers and effects. That promise is illusory if postal officials can seize or search personal property without an individualized, articulable basis to believe that the property contains contraband or evidence of a crime. Worse yet would be if postal officials could seize or search personal property because of its political message. That is why the Constitution requires postal officials—like other government officials—to get a judicial warrant based on probable cause before seizing or searching personal property. It is also why the Constitution, federal statutes, and state statutory and common law provide judicially enforceable remedies for violations of these rights, against both individual federal officials and the United States.

2. In this case, postal officials did not have reasonable suspicion—let alone probable cause and a warrant (or probable cause and exigent circumstances)—when they seized four properly addressed and neatly taped brown boxes sent to various cities by René Quiñonez and Movement Ink LLC, which is René's small, family-run screen-printing business in Oakland, California that, like businesses small and large across the country, regularly ships well-bound brown boxes from one location to cities nationwide.

3. As confirmed by the postal official Defendants' internal notes memorializing the seizures and searches of those boxes, millions of packages shipped every year share the unexceptional characteristics of René's and Movement Ink's packages that Defendants relied on to justify their suspicionless, warrantless seizures and searches. And those same internal notes make clear that Defendants knew the packages coming from Movement Ink contained—in Defendants' words—"BLM MASKS." So Defendants appear to have violated not just the Fourth Amendment, but also the First Amendment, while committing several common law torts in the process.

4. The wisdom of our constitutional design is that it knows significant harms befall the public when government officials exceed constitutional bounds and violate rights. That is exactly what happened here. Defendants' unconstitutional and tortious seizures and searches have inflicted several significant harms, including reputational harms on René and Movement Ink that have cost

United States District Court
Northern District of California

them not only the opportunity to expand their labor of love but also significant business growth.

5. First, the packages were delayed by 48 hours. That is no trivial matter. They contained thousands of Covid-protective masks when the pandemic was raging and mass protests over police violence were happening every day. Second, these political mask shipments' recipients were not only deprived the Covid-protective effects of the masks, but also expression of the political messages emblazoned on the masks. Third, René and Movement Ink—for whom these shipments were not just commercial transactions—similarly had their rights to political speech stymied. Finally, René and Movement Ink lost the goodwill and business relationships they earned over a decade of building community trust based on their activism and their quality products—costing them the opportunity to do substantial business not only with the recipients of the masks, but other existing and potential partners too. And all those partners lost a trusted supplier because of the uncertainty and air of suspicion created by Defendants' baseless seizures and searches of René's and Movement Ink's political mask shipments.

6. For all these reasons, René and Movement Ink seek to hold personally accountable the postal and law enforcement officials responsible for their injuries under the Constitution, *Bivens*, the Westfall Act (28 U.S.C. § 2679(b)(2)(A)), and California law, as well as the federal government as those officials' employer under the Federal Tort Claims Act.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1346, 1356, 1357, 1367, 2201, 2202, 2674, and 2679 and the United States Constitution.

8. Venue is proper in the Northern District of California under 28 U.S.C. § 1391.

**PARTIES**

9. Plaintiff René Quiñonez is an adult resident of California. He is the majority owner and manager of Plaintiff Movement Ink LLC.

10. Plaintiff Movement Ink LLC is a California limited liability company. Its majority owner and manager is Plaintiff René Quiñonez.

11. Defendant United States of America is the national federal government established

United States District Court
Northern District of California

by the United States Constitution and liable for the acts of its officials pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346 and 2671–2680.

12. Defendants Jeff Agster, Eva Chan, Stephen Fajardo, Mark Hodges, Robin Lee, and Doe Defendants 1 through 2 are officials of the United States Postal Service and the United States Postal Inspection Service who are responsible for the acts, violations, and injuries alleged in this action. They are sued in their individual capacities under the Constitution, *Bivens*, the Westfall Act (28 U.S.C. § 2679(b)(2)(A)), and California law. The acts, violations, and injuries for which they are responsible in this action also form the basis for liability of Defendant United States of America under the Federal Tort Claims Act.

13. Plaintiffs initially sued Defendants Agster, Chan, Fajardo, Hodges, and Lee as Doe defendants in this action because, in the months leading up to the filing of this action, the federal government refused to disclose Defendants' names in response to Plaintiffs' Freedom of Information Act (FOIA) requests and their FOIA appeal seeking those names. The federal government agreed to disclose those names in September 2022 in lieu of Plaintiffs seeking pre-service expedited discovery in this Court to ascertain those names. Plaintiffs have retained two additional Doe defendants in the case out of an abundance of caution because, as explained below, the records produced by the federal government suggest that other officials may also have been responsible for the acts, violations, and injuries alleged in this action.

## STATEMENT OF FACTS

14. René Quiñonez is a family man, entrepreneur, organizer, businessperson, activist, former youth gang prevention nonprofit director, and current executive director of a youth outreach and job skills development nonprofit. All those aspects of his personality find expression in Movement Ink LLC, the small screen-printing business he and his family have spent the last decade building into a community presence, known for its brand of activism-inspired business practices and relationships.

15. From its inception, as the company's name indicates, Movement Ink has been publicly allied and involved with social justice and activism movements, organizations, nonprofits,

United States District Court
Northern District of California

and individual organizers.

16. René and Movement Ink have spent years cultivating their brand, their image, and their reputation in these spaces, including community involvement and social media presence.

17. As a result of years of commitment to causes, trust-building, and high-quality screen-printing, René and Movement Ink successfully developed business relationships with activist movements, organizations, nonprofits, and individual organizers, who relied on René and Movement Ink for various screen-printing needs for years leading up to and into 2020, regularly ordering products ranging from t-shirts, to hoodies, to onesies for toddlers.

18. René and Movement Ink methodically built and carved out this niche, making René very proud of what he and his family have built.

19. The business of screen-printing is hard, labor-intensive work. So is the work of community building and activism. But both, especially together, are a labor of love for René and his family.

20. From 2016 to 2019, Movement Ink's gross annual sales grew steadily.

21. So did its reputation—until that long-earned reputation was dashed one day by Defendants' baseless seizures and searches of Movement Ink's most high-profile, lucrative, and promising shipments.

22. Defendants' seizures and searches of those shipments impeded Movement Ink's opportunities for business and activism expansion.

23. Defendants' seizures and searches of those shipments also dashed René's newfound dream that he might actually be able to retire someday.

24. In the early months of the Covid-19 pandemic, from March to May 2020, Movement Ink was able to weather the economy's lockdowns and downturns, thanks to increases in certain types of orders, including, most notably, screen-printed Covid-protective masks.

25. Thanks to the years René and Movement Ink spent promoting and developing social justice causes and organizations, they were the supplier of choice when organizers around the country began ordering Covid-protective masks bearing political messages for the mass protests that

broke out following the police killings of George Floyd and Breonna Taylor in 2020.

26. In the last week of May and the first week of June 2020, René, his family, and at least a dozen employees and volunteers worked around the clock to print, pack, and ship thousands of Covid-protective masks around the country. René could count on two hands the number of hours he slept over the course of several days.

27. The masks that René, Movement Ink, his family, and their employees and volunteers printed were emblazoned with core political messages, such as "STOP KILLING BLACK PEOPLE" and "DEFUND POLICE."

28. To be sure, Movement Ink was getting paid for its products. But this hard work and dedication was borne of much more than a profit motive; it was borne of a desire to contribute to the protest movement and express René's and Movement Ink's support for the messages they were printing.

29. Before the seizures and searches of the four political mask shipments at issue in this case, René and Movement Ink fulfilled three orders for thousands of political masks to organizers in Atlanta, Los Angeles, and Oakland.

30. René shipped those three orders, as well as the four at issue in this case, from the same postal facility and using similar packaging methods as he has done for years on behalf of Movement Ink.

31. The postal officials at that facility know René and his business. They were friendly with each other, and the postal officials used to joke about René's and Movement Ink's last-minute rush shipments and the high prices he paid for next-day deliveries. But after the seizures and searches at issue in this case, their friendly relationship ended; the postal officials became standoffish and quiet whenever René entered.

32. René's and Movement Ink's regular practice was to write on each box that it came from Movement Ink and what it contained, such as "masks."

33. This was done to avoid confusion because Movement Ink shared a workspace with another company, and also so that after boxes were taped up it would be obvious what was in them

United States District Court
Northern District of California

and where René or another Movement Ink employee should deliver or ship them.

34. The initial three political mask shipments to Atlanta, Los Angeles, and Oakland, which René sent about a week before the four at issue in this case, were packaged no differently or sent in any manner different than the subsequent four whose seizures and searches are at issue in this case.

35. Like the initial three political mask shipments, René and Movement Ink shipped the four packages at issue in this case in nondescript, securely packaged, cleanly taped boxes. The boxes were full; one or more of them may have had a bulge where masks were squeezed in tightly.

36. As usual, all of the political mask shipments were marked or identified with Movement Ink as the sender, and likely had their contents handwritten on the side, in accordance with René's and Movement Ink's regular practice.

37. Like the initial three political mask shipments, René and Movement Ink shipped the four packages at issue in this case using priority mail express overnight shipping—paying a premium to get the masks delivered as quickly as possible because the protests and Covid were both raging every day.

38. But unlike so many Movement Ink shipments before—including the initial three political mask shipments—the four that René and Movement Ink shipped on June 3, 2020 did not arrive on time.

39. This was no snafu in mail processing or an unavoidable or mistaken delay.

40. Rather, all four political mask shipments were, as indicated by the Postal Service's online tracking system, "Seized by Law Enforcement" (i.e., by Defendants) in Oakland from June 3 to June 5—the day after the political mask shipments were already supposed to be arriving to organizers in Brooklyn, DC, Minneapolis, and St. Louis.

41. René and the shipments' intended recipients were greeted by this cryptic "Alert" on the Postal Service's online tracking system, which said only that René's and Movement Ink's

political mask shipments were "Seized by Law Enforcement":




42. The four political mask shipments would not end up arriving at their destinations until June 6 (two days and several protests late), having been held by Defendants without reasonable suspicion, probable cause, or a warrant for more than 24 hours.

43. René and the mask recipients were all confused, dismayed, and disrupted in their critical work. Instead of focusing on printing and shipping political Covid-protective masks and other apparel, René and Movement Ink had to waste time figuring out why their innocuous packages were in the hands of law enforcement, and how to get them released, while also fielding questions, concerns, and even accusations from partners, community members, and social media commenters.

44. Similarly, the recipient organizers had to divert attention and resources to the seizure issue, having to consult legal counsel and field calls about this distraction, and having to post on social media about this latest disruption to their organizing efforts and their health and safety efforts.

45. René, Movement Ink, and their partners were left wondering why these Covid-protective political masks were in the hands of law enforcement officials instead of on the faces of political protestors.

46. This uncertainty had a catastrophic impact on the reputation and the business that René and Movement Ink had worked so hard and so long to build.

47. As evidenced by the seven political mask shipments already made, plus three more sent on June 4, and commitments for more going forward on a rolling basis, René and Movement

United States District Court
Northern District of California

Ink were poised to become regular, national suppliers of activist Covid-protective masks and other activist apparel for protest movements and organizers.

48. Instead, Defendants' baseless seizures and searches of René's and Movement Ink's political mask shipments created a pall of suspicion, distraction, uncertainty, and confusion around René and Movement Ink.

49. René and Movement Ink suffered severe reputational harm because of Defendants' baseless seizures and searches of René's and Movement Ink's political mask shipments.

50. Talks for future orders were terminated, and René could not even get a call back from many of his partners—including not only his new partners, but preexisting ones too.

51. For example, in addition to the recipients of the political mask shipments at issue in this case, who terminated talks for future orders, at least three other groups who had regularly ordered from and collaborated with René and Movement Ink ceased their partnerships and cut off all ties with René and Movement Ink.

52. Those partnerships have not revived, and that business has not returned.

53. René's and Movement Ink's substantial, steady revenue opportunity and their opportunity to do substantial, steady work supporting movements and causes they are deeply committed to were dead on arrival because of Defendants' baseless seizures and searches of René's and Movement Ink's political mask shipments.

54. Defendants' baseless seizures and searches also caused and continue to cause René significant emotional and mental distress—not just because of his and Movement Ink's financial and reputational hits, but because he and Movement Ink have been effectively shut out of a movement and a community that they spent (and continue to spend) years investing their time and energy in.

55. All of the harms described in paragraphs 37 through 54 and 112 are the direct and sole result and effect of Defendants' baseless, suspicionless, unconstitutional, and tortious seizures and searches of René's and Movement Ink's political mask shipments.

56. Feeling targeted, surveilled, despondent, and desperate to find out what happened,

United States District Court
Northern District of California

René worked with the office of his Congressperson, Rep. Barbara Lee, who submitted an official inquiry to the Postal Service.

57. The Postal Service responded in a letter that:

> *On June 3, 2020, the parcels in question were detained solely because the external physical characteristics of the parcels were consistent with parcels in other non-related instances that were confirmed to contain nonmailable matter, specifically controlled substances. The parcels in question were not detained based on the sender or recipient, because they were associated with organizations involved in protests or any other First Amendment protected activity, or because it was known the parcels contained masks or any articles containing statements supporting any group or position. Furthermore, there were no external characteristics of the parcels that indicated they contained masks or were associated with any specific organization.*
>
> *The customer in this matter did not contact the Inspection Service, but instead contacted the news media. On the morning of June 5, when the Inspection Service became aware of the media stories on the matter and what the contents of the parcels were, we immediately took action to rectify the situation. At 7:07 AM the parcels were placed back in the mail stream. The parcels were delivered on the following day to the intended destinations. Additionally, the USPIS assisted Mr. Quinonez with obtaining a full refund for the cost of the mailings.*

58. The Postal Service's letter to Rep. Lee's office asserts that USPIS became aware of the contents of the parcels on June 5. But as described in paragraph 77, Defendants' own seizure notes explain that they knew the packages contained—in their words—"BLM MASKS."

United States District Court
Northern District of California

59. The Postal Service's letter to Rep. Lee's office asserts that USPIS assisted René in obtaining a refund for the cost of the mailings. That is not true. René and Movement Ink did not receive refunds.

60. On information and belief, the recipients of the packages may have received refunds of the shipping costs from USPIS.

61. In any event, a refund could and would do nothing to account for any of the harms described in paragraphs 37 through 54 and 112, which remain and will remain entirely unremedied.

62. René's and Movement Ink's political mask shipments resembled lawful packages that legitimate businesses, including Movement Ink, ship on a regular basis.

63. The four political mask shipments were in neatly taped, nondescript brown boxes with the identities and locations of the sender and the recipients clearly labeled, in accordance with the Postal Service's own public guidance.

64. René remains at a loss to understand how that could give rise to a federal law enforcement seizure of his and Movement Ink's personal property.

65. According to the Postal Service's letter to Rep. Lee's office, Defendants asserted that they could seize, search, and hold for over 24 hours René's and Movement Ink's property because of the packages' "external physical characteristics".

66. According to the Postal Service's letter to Rep. Lee's office, Defendants asserted that they could seize, search, and hold for over 24 hours René's and Movement Ink's property based on "external physical characteristics" that apply to millions of packages shipped around the country every day, and to packages shipped by René and Movement Ink on a regular basis.

67. The "external physical characteristics" that Defendants relied on apply to millions of packages shipped around the country every day, and to packages shipped by René and Movement Ink on a regular basis.

68. René also remains shocked that Defendants did nothing for more than 24 hours to confirm or dispel any concerns or suspicions, namely by either confirming the identity of the sender and/or seeking a judicial warrant based on an attempt to demonstrate probable cause.

69. For more than 24 hours, Defendants did not attempt to confirm the identity or location of the sender of the packages.

70. For more than 24 hours, Defendants did not seek or obtain a warrant.

71. For more than 24 hours, Defendants did not establish that the packages posed an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence would be destroyed, or an articulable risk that a particular suspect would escape.

72. Instead, it appears from the Postal Service's letter to Rep. Lee's office that Defendants abandoned the political mask shipments to sit indefinitely until the issue became national news.

73. Had the issue not become national news, the packages would have remained seized even longer.

74. Defendants' own notes regarding the seizures and searches of René's and Movement Ink's packages, which René obtained through Freedom of Information Act requests to the Postal Service, confirm that Defendants did not have an individualized, articulable basis for seizing the political mask shipments, and did not obtain a warrant for their continued seizure.

75. Defendants' notes make clear that Defendants seized the political mask shipments without reasonable suspicion, because there was no individualized, particularized basis to believe the packages contained contraband or evidence of a crime, which is not satisfied by the nondescript, common characteristics of the packages at issue.

76. Defendants' notes make clear that Defendants left the packages unattended for over 24 hours without efforts to confirm or dispel whatever assumptions attended their seizures of the packages, which violates the Fourth Amendment even if the initial seizures could be justified by reasonable suspicion to conduct brief investigatory seizures.

77. Defendants' notes make clear that Defendants knew the contents of the package were, in Defendants' words, "BLM MASKS."

78. It is not clear whether Defendants knew that the packages contained—in Defendants' words—"BLM MASKS" before seizing the packages.

United States District Court
Northern District of California

79. If Defendants knew that the packages contained—in Defendants' words—"BLM MASKS" before seizing the packages, Defendants violated the First Amendment by seizing packages because of their political messages.

80. If Defendants learned the contents of the packages after seizing them, by searching them, Defendants violated the Fourth Amendment by searching the packages in the absence of consent, probable cause plus a warrant, or probable cause plus exigent circumstances.

81. There was and is no indication anywhere—nor could there be—that the packages posed an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence would be destroyed, or an articulable risk that a particular suspect would escape.

82. The contemporaneous notes of Defendant Hodges explain that Defendant Chan initially seized, detained, and searched the packages.

83. Defendant Hodges's notes suggest that in addition to Defendant Chan, other officials may have been responsible for initially seizing, detaining, and searching the packages; so they are named in this action as Doe Defendants 1 through 2.

84. Defendant Hodges's notes explain Defendant Chan's reasons for seizing, detaining, and searching the packages: they were "four big boxes" with "green handwriting," and "she remembered them being overlabeled with DHQ's address, and stated she thought they were sent from Eureka."

85. Those characteristics, individually and together, are innocuous. They do not amount to reasonable suspicion or probable cause justifying the seizure, detention, or search of the packages. And no reasonable official would think that those characteristics amount to reasonable suspicion or probable cause justifying the seizure, detention, or search of the packages.

86. Nevertheless, according to Defendant Hodges's notes: Defendant Chan (and potentially one or both of Doe Defendants 1 through 2) seized, detained, and searched the packages based on those obviously innocuous characteristics; Defendants Agster, Fajardo, and Lee (and potentially one or both of Doe Defendants 1 through 2) kept the packages seized and detained for approximately 24 hours (and apparently, according to USPS's letter to Rep. Lee, would have kept

United States District Court
Northern District of California

them seized and detained indefinitely had the seizures not made national news); and Defendant Hodges kept the packages seized and detained even longer, and went on to order that they be searched before being placed back in the mailstream for delivery.

87. According to his notes, Defendant Hodges kept the packages seized and detained and ordered that they be searched before being placed back in the mailstream for delivery despite immediately recognizing that "it was not possible the parcels were sent from Eureka."

88. Defendant Hodges and Defendant Fajardo (and potentially one or both of Doe Defendants 1 through 2) then completed Parcel Detail Worksheets for each package. Those worksheets list Defendants' reasons for the packages' seizures, detentions, and searches.

89. The reasons in the worksheets appear to be post hoc justifications for the packages' seizures, detentions, and searches because the reasons in the worksheets go beyond the reasons Defendant Chan gave for the packages' seizures, detentions, and searches, described above in paragraph 84. Alternatively, those additional reasons may have been given to Defendant Hodges by one or more of the other Defendants (including potentially one or both of Doe Defendants 1 through 2) but not memorialized in his notes.

90. In any event, even the reasons in the worksheets make clear that at no point did any Defendant have reasonable suspicion (let alone probable cause) to conduct the initial seizures of the political mask shipments, to keep them detained, or to search them.

91. Defendants contend in the worksheets that the packages were suspicious because of (1) "bulging contents," (2) "frequently mailed parcels from the same sender/address," (3) "parcel destination is a known drug trafficking area," (4) "taped or glued on all seams," and (5) "parcel mailed from a known drug source area."

92. Defendants' assertions are not reasonable suspicion because they do not satisfy the Fourth Amendment's demand for individualized circumstances suggesting that a particular, articulable crime is occurring in order to justify a seizure.

93. Defendants' assertions justifying the initial seizures of the political mask shipments apply to (1) any United States business or individual (2) that regularly sends padded items (like

pillows, or vases wrapped in bulging padding) (3) in well-bound boxes (4) from just about any major United States city to any other major United States city.

94. On information and belief, Defendants have no comprehensive list of which cities are or are not "known drug trafficking area[s]" or "known drug source area[s]."

95. On information and belief, Defendants do not rely on any definition of "known drug trafficking area" or "known drug source area."

96. On information and belief, most if not all American cities are either "known drug trafficking area[s]" or "known drug source area[s]."

97. If Defendants' assertions were sufficient to satisfy reasonable suspicion, then (1) any United States business or individual (2) that regularly sends padded items (like pillows, or vases wrapped in bulging padding) (3) in well-bound boxes (4) from just about any major United States city to any other major United States city is continually subjecting themselves to arbitrary seizure of their property by federal postal officials.

98. Indeed, one of Defendants' assertions purporting to justify the packages' seizures, detentions, and searches—i.e., that the packages were "taped or glued on all seams"—purports to deem it suspicious if a shipper complies with the Postal Service's *own public guidance*, which advises: "If you are mailing a very heavy or very dense item, start with a sturdy box, pack the contents securely with a strong material for bracing to prevent shifting, and *tape all the edges with reinforced tape*" (emphasis added).

99. The one additional purported justification for seizing, detaining, and searching the political mask shipments—i.e., that they may have resembled packages recently "sent from Eureka" that contained contraband—is also spurious.

100. That additional assertion regarding Eureka did not rise to reasonable suspicion sufficient to conduct a brief investigatory seizure.

101. Defendants Chan, Agster, Fajardo, and Lee (and potentially one or both of Doe Defendants 1 through 2) could have confirmed or dispelled that assertion regarding Eureka without first seizing the packages.

United States District Court
Northern District of California

102. After seizing the packages, Defendants could have immediately determined that the packages were from Movement Ink in Oakland, not anyone in Eureka.

103. Indeed, Defendant Hodges recognized that immediately, as any reasonable official would. But he still delayed the packages' release, ordered them searched, and appears to have concocted post hoc justifications for their seizures, detentions, and searches.

104. After determining that the packages were from Movement Ink in Oakland and not anyone in Eureka, Defendants could have—and should have—immediately released the packages.

105. Even assuming that Defendants' assertion regarding Eureka gave rise to reasonable suspicion sufficient to conduct a brief investigatory seizure (which it did not), and that Defendants could not confirm or dispel that assertion without first seizing the packages (which there is no reason to think they could not), Defendants still obviously violated the Fourth Amendment because as soon as they conducted that seizure, they could and should have immediately determined that the packages were from Movement Ink in Oakland, not anyone in Eureka, and immediately released them.

106. Defendants did not release the packages or seek a warrant for over 24 hours.

107. Even if Defendants determined that the packages were from Movement Ink in Oakland, not anyone in Eureka, but still remained convinced they could not release the packages, they still obviously violated the Fourth Amendment because in order to continue the seizure of the packages beyond that brief investigatory period or to search the packages, they needed probable cause and a warrant.

108. Defendants did not have probable cause.

109. Defendants did not obtain a warrant.

110. Instead, they searched the packages and/or left the packages unattended for more than 24 hours.

111. Defendants would apparently have let the packages sit indefinitely had René and Movement Ink not generated a national news story about Defendants' violations of their Fourth and First Amendment rights.

112. In addition to the harms and injuries described in paragraphs 37 through 54, Defendants' baseless seizures and searches of René's and Movement Ink's political mask shipments have directly resulted in the chilling of René's and Movement Ink's political speech in two ways: (1) René and Movement Ink are less active and vocal on social media and in the community because of the pall of suspicion and fear of surveillance that Defendants' conduct has cast over them, and (2) René and Movement Ink have lost substantial opportunities to express their political views through their work because Defendants' conduct has significantly depressed their client base and their apparel production, which have always been built on the basis of political activism and speech.

113. On March 11, 2022, the Postal Service and the Postal Inspection Service confirmed their receipt of—and the sufficiency of—René's and Movement Ink's administrative claims for relief under the Federal Tort Claims Act. More than six months later, the agencies have not acted on those claims, which amounts to a denial of the claims pursuant to 28 U.S.C. § 2675(a).

## CLAIMS FOR RELIEF

### Count 1
### Trespass to Chattels
### Against Defendant United States of America
### Under the Federal Tort Claims Act

114. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 113.

115. Under the Federal Tort Claims Act, Defendant United States of America is liable for the tortious acts, violations, and injuries alleged in this action caused by Defendants Agster, Chan, Fajardo, Hodges, Lee, and Doe Defendants 1 through 2 because they caused those tortious acts, violations, and injuries while acting on behalf of a federal agency in an official capacity.

116. Plaintiffs timely and properly exhausted the Federal Tort Claims Act's administrative claims process.

117. Plaintiffs shipped four packages of their personal property via the United States Postal Service. Plaintiffs retained ownership rights and interests and possessory rights and interests in their packages until the packages were delivered to their intended recipients.

118. Without consent, cause, or legal authority, Defendants intentionally interfered with

Plaintiffs' possession, right to possess, use, right to use, enjoyment, and right to enjoy their personal property by seizing, detaining, and searching Plaintiffs' personal property.

119. Defendants' conduct caused: severe reputational harms to Plaintiffs; Plaintiffs' packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs; significant loss of Plaintiffs' ongoing and future revenue; and ongoing emotional and mental distress to René.

120. Plaintiffs are entitled to compensatory damages for their injuries caused by Defendants' unconstitutional and tortious conduct.

**Count 2**
**Interference with Contractual Relations**
**Against Defendant United States of America**
**Under the Federal Tort Claims Act**

121. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 113.

122. Under the Federal Tort Claims Act, Defendant United States of America is liable for the tortious acts, violations, and injuries alleged in this action caused by Defendants Agster, Chan, Fajardo, Hodges, Lee, and Doe Defendants 1 through 2 because they caused those tortious acts, violations, and injuries while acting on behalf of a federal agency in an official capacity.

123. Plaintiffs timely and properly exhausted the Federal Tort Claims Act's administrative claims process.

124. Plaintiffs had contracts with protest organizers for the rush printing and immediate delivery of four packages containing Covid-protective masks emblazoned with political speech.

125. Defendants knew, should have known, or had reason to know of those contracts, based on Plaintiffs' regular business activities and the packages' shipping information (including the sender and recipients) that Plaintiffs provided to Defendants.

126. Defendants' intentional seizures, detentions, and searches of the packages, as well as Defendants' "Alert" to the recipients of the packages that the packages were "seized by law enforcement," prevented Plaintiffs' performance of the contracts or made Plaintiffs' performance of the contracts more expensive or difficult.

127. Defendants' intentional seizures, detentions, and searches of the packages, as well as Defendants' "Alert" to the recipients of the packages that the packages were "seized by law enforcement," were certain or substantially certain to prevent Plaintiffs' performance of the contracts or make Plaintiffs' performance of the contracts more expensive or difficult.

128. Defendants' conduct caused: severe reputational harms to Plaintiffs; Plaintiffs' packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs; significant loss of Plaintiffs' ongoing and future revenue; and ongoing emotional and mental distress to René.

129. Plaintiffs are entitled to compensatory damages for their injuries caused by Defendants' unconstitutional and tortious conduct.

**Count 3**
**Interference with Prospective Economic Relations**
**Against Defendant United States of America**
**Under the Federal Tort Claims Act**

130. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 113.

131. Under the Federal Tort Claims Act, Defendant United States of America is liable for the tortious acts, violations, and injuries alleged in this action caused by Defendants Agster, Chan, Fajardo, Hodges, Lee, and Doe Defendants 1 through 2 because they caused those tortious acts, violations, and injuries while acting on behalf of a federal agency in an official capacity.

132. Plaintiffs timely and properly exhausted the Federal Tort Claims Act's administrative claims process.

133. Plaintiffs had contracts and other economic relationships with protest organizers for the rush printing and immediate delivery of four packages containing Covid-protective masks emblazoned with political speech and for similar ongoing and regular orders in the future.

134. Defendants knew, should have known, or had reason to know of those contracts or those future economic benefits, based on Plaintiffs' regular business activities, the packages' shipping information (including the sender and recipients) that Plaintiffs provided to Defendants, and the ongoing nature of the need for Covid-protective masks and political protests.

United States District Court
Northern District of California

135. Defendants intentionally seized, detained, and searched the packages and issued an "Alert" to the recipients of the packages that the packages were "seized by law enforcement."

136. Defendants' intentional seizures, detentions, and searches of the packages, as well as Defendants' "Alert" to the recipients of the packages that the packages were "seized by law enforcement," were certain or substantially certain to prevent Plaintiffs' performance of the contracts or make Plaintiffs' performance of the contracts more expensive or difficult and to disrupt similar ongoing and regular orders in the future.

137. Defendants' conduct caused: severe reputational harms to Plaintiffs; Plaintiffs' packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs; significant loss of Plaintiffs' ongoing and future revenue; and ongoing emotional and mental distress to René.

138. Plaintiffs are entitled to compensatory damages for their injuries caused by Defendants' unconstitutional and tortious conduct.

**Count 4**
**Unreasonable Seizures in Violation of the Fourth Amendment**
**Against Defendants Agster, Chan, Fajardo, Hodges, Lee, and Doe Defendants 1 through 2**
**Under *Bivens***

139. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 113.

140. Plaintiffs shipped four packages of their personal property via the United States Postal Service. Plaintiffs retained ownership rights and interests and possessory rights and interests in their packages until the packages were delivered to their intended recipients.

141. Defendants seized Plaintiffs' personal property in violation of the Fourth Amendment, delaying the packages' arrival to their intended recipients by 48 hours, during which time the recipients were in dire need of the packages. Defendants' clearly and obviously unjustified and unreasonable seizures of Plaintiffs' packages caused the packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs.

142. Seizures of personal property without reasonable suspicion, probable cause, or a warrant are obviously unconstitutional.

United States District Court
Northern District of California

143. It is clearly established and every reasonable postal official has fair warning that warrantless seizures of personal property are presumptively unconstitutional.

144. It is clearly established and every reasonable postal official has fair warning that postal officials must have at least reasonable suspicion to conduct brief investigatory seizures of personal property.

145. It is clearly established and every reasonable postal official has fair warning that postal officials do not have reasonable suspicion to conduct brief investigatory seizures of personal property in the absence of individualized circumstances suggesting that a particular, articulable crime is occurring.

146. It is clearly established and every reasonable postal official has fair warning that postal officials must have probable cause that a particular, articulable crime is occurring and either a warrant or exigent circumstances to seize personal property beyond the time needed for a brief investigatory seizure based on reasonable suspicion.

147. It is clearly established and every reasonable postal official has fair warning that postal officials do not have probable cause in the absence of individualized circumstances suggesting, to a higher degree of certainty than reasonable suspicion, that a particular, articulable crime is occurring.

148. It is clearly established and every reasonable postal official has fair warning that to forgo the warrant requirement, postal officials must have probable cause and face exigent circumstances.

149. It is clearly established and every reasonable postal official has fair warning that postal officials do not face exigent circumstances in the absence of an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence will be destroyed, or an articulable risk that a particular suspect will escape.

150. It is clearly established and every reasonable postal official has fair warning that postal officials violate the Fourth Amendment by (1) seizing personal property in the absence of reasonable suspicion based on individualized circumstances suggesting that a particular, articulable

United States District Court
Northern District of California

crime is occurring or (2) seizing property beyond the time needed for a brief investigatory seizure arising from reasonable suspicion in the absence of probable cause (individualized circumstances suggesting, to a higher degree of certainty than reasonable suspicion, that a particular, articulable crime is occurring) plus either a warrant or an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence will be destroyed, or an articulable risk that a particular suspect will escape.

151. It is clearly established and every reasonable postal official has fair warning that reasonable suspicion cannot be based on assumed facts that the postal official could dispel before conducting an investigatory seizure of personal property.

152. It is clearly established and every reasonable postal official has fair warning that reasonable suspicion cannot be based on characteristics that, individually and as a whole, apply to personal property that has no connection to criminal activity.

153. It is clearly established and every reasonable postal official has fair warning that probable cause cannot be based on an assumed fact that purportedly formed the basis for reasonable suspicion but was dispelled while conducting an investigatory seizure of personal property.

154. It is clearly established and every reasonable postal official has fair warning that probable cause cannot be based on characteristics that, individually and as a whole, apply to personal property that has no connection to criminal activity.

155. It is clearly established and every reasonable postal official has fair warning that probable cause to believe that drugs are present is not, in the absence of a risk of their destruction, an exigent circumstance that permits forgoing the warrant requirement.

156. Defendants seized Plaintiffs' personal property without reasonable suspicion. The characteristics they purportedly relied on to seize Plaintiffs' packages (i.e., that the packages were allegedly bulging, were taped all around, were going from one purported drug activity city to another, and were sent by a frequent shipper) apply, individually and as a whole, to entirely innocent packages that businesses small and large—including Plaintiffs themselves—ship throughout the country every single day. Every reasonable postal official should know that those characteristics do

not give rise to reasonable suspicion because those characteristics are not individualized circumstances suggesting that a particular, articulable crime (or any crime) is occurring.

157. Even with the additional allegation that Plaintiffs' packages resembled some from Eureka that had contained drugs, Defendants did not have reasonable suspicion to conduct an investigatory seizure because (1) that additional factual assumption did not give rise to reasonable suspicion and (2) even if it did, Defendants could have easily dispelled that factual assumption without seizing Plaintiffs' packages simply by confirming that the packages came from Movement Ink LLC in Oakland (not any suspicious sender from Eureka).

158. Even if the totality of circumstances did arise to reasonable suspicion (which it did not) and Defendants could not dispel that suspicion before seizing Plaintiffs' packages for a brief investigatory seizure, that suspicion was (or should have been) dispelled immediately by Defendants' confirming that Plaintiffs' packages came from Movement Ink LLC in Oakland (not any suspicious sender from Eureka). Therefore, Defendants should have released Plaintiffs' packages immediately upon that realization, or sought a warrant in order to continue their seizure of the packages or to search the packages.

159. But Defendants did not release Plaintiffs' packages immediately upon that realization. And they did not get a warrant (nor could they have, because these circumstances did not amount to probable cause) or have any reason to believe that Plaintiffs' packages posed an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence would be destroyed (after all, it was in Defendants' possession), or an articulable risk that a particular suspect would escape. Nevertheless, Defendants continued to seize and even search Plaintiffs' packages.

160. Therefore, at every step, Defendants violated Plaintiffs' clearly established right to be free from unreasonable seizures of their personal property.

161. Defendants are line-level postal officials operating in the common and recurrent sphere of garden-variety postal inspections and law enforcement with respect to personal property.

162. Plaintiffs have no alternative remedies for their injuries caused by Defendants, and

United States District Court
Northern District of California

Plaintiffs' claims do not implicate separation of powers, national security considerations, or any other special factors counseling hesitation against a damages remedy for Plaintiffs' injuries.

163. Defendants' conduct caused: severe reputational harms to Plaintiffs; Plaintiffs' packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs; significant loss of Plaintiffs' ongoing and future revenue; and ongoing emotional and mental distress to René.

164. Plaintiffs are entitled to compensatory damages for their injuries caused by Defendants' seizures of their personal property.

**Count 5**
**Unreasonable Seizures in Violation of the Fourth Amendment**
**Against Defendants Agster, Chan, Fajardo, Hodges, Lee, and Doe Defendants 1 through 2**
**Under the Westfall Act (28 U.S.C. § 2679(b)(2)(A))**

165. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 113.

166. Plaintiffs shipped four packages of their personal property via the United States Postal Service. Plaintiffs retained ownership rights and interests and possessory rights and interests in their packages until the packages were delivered to their intended recipients.

167. Defendants seized Plaintiffs' personal property in violation of the Fourth Amendment, delaying the packages' arrival to their intended recipients by 48 hours, during which time the recipients were in dire need of the packages. Defendants' clearly and obviously unjustified and unreasonable seizures of Plaintiffs' packages caused the packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs.

168. Seizures of personal property without reasonable suspicion, probable cause, or a warrant are obviously unconstitutional.

169. It is clearly established and every reasonable postal official has fair warning that warrantless seizures of personal property are presumptively unconstitutional.

170. It is clearly established and every reasonable postal official has fair warning that postal officials must have at least reasonable suspicion to conduct brief investigatory seizures of personal property.

United States District Court
Northern District of California

171. It is clearly established and every reasonable postal official has fair warning that postal officials do not have reasonable suspicion to conduct brief investigatory seizures of personal property in the absence of individualized circumstances suggesting that a particular, articulable crime is occurring.

172. It is clearly established and every reasonable postal official has fair warning that postal officials must have probable cause that a particular, articulable crime is occurring and either a warrant or exigent circumstances to seize personal property beyond the time needed for a brief investigatory seizure based on reasonable suspicion.

173. It is clearly established and every reasonable postal official has fair warning that postal officials do not have probable cause in the absence of individualized circumstances suggesting, to a higher degree of certainty than reasonable suspicion, that a particular, articulable crime is occurring.

174. It is clearly established and every reasonable postal official has fair warning that to forgo the warrant requirement, postal officials must have probable cause and face exigent circumstances.

175. It is clearly established and every reasonable postal official has fair warning that postal officials do not face exigent circumstances in the absence of an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence will be destroyed, or an articulable risk that a particular suspect will escape.

176. It is clearly established and every reasonable postal official has fair warning that postal officials violate the Fourth Amendment by (1) seizing personal property in the absence of reasonable suspicion based on individualized circumstances suggesting that a particular, articulable crime is occurring or (2) seizing property beyond the time needed for a brief investigatory seizure arising from reasonable suspicion in the absence of probable cause (individualized circumstances suggesting, to a higher degree of certainty than reasonable suspicion, that a particular, articulable crime is occurring) plus either a warrant or an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence will be destroyed, or an articulable risk that a

United States District Court
Northern District of California

particular suspect will escape.

177. It is clearly established and every reasonable postal official has fair warning that reasonable suspicion cannot be based on assumed facts that the postal official could dispel before conducting an investigatory seizure of personal property.

178. It is clearly established and every reasonable postal official has fair warning that reasonable suspicion cannot be based on characteristics that, individually and as a whole, apply to personal property that has no connection to criminal activity.

179. It is clearly established and every reasonable postal official has fair warning that probable cause cannot be based on an assumed fact that purportedly formed the basis for reasonable suspicion but was dispelled while conducting an investigatory seizure of personal property.

180. It is clearly established and every reasonable postal official has fair warning that probable cause cannot be based on characteristics that, individually and as a whole, apply to personal property that has no connection to criminal activity.

181. It is clearly established and every reasonable postal official has fair warning that probable cause to believe that drugs are present is not, in the absence of a risk of their destruction, an exigent circumstance that permits forgoing the warrant requirement.

182. Defendants seized Plaintiffs' personal property without reasonable suspicion. The characteristics they purportedly relied on to seize Plaintiffs' packages (i.e., that the packages were allegedly bulging, were taped all around, were going from one purported drug activity city to another, and were sent by a frequent shipper) apply, individually and as a whole, to entirely innocent packages that businesses small and large—including Plaintiffs themselves—ship throughout the country every single day. Every reasonable postal official should know that those characteristics do not give rise to reasonable suspicion because those characteristics are not individualized circumstances suggesting that a particular, articulable crime (or any crime) is occurring.

183. Even with the additional allegation that Plaintiffs' packages resembled some from Eureka that had contained drugs, Defendants did not have reasonable suspicion to conduct an investigatory seizure because (1) that additional factual assumption did not give rise to reasonable

suspicion and (2) even if it did, Defendants could have easily dispelled that factual assumption without seizing Plaintiffs' packages simply by confirming that the packages came from Movement Ink LLC in Oakland (not any suspicious sender from Eureka).

184. Even if the totality of circumstances did arise to reasonable suspicion (which it did not) and Defendants could not dispel that suspicion before seizing Plaintiffs' packages for a brief investigatory seizure, that suspicion was (or should have been) dispelled immediately by Defendants' confirming that Plaintiffs' packages came from Movement Ink LLC in Oakland (not any suspicious sender from Eureka). Therefore, Defendants should have released Plaintiffs' packages immediately upon that realization, or sought a warrant in order to continue their seizure of the packages or to search the packages.

185. But Defendants did not release Plaintiffs' packages immediately upon that realization. And they did not get a warrant (nor could they have, because these circumstances did not amount to probable cause) or have any reason to believe that Plaintiffs' packages posed an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence would be destroyed (after all, it was in Defendants' possession), or an articulable risk that a particular suspect would escape. Nevertheless, Defendants continued to seize and even search Plaintiffs' packages.

186. Therefore, at every step, Defendants violated Plaintiffs' clearly established right to be free from unreasonable seizures of their personal property.

187. Defendants are line-level postal officials operating in the common and recurrent sphere of garden-variety postal inspections and law enforcement with respect to personal property.

188. Plaintiffs have no alternative remedies for their injuries caused by Defendants, and Plaintiffs' claims do not implicate separation of powers, national security considerations, or any other special factors counseling hesitation against a damages remedy for Plaintiffs' injuries.

189. Defendants' conduct caused: severe reputational harms to Plaintiffs; Plaintiffs' packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs; significant loss of Plaintiffs' ongoing and future revenue; and ongoing emotional

and mental distress to René.

190. Plaintiffs are entitled to compensatory damages for their injuries caused by Defendants' seizures of their personal property.

**Count 6**
**Unreasonable Seizures in Violation of the Fourth Amendment**
**Against Defendants Agster, Chan, Fajardo, Hodges, Lee, and Doe Defendants 1 through 2**
**Under the Fourth Amendment**

191. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 113.

192. Plaintiffs shipped four packages of their personal property via the United States Postal Service. Plaintiffs retained ownership rights and interests and possessory rights and interests in their packages until the packages were delivered to their intended recipients.

193. Defendants seized Plaintiffs' personal property in violation of the Fourth Amendment, delaying the packages' arrival to their intended recipients by 48 hours, during which time the recipients were in dire need of the packages. Defendants' clearly and obviously unjustified and unreasonable seizures of Plaintiffs' packages caused the packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs.

194. Seizures of personal property without reasonable suspicion, probable cause, or a warrant are obviously unconstitutional.

195. It is clearly established and every reasonable postal official has fair warning that warrantless seizures of personal property are presumptively unconstitutional.

196. It is clearly established and every reasonable postal official has fair warning that postal officials must have at least reasonable suspicion to conduct brief investigatory seizures of personal property.

197. It is clearly established and every reasonable postal official has fair warning that postal officials do not have reasonable suspicion to conduct brief investigatory seizures of personal property in the absence of individualized circumstances suggesting that a particular, articulable crime is occurring.

198. It is clearly established and every reasonable postal official has fair warning that



United States District Court
Northern District of California

postal officials must have probable cause that a particular, articulable crime is occurring and either a warrant or exigent circumstances to seize personal property beyond the time needed for a brief investigatory seizure based on reasonable suspicion.

199. It is clearly established and every reasonable postal official has fair warning that postal officials do not have probable cause in the absence of individualized circumstances suggesting, to a higher degree of certainty than reasonable suspicion, that a particular, articulable crime is occurring.

200. It is clearly established and every reasonable postal official has fair warning that to forgo the warrant requirement, postal officials must have probable cause and face exigent circumstances.

201. It is clearly established and every reasonable postal official has fair warning that postal officials do not face exigent circumstances in the absence of an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence will be destroyed, or an articulable risk that a particular suspect will escape.

202. It is clearly established and every reasonable postal official has fair warning that postal officials violate the Fourth Amendment by (1) seizing personal property in the absence of reasonable suspicion based on individualized circumstances suggesting that a particular, articulable crime is occurring or (2) seizing property beyond the time needed for a brief investigatory seizure arising from reasonable suspicion in the absence of probable cause (individualized circumstances suggesting, to a higher degree of certainty than reasonable suspicion, that a particular, articulable crime is occurring) plus either a warrant or an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence will be destroyed, or an articulable risk that a particular suspect will escape.

203. It is clearly established and every reasonable postal official has fair warning that reasonable suspicion cannot be based on assumed facts that the postal official could dispel before conducting an investigatory seizure of personal property.

204. It is clearly established and every reasonable postal official has fair warning that

United States District Court
Northern District of California

reasonable suspicion cannot be based on characteristics that, individually and as a whole, apply to personal property that has no connection to criminal activity.

205. It is clearly established and every reasonable postal official has fair warning that probable cause cannot be based on an assumed fact that purportedly formed the basis for reasonable suspicion but was dispelled while conducting an investigatory seizure of personal property.

206. It is clearly established and every reasonable postal official has fair warning that probable cause cannot be based on characteristics that, individually and as a whole, apply to personal property that has no connection to criminal activity.

207. It is clearly established and every reasonable postal official has fair warning that probable cause to believe that drugs are present is not, in the absence of a risk of their destruction, an exigent circumstance that permits forgoing the warrant requirement.

208. Defendants seized Plaintiffs' personal property without reasonable suspicion. The characteristics they purportedly relied on to seize Plaintiffs' packages (i.e., that the packages were allegedly bulging, were taped all around, were going from one purported drug activity city to another, and were sent by a frequent shipper) apply, individually and as a whole, to entirely innocent packages that businesses small and large—including Plaintiffs themselves—ship throughout the country every single day. Every reasonable postal official should know that those characteristics do not give rise to reasonable suspicion because those characteristics are not individualized circumstances suggesting that a particular, articulable crime (or any crime) is occurring.

209. Even with the additional allegation that Plaintiffs' packages resembled some from Eureka that had contained drugs, Defendants did not have reasonable suspicion to conduct an investigatory seizure because (1) that additional factual assumption did not give rise to reasonable suspicion and (2) even if it did, Defendants could have easily dispelled that factual assumption without seizing Plaintiffs' packages simply by confirming that the packages came from Movement Ink LLC in Oakland (not any suspicious sender from Eureka).

210. Even if the totality of circumstances did arise to reasonable suspicion (which it did not) and Defendants could not dispel that suspicion before seizing Plaintiffs' packages for a brief

United States District Court
Northern District of California

investigatory seizure, that suspicion was (or should have been) dispelled immediately by Defendants' confirming that Plaintiffs' packages came from Movement Ink LLC in Oakland (not any suspicious sender from Eureka). Therefore, Defendants should have released Plaintiffs' packages immediately upon that realization, or sought a warrant in order to continue their seizure of the packages or to search the packages.

211. But Defendants did not release Plaintiffs' packages immediately upon that realization. And they did not get a warrant (nor could they have, because these circumstances did not amount to probable cause) or have any reason to believe that Plaintiffs' packages posed an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence would be destroyed (after all, it was in Defendants' possession), or an articulable risk that a particular suspect would escape. Nevertheless, Defendants continued to seize and even search Plaintiffs' packages.

212. Therefore, at every step, Defendants violated Plaintiffs' clearly established right to be free from unreasonable seizures of their personal property.

213. Defendants are line-level postal officials operating in the common and recurrent sphere of garden-variety postal inspections and law enforcement with respect to personal property.

214. Plaintiffs have no alternative remedies for their injuries caused by Defendants, and Plaintiffs' claims do not implicate separation of powers, national security considerations, or any other special factors counseling hesitation against a damages remedy for Plaintiffs' injuries.

215. Defendants' conduct caused: severe reputational harms to Plaintiffs; Plaintiffs' packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs; significant loss of Plaintiffs' ongoing and future revenue; and ongoing emotional and mental distress to René.

216. Plaintiffs are entitled to compensatory damages for their injuries caused by Defendants' seizures of their personal property.

**Count 7**
**Unreasonable Searches in Violation of the Fourth Amendment**
**Against Defendants Agster, Chan, Fajardo, Hodges, Lee, and Doe Defendants 1 through 2**
**Under *Bivens***

217. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 113.

218. Plaintiffs shipped four packages of their personal property via the United States Postal Service. Plaintiffs retained ownership rights and interests and possessory rights and interests in their packages until the packages were delivered to their intended recipients.

219. Defendants seized and searched Plaintiffs' personal property in violation of the Fourth Amendment, delaying the packages' arrival to their intended recipients by 48 hours, during which time the recipients were in dire need of the packages. Defendants' clearly and obviously unjustified and unreasonable seizures and searches of Plaintiffs' packages caused the packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs.

220. Searches of personal property without reasonable suspicion, probable cause, or a warrant are obviously unconstitutional.

221. It is clearly established and every reasonable postal official has fair warning that warrantless searches of personal property are presumptively unconstitutional.

222. It is clearly established and every reasonable postal official has fair warning that postal officials must have probable cause that a particular, articulable crime is occurring and either a warrant or exigent circumstances to search personal property.

223. It is clearly established and every reasonable postal official has fair warning that postal officials do not have probable cause in the absence of individualized circumstances suggesting, to a higher degree of certainty than reasonable suspicion, that a particular, articulable crime is occurring.

224. It is clearly established and every reasonable postal official has fair warning that to forgo the warrant requirement, postal officials must have probable cause and face exigent circumstances.

225. It is clearly established and every reasonable postal official has fair warning that

United States District Court
Northern District of California

postal officials do not face exigent circumstances in the absence of an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence will be destroyed, or an articulable risk that a particular suspect will escape.

226. It is clearly established and every reasonable postal official has fair warning that postal officials violate the Fourth Amendment by searching personal property in the absence of probable cause (individualized circumstances suggesting, to a higher degree of certainty than reasonable suspicion, that a particular, articulable crime is occurring) and either a warrant or an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence will be destroyed, or an articulable risk that a particular suspect will escape.

227. It is clearly established and every reasonable postal official has fair warning that probable cause cannot be based on an assumed fact that purportedly formed the basis for reasonable suspicion but was dispelled while conducting an investigatory seizure of personal property.

228. It is clearly established and every reasonable postal official has fair warning that probable cause cannot be based on characteristics that, individually and as a whole, apply to personal property that has no connection to criminal activity.

229. It is clearly established and every reasonable postal official has fair warning that probable cause to believe that drugs are present is not, in the absence of a risk of their destruction, an exigent circumstance that permits forgoing the warrant requirement.

230. Defendants seized Plaintiffs' personal property without reasonable suspicion. The characteristics they purportedly relied on to seize Plaintiffs' packages (i.e., that the packages were allegedly bulging, were taped all around, were going from one purported drug activity city to another, and were sent by a frequent shipper) apply, individually and as a whole, to entirely innocent packages that businesses small and large—including Plaintiffs themselves—ship throughout the country every single day. Every reasonable postal official should know that those characteristics do not give rise to reasonable suspicion because those characteristics are not individualized circumstances suggesting that a particular, articulable crime (or any crime) is occurring.

231. Even with the additional allegation that Plaintiffs' packages resembled some from

Eureka that had contained drugs, Defendants did not have reasonable suspicion to conduct an investigatory seizure because (1) that additional factual assumption did not give rise to reasonable suspicion and (2) even if it did, Defendants could have easily dispelled that factual assumption without seizing Plaintiffs' packages simply by confirming that the packages came from Movement Ink LLC in Oakland (not any suspicious sender from Eureka).

232. Even if the totality of circumstances did arise to reasonable suspicion (which it did not) and Defendants could not dispel that suspicion before seizing Plaintiffs' packages for a brief investigatory seizure, that suspicion was (or should have been) dispelled immediately by Defendants' confirming that Plaintiffs' packages came from Movement Ink LLC in Oakland (not any suspicious sender from Eureka). Therefore, Defendants should have released Plaintiffs' packages immediately upon that realization, or sought a warrant in order to continue their seizure of the packages or to search the packages.

233. But Defendants did not release Plaintiffs' packages immediately upon that realization. And they did not get a warrant (nor could they have, because these circumstances did not amount to probable cause) or have any reason to believe that Plaintiffs' packages posed an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence would be destroyed (after all, it was in Defendants' possession), or an articulable risk that a particular suspect would escape. Nevertheless, Defendants continued to seize and even search Plaintiffs' packages.

234. Therefore, Defendants violated Plaintiffs' clearly established right to be free from unreasonable searches of their personal property.

235. Defendants are line-level postal officials operating in the common and recurrent sphere of garden-variety postal inspections and law enforcement with respect to personal property.

236. Plaintiffs have no alternative remedies for their injuries caused by Defendants, and Plaintiffs' claims do not implicate separation of powers, national security considerations, or any other special factors counseling hesitation against a damages remedy for Plaintiffs' injuries.

237. Defendants' conduct caused: severe reputational harms to Plaintiffs; Plaintiffs'

packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs; significant loss of Plaintiffs' ongoing and future revenue; and ongoing emotional and mental distress to René.

238. Plaintiffs are entitled to compensatory damages for their injuries caused by Defendants' searches of their personal property.

**Count 8**
**Unreasonable Searches in Violation of the Fourth Amendment**
**Against Defendants Agster, Chan, Fajardo, Hodges, Lee, and Doe Defendants 1 through 2**
**Under the Westfall Act (28 U.S.C. § 2679(b)(2)(A))**

239. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 113.

240. Plaintiffs shipped four packages of their personal property via the United States Postal Service. Plaintiffs retained ownership rights and interests and possessory rights and interests in their packages until the packages were delivered to their intended recipients.

241. Defendants seized and searched Plaintiffs' personal property in violation of the Fourth Amendment, delaying the packages' arrival to their intended recipients by 48 hours, during which time the recipients were in dire need of the packages. Defendants' clearly and obviously unjustified and unreasonable seizures and searches of Plaintiffs' packages caused the packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs.

242. Searches of personal property without reasonable suspicion, probable cause, or a warrant are obviously unconstitutional.

243. It is clearly established and every reasonable postal official has fair warning that warrantless searches of personal property are presumptively unconstitutional.

244. It is clearly established and every reasonable postal official has fair warning that postal officials must have probable cause that a particular, articulable crime is occurring and either a warrant or exigent circumstances to search personal property.

245. It is clearly established and every reasonable postal official has fair warning that postal officials do not have probable cause in the absence of individualized circumstances

suggesting, to a higher degree of certainty than reasonable suspicion, that a particular, articulable crime is occurring.

246. It is clearly established and every reasonable postal official has fair warning that to forgo the warrant requirement, postal officials must have probable cause and face exigent circumstances.

247. It is clearly established and every reasonable postal official has fair warning that postal officials do not face exigent circumstances in the absence of an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence will be destroyed, or an articulable risk that a particular suspect will escape.

248. It is clearly established and every reasonable postal official has fair warning that postal officials violate the Fourth Amendment by searching personal property in the absence of probable cause (individualized circumstances suggesting, to a higher degree of certainty than reasonable suspicion, that a particular, articulable crime is occurring) and either a warrant or an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence will be destroyed, or an articulable risk that a particular suspect will escape.

249. It is clearly established and every reasonable postal official has fair warning that probable cause cannot be based on an assumed fact that purportedly formed the basis for reasonable suspicion but was dispelled while conducting an investigatory seizure of personal property.

250. It is clearly established and every reasonable postal official has fair warning that probable cause cannot be based on characteristics that, individually and as a whole, apply to personal property that has no connection to criminal activity.

251. It is clearly established and every reasonable postal official has fair warning that probable cause to believe that drugs are present is not, in the absence of a risk of their destruction, an exigent circumstance that permits forgoing the warrant requirement.

252. Defendants seized Plaintiffs' personal property without reasonable suspicion. The characteristics they purportedly relied on to seize Plaintiffs' packages (i.e., that the packages were allegedly bulging, were taped all around, were going from one purported drug activity city to

United States District Court
Northern District of California

another, and were sent by a frequent shipper) apply, individually and as a whole, to entirely innocent packages that businesses small and large—including Plaintiffs themselves—ship throughout the country every single day. Every reasonable postal official should know that those characteristics do not give rise to reasonable suspicion because those characteristics are not individualized circumstances suggesting that a particular, articulable crime (or any crime) is occurring.

253. Even with the additional allegation that Plaintiffs' packages resembled some from Eureka that had contained drugs, Defendants did not have reasonable suspicion to conduct an investigatory seizure because (1) that additional factual assumption did not give rise to reasonable suspicion and (2) even if it did, Defendants could have easily dispelled that factual assumption without seizing Plaintiffs' packages simply by confirming that the packages came from Movement Ink LLC in Oakland (not any suspicious sender from Eureka).

254. Even if the totality of circumstances did arise to reasonable suspicion (which it did not) and Defendants could not dispel that suspicion before seizing Plaintiffs' packages for a brief investigatory seizure, that suspicion was (or should have been) dispelled immediately by Defendants' confirming that Plaintiffs' packages came from Movement Ink LLC in Oakland (not any suspicious sender from Eureka). Therefore, Defendants should have released Plaintiffs' packages immediately upon that realization, or sought a warrant in order to continue their seizure of the packages or to search the packages.

255. But Defendants did not release Plaintiffs' packages immediately upon that realization. And they did not get a warrant (nor could they have, because these circumstances did not amount to probable cause) or have any reason to believe that Plaintiffs' packages posed an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence would be destroyed (after all, it was in Defendants' possession), or an articulable risk that a particular suspect would escape. Nevertheless, Defendants continued to seize and even search Plaintiffs' packages.

256. Therefore, Defendants violated Plaintiffs' clearly established right to be free from unreasonable searches of their personal property.

257. Defendants are line-level postal officials operating in the common and recurrent sphere of garden-variety postal inspections and law enforcement with respect to personal property.

258. Plaintiffs have no alternative remedies for their injuries caused by Defendants, and Plaintiffs' claims do not implicate separation of powers, national security considerations, or any other special factors counseling hesitation against a damages remedy for Plaintiffs' injuries.

259. Defendants' conduct caused: severe reputational harms to Plaintiffs; Plaintiffs' packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs; significant loss of Plaintiffs' ongoing and future revenue; and ongoing emotional and mental distress to René.

260. Plaintiffs are entitled to compensatory damages for their injuries caused by Defendants' searches of their personal property.

**Count 9**
**Unreasonable Searches in Violation of the Fourth Amendment**
**Against Defendants Agster, Chan, Fajardo, Hodges, Lee, and Doe Defendants 1 through 2**
**Under the Fourth Amendment**

261. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 113.

262. Plaintiffs shipped four packages of their personal property via the United States Postal Service. Plaintiffs retained ownership rights and interests and possessory rights and interests in their packages until the packages were delivered to their intended recipients.

263. Defendants seized and searched Plaintiffs' personal property in violation of the Fourth Amendment, delaying the packages' arrival to their intended recipients by 48 hours, during which time the recipients were in dire need of the packages. Defendants' clearly and obviously unjustified and unreasonable seizures and searches of Plaintiffs' packages caused the packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs.

264. Searches of personal property without reasonable suspicion, probable cause, or a warrant are obviously unconstitutional.

265. It is clearly established and every reasonable postal official has fair warning that

United States District Court
Northern District of California

warrantless searches of personal property are presumptively unconstitutional.

266. It is clearly established and every reasonable postal official has fair warning that postal officials must have probable cause that a particular, articulable crime is occurring and either a warrant or exigent circumstances to search personal property.

267. It is clearly established and every reasonable postal official has fair warning that postal officials do not have probable cause in the absence of individualized circumstances suggesting, to a higher degree of certainty than reasonable suspicion, that a particular, articulable crime is occurring.

268. It is clearly established and every reasonable postal official has fair warning that to forgo the warrant requirement, postal officials must have probable cause and face exigent circumstances.

269. It is clearly established and every reasonable postal official has fair warning that postal officials do not face exigent circumstances in the absence of an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence will be destroyed, or an articulable risk that a particular suspect will escape.

270. It is clearly established and every reasonable postal official has fair warning that postal officials violate the Fourth Amendment by searching personal property in the absence of probable cause (individualized circumstances suggesting, to a higher degree of certainty than reasonable suspicion, that a particular, articulable crime is occurring) and either a warrant or an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence will be destroyed, or an articulable risk that a particular suspect will escape.

271. It is clearly established and every reasonable postal official has fair warning that probable cause cannot be based on an assumed fact that purportedly formed the basis for reasonable suspicion but was dispelled while conducting an investigatory seizure of personal property.

272. It is clearly established and every reasonable postal official has fair warning that probable cause cannot be based on characteristics that, individually and as a whole, apply to personal property that has no connection to criminal activity.

United States District Court
Northern District of California

273. It is clearly established and every reasonable postal official has fair warning that probable cause to believe that drugs are present is not, in the absence of a risk of their destruction, an exigent circumstance that permits forgoing the warrant requirement.

274. Defendants seized Plaintiffs' personal property without reasonable suspicion. The characteristics they purportedly relied on to seize Plaintiffs' packages (i.e., that the packages were allegedly bulging, were taped all around, were going from one purported drug activity city to another, and were sent by a frequent shipper) apply, individually and as a whole, to entirely innocent packages that businesses small and large—including Plaintiffs themselves—ship throughout the country every single day. Every reasonable postal official should know that those characteristics do not give rise to reasonable suspicion because those characteristics are not individualized circumstances suggesting that a particular, articulable crime (or any crime) is occurring.

275. Even with the additional allegation that Plaintiffs' packages resembled some from Eureka that had contained drugs, Defendants did not have reasonable suspicion to conduct an investigatory seizure because (1) that additional factual assumption did not give rise to reasonable suspicion and (2) even if it did, Defendants could have easily dispelled that factual assumption without seizing Plaintiffs' packages simply by confirming that the packages came from Movement Ink LLC in Oakland (not any suspicious sender from Eureka).

276. Even if the totality of circumstances did arise to reasonable suspicion (which it did not) and Defendants could not dispel that suspicion before seizing Plaintiffs' packages for a brief investigatory seizure, that suspicion was (or should have been) dispelled immediately by Defendants' confirming that Plaintiffs' packages came from Movement Ink LLC in Oakland (not any suspicious sender from Eureka). Therefore, Defendants should have released Plaintiffs' packages immediately upon that realization, or sought a warrant in order to continue their seizure of the packages or to search the packages.

277. But Defendants did not release Plaintiffs' packages immediately upon that realization. And they did not get a warrant (nor could they have, because these circumstances did not amount to probable cause) or have any reason to believe that Plaintiffs' packages posed an

articulable risk of immediate physical harm, an articulable risk that particular relevant evidence would be destroyed (after all, it was in Defendants' possession), or an articulable risk that a particular suspect would escape. Nevertheless, Defendants continued to seize and even search Plaintiffs' packages.

278. Therefore, Defendants violated Plaintiffs' clearly established right to be free from unreasonable searches of their personal property.

279. Defendants are line-level postal officials operating in the common and recurrent sphere of garden-variety postal inspections and law enforcement with respect to personal property.

280. Plaintiffs have no alternative remedies for their injuries caused by Defendants, and Plaintiffs' claims do not implicate separation of powers, national security considerations, or any other special factors counseling hesitation against a damages remedy for Plaintiffs' injuries.

281. Defendants' conduct caused: severe reputational harms to Plaintiffs; Plaintiffs' packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs; significant loss of Plaintiffs' ongoing and future revenue; and ongoing emotional and mental distress to René.

282. Plaintiffs are entitled to compensatory damages for their injuries caused by Defendants' searches of their personal property.

**Count 10**
**Retaliation in Violation of the First Amendment**
**Against Defendants Agster, Chan, Fajardo, Hodges, Lee, and Doe Defendants 1 through 2**
**Under *Bivens***

283. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 113.

284. Plaintiffs shipped four packages of their personal property via the United States Postal Service. Those packages consisted of Covid-protective masks bearing core political speech, including phrases such as "STOP KILLING BLACK PEOPLE" and "DEFUND POLICE."

285. Retaliation for protected speech is an obvious violation of the First Amendment.

286. It is clearly established and every reasonable postal official has fair warning that seizing, searching, detaining, or delaying personal property or interfering with contractual or

United States District Court
Northern District of California

business relationships or operations because of the property's or its owner's speech, message, content, viewpoint, association, or affiliation is a violation of the First Amendment.

287. It is clearly established and every reasonable postal official has fair warning that protected speech, adverse government action that might chill an ordinary person from continuing to engage in that speech, and a causal relationship between the two constitute retaliation in violation of the First Amendment, and that a government actor's knowledge of the speech and the temporal proximity of the speech and the adverse government action raise an inference of retaliation.

288. Plaintiffs' packages were going to community activists and organizers in four major cities where large racial justice demonstrations were happening every day.

289. René is a known community activist and organizer with a community and social media presence promoting racial and social justice messages.

290. Movement Ink is a screen printing business; its commercial activity is expressive in nature. And it is known for its community and social media presence promoting racial and social justice messages.

291. Plaintiffs' business is more than just a business; it is also an outlet for expressing and helping others express core political speech and activism. Plaintiffs have always publicly cultivated and publicly promoted that expressive and activist identity as core to their business model.

292. Plaintiffs are well-known to the postal officials at their local post office, from which Plaintiffs have regularly shipped Movement Ink packages for years.

293. When national protests erupted in May 2020 following the police killings of George Floyd and Breonna Taylor, Plaintiffs began receiving a much higher volume of orders than usual. Activists and organizers around the country came to Plaintiffs seeking thousands of Covid-protective masks for protests that were happening all over the country every day.

294. Those protests were controversial. In particular, governmental attitudes and responses to the protestors' messages—including "Black Lives Matter" and "Defund the Police"—were highly critical and often violent.

295. So while Plaintiffs have for years worked with and been connected to social and

racial justice movements, this was the first time they were connected to such high profile, highly publicized, and highly visible protests, organizers, and apparel, and the first time they were shipping such rapid quantities of apparel in such rapid time.

296. Covid-protective masks, which all four of Plaintiffs' seized and searched packages contained, were also controversial and subject to governmental and societal disdain.

297. Plaintiffs' packages were clearly identified as having been shipped from Movement Ink in Oakland to major cities across the country.

298. Defendants' own internal notes clearly state Defendants' knowledge that Plaintiffs' packages contained, in Defendants' words, "BLM MASKS."

299. Within days of Plaintiffs' apparent association with and support for the protests in the form of politically emblazoned Covid-protective masks, Defendants seized, searched, detained, and delayed the shipment of Plaintiffs' packages, interfering with Plaintiffs' contractual and business relationships and operations, as well as Plaintiffs' political speech.

300. Plaintiffs' public association with and support for the protests, their marking of their politically emblazoned Covid-protective masks with Movement Ink identifiers, Defendants' own "BLM MASKS" notation in their internal notes, and the immediacy of Defendants' adverse action against Plaintiffs raise an inference of retaliation.

301. Therefore, Defendants violated Plaintiffs' clearly established right to be free from retaliation for protected political speech.

302. Defendants are line-level postal officials operating in the common and recurrent sphere of garden-variety postal inspections and law enforcement with respect to personal property.

303. Plaintiffs have no alternative remedies for their injuries caused by Defendants, and Plaintiffs' claims do not implicate separation of powers, national security considerations, or any other special factors counseling hesitation against a damages remedy for Plaintiffs' injuries.

304. Defendants' conduct caused: severe reputational harms to Plaintiffs; Plaintiffs' packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs; significant loss of Plaintiffs' ongoing and future revenue; and ongoing emotional

United States District Court
Northern District of California

and mental distress to René.

305. Plaintiffs are entitled to compensatory damages for their injuries caused by Defendants' retaliatory conduct.

**Count 11**
**Retaliation in Violation of the First Amendment**
**Against Defendants Agster, Chan, Fajardo, Hodges, Lee, and Doe Defendants 1 through 2**
**Under the Westfall Act (28 U.S.C. § 2679(b)(2)(A))**

306. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 113.

307. Plaintiffs shipped four packages of their personal property via the United States Postal Service. Those packages consisted of Covid-protective masks bearing core political speech, including phrases such as "STOP KILLING BLACK PEOPLE" and "DEFUND POLICE."

308. Retaliation for protected speech is an obvious violation of the First Amendment.

309. It is clearly established and every reasonable postal official has fair warning that seizing, searching, detaining, or delaying personal property or interfering with contractual or business relationships or operations because of the property's or its owner's speech, message, content, viewpoint, association, or affiliation is a violation of the First Amendment.

310. It is clearly established and every reasonable postal official has fair warning that protected speech, adverse government action that might chill an ordinary person from continuing to engage in that speech, and a causal relationship between the two constitute retaliation in violation of the First Amendment, and that a government actor's knowledge of the speech and the temporal proximity of the speech and the adverse government action raise an inference of retaliation.

311. Plaintiffs' packages were going to community activists and organizers in four major cities where large racial justice demonstrations were happening every day.

312. René is a known community activist and organizer with a community and social media presence promoting racial and social justice messages.

313. Movement Ink is a screen printing business; its commercial activity is expressive in nature. And it is known for its community and social media presence promoting racial and social justice messages.

314. Plaintiffs' business is more than just a business; it is also an outlet for expressing and helping others express core political speech and activism. Plaintiffs have always publicly cultivated and publicly promoted that expressive and activist identity as core to their business model.

315. Plaintiffs are well-known to the postal officials at their local post office, from which Plaintiffs have regularly shipped Movement Ink packages for years.

316. When national protests erupted in May 2020 following the police killings of George Floyd and Breonna Taylor, Plaintiffs began receiving a much higher volume of orders than usual. Activists and organizers around the country came to Plaintiffs seeking thousands of Covid-protective masks for protests that were happening all over the country every day.

317. Those protests were controversial. In particular, governmental attitudes and responses to the protestors' messages—including "Black Lives Matter" and "Defund the Police"—were highly critical and often violent.

318. So while Plaintiffs have for years worked with and been connected to social and racial justice movements, this was the first time they were connected to such high profile, highly publicized, and highly visible protests, organizers, and apparel, and the first time they were shipping such rapid quantities of apparel in such rapid time.

319. Covid-protective masks, which all four of Plaintiffs' seized and searched packages contained, were also controversial and subject to governmental and societal disdain.

320. Plaintiffs' packages were clearly identified as having been shipped from Movement Ink in Oakland to major cities across the country.

321. Defendants' own internal notes clearly state Defendants' knowledge that Plaintiffs' packages contained, in Defendants' words, "BLM MASKS."

322. Within days of Plaintiffs' apparent association with and support for the protests in the form of politically emblazoned Covid-protective masks, Defendants seized, searched, detained, and delayed the shipment of Plaintiffs' packages, interfering with Plaintiffs' contractual and business relationships and operations, as well as Plaintiffs' political speech.

323. Plaintiffs' public association with and support for the protests, their marking of their

United States District Court
Northern District of California

politically emblazoned Covid-protective masks with Movement Ink identifiers, Defendants' own "BLM MASKS" notation in their internal notes, and the immediacy of Defendants' adverse action against Plaintiffs raise an inference of retaliation.

324. Therefore, Defendants violated Plaintiffs' clearly established right to be free from retaliation for protected political speech.

325. Defendants are line-level postal officials operating in the common and recurrent sphere of garden-variety postal inspections and law enforcement with respect to personal property.

326. Plaintiffs have no alternative remedies for their injuries caused by Defendants, and Plaintiffs' claims do not implicate separation of powers, national security considerations, or any other special factors counseling hesitation against a damages remedy for Plaintiffs' injuries.

327. Defendants' conduct caused: severe reputational harms to Plaintiffs; Plaintiffs' packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs; significant loss of Plaintiffs' ongoing and future revenue; and ongoing emotional and mental distress to René.

328. Plaintiffs are entitled to compensatory damages for their injuries caused by Defendants' retaliatory conduct.

**Count 12**
**Retaliation in Violation of the First Amendment**
**Against Defendants Agster, Chan, Fajardo, Hodges, Lee, and Doe Defendants 1 through 2**
**Under the First Amendment**

329. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 113.

330. Plaintiffs shipped four packages of their personal property via the United States Postal Service. Those packages consisted of Covid-protective masks bearing core political speech, including phrases such as "STOP KILLING BLACK PEOPLE" and "DEFUND POLICE."

331. Retaliation for protected speech is an obvious violation of the First Amendment.

332. It is clearly established and every reasonable postal official has fair warning that seizing, searching, detaining, or delaying personal property or interfering with contractual or business relationships or operations because of the property's or its owner's speech, message,

United States District Court
Northern District of California

content, viewpoint, association, or affiliation is a violation of the First Amendment.

333. It is clearly established and every reasonable postal official has fair warning that protected speech, adverse government action that might chill an ordinary person from continuing to engage in that speech, and a causal relationship between the two constitute retaliation in violation of the First Amendment, and that a government actor's knowledge of the speech and the temporal proximity of the speech and the adverse government action raise an inference of retaliation.

334. Plaintiffs' packages were going to community activists and organizers in four major cities where large racial justice demonstrations were happening every day.

335. René is a known community activist and organizer with a community and social media presence promoting racial and social justice messages.

336. Movement Ink is a screen printing business; its commercial activity is expressive in nature. And it is known for its community and social media presence promoting racial and social justice messages.

337. Plaintiffs' business is more than just a business; it is also an outlet for expressing and helping others express core political speech and activism. Plaintiffs have always publicly cultivated and publicly promoted that expressive and activist identity as core to their business model.

338. Plaintiffs are well-known to the postal officials at their local post office, from which Plaintiffs have regularly shipped Movement Ink packages for years.

339. When national protests erupted in May 2020 following the police killings of George Floyd and Breonna Taylor, Plaintiffs began receiving a much higher volume of orders than usual. Activists and organizers around the country came to Plaintiffs seeking thousands of Covid-protective masks for protests that were happening all over the country every day.

340. Those protests were controversial. In particular, governmental attitudes and responses to the protestors' messages—including "Black Lives Matter" and "Defund the Police"—were highly critical and often violent.

341. So while Plaintiffs have for years worked with and been connected to social and racial justice movements, this was the first time they were connected to such high profile, highly

United States District Court
Northern District of California

publicized, and highly visible protests, organizers, and apparel, and the first time they were shipping such rapid quantities of apparel in such rapid time.

342. Covid-protective masks, which all four of Plaintiffs' seized and searched packages contained, were also controversial and subject to governmental and societal disdain.

343. Plaintiffs' packages were clearly identified as having been shipped from Movement Ink in Oakland to major cities across the country.

344. Defendants' own internal notes clearly state Defendants' knowledge that Plaintiffs' packages contained, in Defendants' words, "BLM MASKS."

345. Within days of Plaintiffs' apparent association with and support for the protests in the form of politically emblazoned Covid-protective masks, Defendants seized, searched, detained, and delayed the shipment of Plaintiffs' packages, interfering with Plaintiffs' contractual and business relationships and operations, as well as Plaintiffs' political speech.

346. Plaintiffs' public association with and support for the protests, their marking of their politically emblazoned Covid-protective masks with Movement Ink identifiers, Defendants' own "BLM MASKS" notation in their internal notes, and the immediacy of Defendants' adverse action against Plaintiffs raise an inference of retaliation.

347. Therefore, Defendants violated Plaintiffs' clearly established right to be free from retaliation for protected political speech.

348. Defendants are line-level postal officials operating in the common and recurrent sphere of garden-variety postal inspections and law enforcement with respect to personal property.

349. Plaintiffs have no alternative remedies for their injuries caused by Defendants, and Plaintiffs' claims do not implicate separation of powers, national security considerations, or any other special factors counseling hesitation against a damages remedy for Plaintiffs' injuries.

350. Defendants' conduct caused: severe reputational harms to Plaintiffs; Plaintiffs' packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs; significant loss of Plaintiffs' ongoing and future revenue; and ongoing emotional and mental distress to René.

351. Plaintiffs are entitled to compensatory damages for their injuries caused by Defendants' retaliatory conduct.

**Count 13**
**Trespass to Chattels**
**Against Defendants Agster, Chan, Fajardo, Hodges, Lee, and Doe Defendants 1 through 2**
**Under California Law**

352. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 113.

353. Plaintiffs shipped four packages of their personal property via the United States Postal Service. Plaintiffs retained ownership rights and interests and possessory rights and interests in their packages until the packages were delivered to their intended recipients.

354. Without consent, cause, or legal authority, Defendants intentionally interfered with Plaintiffs' possession, right to possess, use, right to use, enjoyment, and right to enjoy their personal property by seizing, detaining, and searching Plaintiffs' personal property.

355. Defendants' conduct caused: severe reputational harms to Plaintiffs; Plaintiffs' packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs; significant loss of Plaintiffs' ongoing and future revenue; and ongoing emotional and mental distress to René.

356. Plaintiffs are entitled to compensatory damages for their injuries caused by Defendants' unconstitutional and tortious conduct.

357. Plaintiffs recognize that this claim may currently be barred by the Westfall Act (28 U.S.C. § 2679(b)(1)), but Plaintiffs preserve the issue.

**Count 14**
**Interference with Contractual Relations**
**Against Defendants Agster, Chan, Fajardo, Hodges, Lee, and Doe Defendants 1 through 2**
**Under California Law**

358. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 113.

359. Plaintiffs had contracts with protest organizers for the rush printing and immediate delivery of four packages containing Covid-protective masks emblazoned with political speech.

360. Defendants knew, should have known, or had reason to know of those contracts, based on Plaintiffs' regular business activities and the packages' shipping information (including

the sender and recipients) that Plaintiffs provided to Defendants.

361. Defendants' intentional seizures, detentions, and searches of the packages, as well as Defendants' "Alert" to the recipients of the packages that the packages were "seized by law enforcement," prevented Plaintiffs' performance of the contracts or made Plaintiffs' performance of the contracts more expensive or difficult.

362. Defendants' intentional seizures, detentions, and searches of the packages, as well as Defendants' "Alert" to the recipients of the packages that the packages were "seized by law enforcement," were certain or substantially certain to prevent Plaintiffs' performance of the contracts or make Plaintiffs' performance of the contracts more expensive or difficult.

363. Defendants' conduct caused: severe reputational harms to Plaintiffs; Plaintiffs' packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs; significant loss of Plaintiffs' ongoing and future revenue; and ongoing emotional and mental distress to René.

364. Plaintiffs are entitled to compensatory damages for their injuries caused by Defendants' unconstitutional and tortious conduct.

365. Plaintiffs recognize that this claim may currently be barred by the Westfall Act (28 U.S.C. § 2679(b)(1)), but Plaintiffs preserve the issue.

**Count 15**
**Interference with Prospective Economic Relations**
**Against Defendants Agster, Chan, Fajardo, Hodges, Lee, and Doe Defendants 1 through 2**
**Under California Law**

366. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 113.

367. Plaintiffs had contracts and other economic relationships with protest organizers for the rush printing and immediate delivery of four packages containing Covid-protective masks emblazoned with political speech and for similar ongoing and regular orders in the future.

368. Defendants knew, should have known, or had reason to know of those contracts or those future economic benefits, based on Plaintiffs' regular business activities, the packages' shipping information (including the sender and recipients) that Plaintiffs provided to Defendants,

United States District Court
Northern District of California

and the ongoing nature of the need for Covid-protective masks and political protests.

369. Defendants intentionally seized, detained, and searched the packages and issued an "Alert" to the recipients of the packages that the packages were "seized by law enforcement."

370. Defendants' intentional seizures, detentions, and searches of the packages, as well as Defendants' "Alert" to the recipients of the packages that the packages were "seized by law enforcement," were certain or substantially certain to prevent Plaintiffs' performance of the contracts or make Plaintiffs' performance of the contracts more expensive or difficult and to disrupt similar ongoing and regular orders in the future.

371. Defendants' conduct caused: severe reputational harms to Plaintiffs; Plaintiffs' packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs; significant loss of Plaintiffs' ongoing and future revenue; and ongoing emotional and mental distress to René.

372. Plaintiffs are entitled to compensatory damages for their injuries caused by Defendants' unconstitutional and tortious conduct.

373. Plaintiffs recognize that this claim may currently be barred by the Westfall Act (28 U.S.C. § 2679(b)(1)), but Plaintiffs preserve the issue.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request that this Court:

374. Declare that Defendant United States of America is liable in damages under the Federal Tort Claims Act for trespasses to Plaintiffs' chattels.

375. Declare that Defendant United States of America is liable in damages under the Federal Tort Claims Act for interference with Plaintiffs' contractual relations.

376. Declare that Defendant United States of America is liable in damages under the Federal Tort Claims Act for interference with Plaintiffs' prospective economic relations.

377. Declare that Defendants Agster, Chan, Fajardo, Hodges, Lee, and Doe Defendants 1 through 2 are liable in damages under the Constitution, *Bivens*, and the Westfall Act (28 U.S.C. § 2679(b)(2)(A)) for violating Plaintiffs' Fourth Amendment right to be free from unreasonable

United States District Court
Northern District of California

seizures of personal property.

378. Declare that Defendants Agster, Chan, Fajardo, Hodges, Lee, and Doe Defendants 1 through 2 are liable in damages under the Constitution, *Bivens*, and the Westfall Act (28 U.S.C. § 2679(b)(2)(A)) for violating Plaintiffs' Fourth Amendment right to be free from unreasonable searches of personal property.

379. Declare that Defendants Agster, Chan, Fajardo, Hodges, Lee, and Doe Defendants 1 through 2 are liable in damages under the Constitution, *Bivens*, and the Westfall Act (28 U.S.C. § 2679(b)(2)(A)) for violating Plaintiffs' First Amendment right to be free from retaliation for political speech.

380. Declare that Defendants Agster, Chan, Fajardo, Hodges, Lee, and Doe Defendants 1 through 2 are liable in damages under California law for trespasses to Plaintiffs' chattels in violation of Plaintiffs' constitutional rights. (Plaintiffs recognize that this relief may currently be barred by the Westfall Act (28 U.S.C. § 2679(b)(1)), but Plaintiffs preserve the issue.)

381. Declare that Defendants Agster, Chan, Fajardo, Hodges, Lee, and Doe Defendants 1 through 2 are liable in damages under California law for interference with Plaintiffs' contractual relations in violation of Plaintiffs' constitutional rights. (Plaintiffs recognize that this relief may currently be barred by the Westfall Act (28 U.S.C. § 2679(b)(1)), but Plaintiffs preserve the issue.)

382. Declare that Defendants Agster, Chan, Fajardo, Hodges, Lee, and Doe Defendants 1 through 2 are liable in damages under California law for interference with Plaintiffs' prospective economic relations in violation of Plaintiffs' constitutional rights. (Plaintiffs recognize that this relief may currently be barred by the Westfall Act (28 U.S.C. § 2679(b)(1)), but Plaintiffs preserve the issue.)

383. Declare that if there is no remedy available for Plaintiffs' injuries under the Constitution, *Bivens*, the Federal Tort Claims Act, or the Westfall Act, then the Federal Tort Claims Act and the Westfall Act are unconstitutional as applied, and that Defendants Agster, Chan, Fajardo, Hodges, Lee, and Doe Defendants 1 through 2 are liable in damages under California law for their unconstitutional and tortious conduct in violation of Plaintiffs' constitutional rights (trespasses to

United States District Court
Northern District of California

Plaintiffs' chattels, interference with Plaintiffs' contractual relations, and interference with Plaintiffs' prospective economic relations).

384. Award Plaintiffs' compensatory damages for Defendants' unconstitutional and tortious conduct, in amounts to be proven at trial.

385. Award Plaintiffs' attorneys' fees, costs, and expenses under 28 U.S.C. § 2412 and any other applicable provisions of law or equity.

386. Award any further legal or equitable relief the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38 and Civil Local Rule 3-6, Plaintiffs demand a jury trial on all issues so triable.

Dated: September 21, 2022

s/ Jaba Tsitsuashvili
Jaba Tsitsuashvili (CA Bar No. 309012)
Patrick Jaicomo* (MI Bar No. P-75705)
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Phone: (703) 682-9320
Fax: (703) 682-9321
jtsitsuashvili@ij.org
pjaicomo@ij.org

*Admitted pro hac vice

Anna M. Barvir (CA Bar No. 268728)
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
Phone: (562) 216-4444
Fax: (562) 216-4445
abarvir@michellawyers.com

*Counsel for Plaintiffs*

Jaba Tsitsuashvili (CA Bar No. 309012)
Patrick Jaicomo* (MI Bar No. P-75705)
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Phone: (703) 682-9320
Fax: (703) 682-9321
jtsitsuashvili@ij.org
pjaicomo@ij.org

*Admitted pro hac vice

Anna M. Barvir (CA Bar No. 268728)
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
Phone: (562) 216-4444
Fax: (562) 216-4445
abarvir@michellawyers.com

*Counsel for Plaintiffs*

Stephanie Hinds (CA Bar No 154284)
*United States Attorney*
Michael Lo (NY Bar No. 4325163)
*Chief, Civil Division*
Michael A. Keough (NY Bar No. 5199666)
*Assistant United States Attorney*
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-7234
michael.keough@usdoj.gov

*Counsel for the United States*

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

RENÉ QUIÑONEZ and MOVEMENT INK LLC,

Plaintiffs,

v.

DOES 1 through 5, United States Postal Service and United States Postal Inspection Service officials in their individual capacities,

Defendants.

Case No. 3:22-cv-3195-WHO

**STIPULATED REQUEST TO FILE FIRST AMENDED COMPLAINT**

Judge: Hon. William H. Orrick

Plaintiffs and the United States respectfully stipulate under Federal Rule of Civil Procedure 15(a)(2) and Local Rule 7-12 that Plaintiffs may file a First Amended Complaint containing the amendments set forth below. Pursuant to Local Rule 10-1, Plaintiffs' First Amended Complaint is being filed simultaneously with this stipulation.

Should the Court require its leave for Plaintiffs to file the First Amended Complaint, Plaintiffs respectfully request that the Court "freely give leave" because "justice so requires," Fed.

R. Civ. P. 15(a)(2), for the following reasons: Plaintiffs recently obtained the names of the previously unnamed Doe defendants, on September 2, 2022; the time for Plaintiffs to bring a claim under the Federal Tort Claims Act recently accrued, on September 12, 2022; the Court previously granted case management adjustments based on Plaintiffs' anticipated filing of an amended complaint, *see* ECF 27, 29; and the United States does not object to Plaintiffs' proposed amendments.

Plaintiffs and the United States stipulate that Plaintiffs may amend their Complaint (ECF 1) to include:

1. Named individuals as Defendants, originally named as "Does 1 through 5," and the acts alleged to have been committed by each of those individuals;

2. The United States of America as a Defendant with respect to claims arising under the Federal Tort Claims Act; and

3. An allegation related to the six-month agency exhaustion requirement under the Federal Tort Claims Act.

Plaintiffs and the United States further stipulate that any responsive pleading by the United States or a named individual defendant shall be due 30 days after service of the Amended Complaint on all defendants pursuant to Rule 4 of the Federal Rules of Civil Procedure.

Plaintiffs and the United States further stipulate that the motion to dismiss filed by the United States (ECF 25) will be moot upon the filing of the Amended Complaint.

This stipulation is not intended to waive and does not waive any defenses on behalf of any defendant, including but not limited to any defense that may be raised under Rule 12 of the Federal Rules of Civil Procedure. The stipulated request to file and Plaintiffs' request in the alternative for leave to file are supported by the accompanying declaration by Plaintiffs' counsel.

United States District Court
Northern District of California

Dated: September 21, 2022

s/ Jaba Tsitsuashvili
Jaba Tsitsuashvili (CA Bar No. 309012)
Patrick Jaicomo* (MI Bar No. P-75705)
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Phone: (703) 682-9320
Fax: (703) 682-9321
jtsitsuashvili@ij.org
pjaicomo@ij.org

*Admitted pro hac vice

Anna M. Barvir (CA Bar No. 268728)
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Fax: (562) 216-4445
abarvir@michellawyers.com

*Counsel for Plaintiffs*

s/ Michael A. Keough**
Stephanie Hinds (CA Bar No 154284)
*United States Attorney*
Michael Lo (NY Bar No. 4325163)
*Chief, Civil Division*
Michael A. Keough (NY Bar No. 5199666)
*Assistant United States Attorney*
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-7234
michael.keough@usdoj.gov

*Counsel for the United States*

***Pursuant to Civ. L.R. 5-1(h)(3), the filer of the document has obtained approval from this signatory.*

PURSUANT TO STIPULATION, IT IS SO ORDERED.

Dated: _______________, 2022

_____________________________
Hon. William H. Orrick
United States District Court Judge

Jaba Tsitsuashvili (CA Bar No. 309012)
Patrick Jaicomo* (MI Bar No. P-75705)
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Phone: (703) 682-9320
Fax: (703) 682-9321
jtsitsuashvili@ij.org
pjaicomo@ij.org

*Admitted pro hac vice

Anna M. Barvir (CA Bar No. 268728)
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
Phone: (562) 216-4444
Fax: (562) 216-4445
abarvir@michellawyers.com

*Counsel for Plaintiffs*

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

RENÉ QUIÑONEZ and MOVEMENT INK LLC,

Plaintiffs,

v.

DOES 1 through 5, United States Postal Service and United States Postal Inspection Service officials in their individual capacities,

Defendants.

Case No. 3:22-cv-3195-WHO

**DECLARATION IN SUPPORT OF STIPULATED REQUEST TO FILE FIRST AMENDED COMPLAINT**

Judge: Hon. William H. Orrick

I, Jaba Tsitsuashvili, declare:

1. I am an active member of the State Bar of California and an attorney at the Institute for Justice. I am counsel for Plaintiffs René Quiñonez and Movement Ink LLC in this case. This declaration is based on my personal knowledge.

2. Pursuant to Federal Rule of Civil Procedure 15(a)(2) and Local Rule 7-12, Plaintiffs and the United States stipulate that Plaintiffs may file a First Amended Complaint.

3. Pursuant to Local Rule 10-1, Plaintiffs' First Amended Complaint is being filed

United States District Court
Northern District of California

simultaneously with the stipulation.

4. Should the Court require its leave for Plaintiffs to file the First Amended Complaint—either with respect to the three stipulated amendments listed in the stipulation and/or any amendments that the United States may subsequently believe are not explicitly contemplated by those three stipulated amendments—Plaintiffs respectfully request that the Court "freely give leave" to file the Amended Complaint in its entirety because "justice so requires." Fed. R. Civ. P. 15(a)(2). In support, I declare:

a. Plaintiffs recently obtained the names of the previously unnamed Doe defendants, on September 2, 2022.

b. The time for Plaintiffs to bring a claim under the Federal Tort Claims Act recently accrued, on September 12, 2022.

c. The Court previously granted case management adjustments based on Plaintiffs' anticipated filing of an amended complaint. *See* ECF 27, 29.

d. The United States has understood and assented to Plaintiffs' anticipated filing of an amended complaint and continues to do so. *See* ECF 26, 26-1, 28, 28-1.

e. The Amended Complaint's amended factual allegations simply update the original Complaint's factual allegations.

f. The Amended Complaint's amended legal allegations simply update the original Complaint's legal allegations based on the accrual of Plaintiffs' Federal Tort Claims Act claims.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Dated: September 21, 2022

s/ Jaba Tsitsuashvili
Jaba Tsitsuashvili (CA Bar No. 309012)
INSTITUTE FOR JUSTICE

*Counsel for Plaintiffs*

STEPHANIE M. HINDS (CABN 154284)
United States Attorney
MICHELLE LO (NYRN 4325163)
Chief, Civil Division
MICHAEL A. KEOUGH (NYRN 5199666)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-7234
michael.keough@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RENE QUINONEZ and MOVEMENT INK LLC,<br><br>Plaintiffs,<br><br>v.<br><br>DOES 1 through 5,<br><br>Defendants. | No. 3:22-CV-03195-WHO<br><br>**UNITED STATES OF AMERICA'S MOTION TO DISMISS**<br><br>Hrg Date: September 21, 2022<br>Time: 2:00 p.m. |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on September 21, 2022 at 2:00 p.m., or as soon thereafter as this matter may be heard by the Honorable William H. Orrick, United States District Judge of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, non-party the United States of America,[1] will and hereby does move the Court for an order dismissing Counts 10, 11, and 12 of the Complaint, Dkt. 1, under Rule 12(b)(6). The United States will also request that the Court use its *sua sponte* authority to dismiss the Complaint in its entirety for lack of personal jurisdiction over any defendant under Rule 12(b)(2).

## RELIEF SOUGHT

Non-party the United States of America seeks an order dismissing Counts 10, 11, and 12 of the Complaint. The United States also requests that the Court use its *sua sponte* authority to dismiss the Complaint in its entirety for lack of personal jurisdiction over any defendant.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiffs' Complaint includes three state law claims for money damages allegedly caused by the negligent or wrongful acts of unnamed federal employees. Such claims can only be brought against the United States as defendant after certain administrative remedies required by the Federal Tort Claims Act (FTCA) are exhausted. Here, these claims were not brought against the United States, and Plaintiffs affirmatively admit in their Complaint that the required administrative remedies have not been exhausted. Further, because no defendant has actually been served, the Court lacks jurisdiction over any claims (including those that must be brought against the United States).

Accordingly, for the reasons set forth below, Counts 10, 11, and 12 of the Complaint should be dismissed, and all remaining claims should be dismissed for lack of personal jurisdiction.

[1] Undersigned counsel is not appearing on behalf of Defendants Does 1-5, and this appearance is not intended to waive any challenges to the Court's jurisdiction that can be asserted by Defendants Does 1-5 (or any other defenses that may be asserted by Defendants Does 1-5).

## II. STATEMENT OF ISSUES TO BE DECIDED

1. Whether Counts 10, 11, and 12 of the Complaint must be dismissed for failure to exhaust the administrative remedies required by the FTCA.

2. Whether the Court should use its *sua sponte* authority to dismiss the Complaint in its entirety for failure to serve any defendant.

## III. FACTUAL BACKGROUND

The following allegations relevant to Counts 10, 11, and 12 are taken from the Complaint:

Two plaintiffs are named in the Complaint: Rene Quinonez and Movement Ink LLC. Plaintiff Rene Quinonez is a resident of California and the proprietor of plaintiff Movement Ink LLC, an activism-inspired screen-printing business. *See* Dkt. 1 ("Complaint") ¶¶ 9-10, 12-16. Plaintiffs claim that, in May and June of 2020, they mailed screen-printed Covid facemasks bearing political messages for the mass protests that broke out following the police killings of George Floyd and Breonna Taylor in 2020. Complaint ¶¶ 23-24. Four packages shipped by Movement Ink were seized by unnamed law enforcement officers and held for a period of approximately 24 hours before being sent along to their intended destinations. Complaint ¶ 55. Plaintiffs claim that these seizures had negative impacts on their business performance and reputations, Complaint ¶ 44, and these injuries serve as the basis for the twelve causes of action asserted against five unnamed Doe defendants in the Complaint.

Among these twelve causes of action are three state law claims for money damages: Count 10 (trespass to chattels), Count 11 (interference with contractual relations), and Count 12 (interference with prospective economic relations). Plaintiffs allege that "the acts, violations, and injuries for which [the Doe defendants] are responsible in this action also form the basis for liability of the United States of America under the Federal Tort Claims Act," Complaint ¶ 11, but have not named the United States as a defendant or brought any claims directly against the United States.

## IV. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain sufficient factual assertions, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Mere conclusions" need not be accepted as true when deciding whether a claim is facially plausible. *Id.* at 664; *see also Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1046 (9th Cir. 2008) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (quoting *Twombly*, 550 U.S. at 555)). Allegations that are "merely consistent with a defendant's liability," or reflect only "the mere possibility of misconduct" do not "show[] that the pleader is entitled to relief," and thus are insufficient to state a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678-79 (citations and internal quotation marks omitted).

A court may dismiss a complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Courts must consider the threshold issue of jurisdiction before addressing the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Plaintiffs bear the burden of establishing jurisdiction because, by filing a complaint in federal court, they seek to invoke it. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). A district court may raise the issue of personal jurisdiction *sua sponte* and dismiss the Complaint if personal jurisdiction is found to be lacking. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

## V. ARGUMENT

### A. Plaintiffs Have Failed to Exhaust Administrative Remedies Under the FTCA

Plaintiffs must exhaust the administrative remedies required by the FTCA before bringing state law claims for personal injury against the United States, but have failed to do so. The FTCA, as amended by the Westfall Act, provides that where an individual claims that federal employees damaged him or her through their negligent or wrongful acts or omissions taken within the scope of their office or employment, a suit against the United States shall be the exclusive remedy for that individual's claim. 28 U.S.C. § 2679(b)(1). There are two exceptions to this exclusivity provision, 28 U.S.C. § 2679(b)(2), but neither exception applies to claims for violations of state law. These claims also must be asserted against the United States itself. *See* 28 U.S.C. § 2679(b)(1). Plaintiffs must exhaust certain administrative remedies, including presenting the claim to the relevant federal agency, *before* any

lawsuit is filed. *See* 28 U.S.C. § 2675; *McNeil v. United States*, 508 U.S. 106, 113 (1993) (noting that "the FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."). The present complaint itself is insufficient to exhaust these remedies, as "filing a lawsuit does not constitute an administrative claim required by the FTCA." *Bishop v. Mazda Motor of Am., Inc.*, No. C-12-2557, 2012 WL 5383293, at *4 (N.D. Cal Nov. 1, 2012)

Here, Count 10 (trespass to chattels), Count 11 (interference with contractual relations), and Count 12 (interference with prospective economic relations) are all claims for money damages allegedly caused by the negligent or wrongful acts of unnamed federal employees. *See* Complaint ¶ 318 ("Plaintiffs are entitled to compensatory damages for their injuries caused by Defendants' conduct."); ¶ 326 (same); ¶ 334 (same). Such claims must be brought as FTCA claims against the United States. But the Complaint includes no facts demonstrating administrative exhaustion. Moreover, Plaintiffs affirmatively admit in the Complaint that each of these claims are currently barred for failure to exhaust these administrative remedies. *See* Complaint ¶ 319 ("Plaintiffs recognize that thus claim is currently barred by the Westfall Act (28 U.S.C. § 2679(b)(1)"); ¶ 327 (same); ¶ 335 (same). Accordingly, Counts 10, 11, and 12 of the Complaint should be dismissed.

**B. The Court Cannot Adjudicate Claims Against Unknown Defendants Who Have Not Been Served**

The present motion is only brought on behalf of the United States, and undersigned counsel does not represent Defendants Does 1-5.[2] However, the United States notes that the Court presently does not have jurisdiction over any of the claims asserted in the Complaint because no defendant has been served. The Court should accordingly use its *sua sponte* authority to dismiss the remaining claims in the Complaint until such time as Plaintiffs name actual defendants and serve those defendants. *See In re Tuli*, 172 F.3d at 712; *Meilleur v. Strong*, 682 F.3d 56, 63 (2d Cir. 2012) (affirming district court's *sua sponte* dismissal of complaint for lack of personal jurisdiction where defendant was not served).

It is axiomatic that, "[b]efore a federal court may exercise personal jurisdiction over a defendant,

[2] Department of Justice attorneys are only permitted to represent federal employees sued in their individual capacities after the employee submits a written request for representation and a determination is made that the employee was acting within the scope of their employment. 28 C.F.R. § 50.15(a)(1). No such request for representation has been made, and accordingly undersigned counsel is not permitted to appear on behalf of Defendants Does 1-5.

the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). This Court's jurisdiction can only be invoked after the requirements of Federal Rule of Civil Procedure 4 are met. *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009) ("A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with Fed. R. Civ. P. 4.") (internal citations omitted). To serve a federal employee sued in their individual capacity (as Plaintiffs are purporting to do here), Rule 4(i) requires that Plaintiff serve three parties: the Attorney General, the United States Attorney, and the individual employee. The proof of service filed by Plaintiffs (Dkt. 19) indicates service on the Attorney General and the United States Attorney, but does not indicate that any of the individual defendants have been served. Rule 4(i)'s requirement that federal employees sued in their individual capacities be served individually is mandatory; without such service, the complaint must be dismissed. *See, e.g.*, *Perez-Sanchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 106 (1st Cir. 2008) (dismissing claims against individual federal employees for failure to serve these employees individually); *Micklus v. Carlson*, 632 F.2d 227, 240 (3d Cir. 1980) (declining to allow alternative form of service where plaintiff failed to serve federal employees in their individual capacity). And where, as here, no actual defendants are named and the Complaint only includes unnamed Doe defendants in their individual capacity, service cannot be completed until Plaintiffs actually identify these individuals and serve them. *See, e.g.*, *Montgomery v. Wong*, No. 2:20-CV-1515 DB P, 2021 WL 1907161, at *4 (E.D. Cal. May 12, 2021) ("the court cannot serve a complaint with only Doe defendants"). Until service is complete, the Court lacks jurisdiction and the remainder of the claims should be dismissed.[3]

[3] Just days after filing their Complaint, Plaintiffs lodged an "Ex Parte Application to Proceed with Doe Defendants" (Dkt. 5) without notice to any other party. This application was then granted by Magistrate Judge Westmore (Dkt. 9) before Plaintiffs shortly thereafter declined Magistrate Judge Westmore's jurisdiction (Dkt. 16). That application and the accompanying order do not change the legal analysis in this motion. Aside from the fact that no defendant was given notice or the opportunity to be heard in response to Plaintiffs' application, the application did not explain how Plaintiffs intend to invoke the Court's jurisdiction where no defendant has yet been served.

## VI. CONCLUSION

For the foregoing reasons, the Court should grant the United States' motion and dismiss Counts 10, 11, and 12 of the Complaint. The Court should also use its *sua sponte* authority to dismiss the Complaint in its entirety for lack of personal jurisdiction.

DATED: August 12, 2022

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

*/s/ Michael A. Keough*
MICHAEL A. KEOUGH
Assistant United States Attorney

*Attorneys for the United States of America*

Jaba Tsitsuashvili (CA Bar No. 309012)
Anya Bidwell* (TX Bar No. 24101516)
Patrick Jaicomo* (MI Bar No. P-75705)
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Phone: (703) 682-9320
Fax: (703) 682-9321
jtsitsuashvili@ij.org
abidwell@ij.org
pjaicomo@ij.org

*Applications for admission
pro hac vice forthcoming

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| RENÉ QUIÑONEZ and MOVEMENT INK LLC,<br><br>Plaintiffs,<br><br>v.<br><br>DOES 1 through 5, United States Postal Service and United States Postal Inspection Service officials in their individual capacities,<br><br>Defendants. | Case No. 4:22-cv-3195-KAW<br><br>**NOTICE AND APPLICATION TO PROCEED WITH DOE DEFENDANTS**<br><br>Date: July 21, 2022<br><br>Time: 1:30 p.m.<br><br>Courtroom: 4<br><br>Judge: Magistrate Kandis A. Westmore |

**NOTICE OF APPLICATION TO PROCEED WITH DOE DEFENDANTS**

PLEASE TAKE NOTICE that on July 21, 2022 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 4 of the United States District Court, Northern District of California, located at 1301 Clay Street, Oakland, California, 94612, before the Honorable Kandis A. Westmore, Plaintiffs will and hereby do move for an order permitting them to proceed in this case with Doe Defendants until such time as Plaintiffs learn the Doe Defendants' names and identities. The motion is supported by the accompanying Application and declaration.



United States District Court
Northern District of California

United States District Court
Northern District of California

**APPLICATION TO PROCEED WITH DOE DEFENDANTS**

Pursuant to this Court's e-filing instructions, Plaintiffs respectfully submit this application to proceed with Doe Defendants and accompanying declaration in support. Plaintiffs respectfully submit that the Court should grant the application and in support aver the following facts:

1. Since at least April 2021, Plaintiffs have diligently pursued the names and identities of the Doe Defendants, but the Doe Defendants' employers (the United States Postal Service and the United States Postal Inspection Service, "the agencies") have repeatedly withheld the Doe Defendants' names and identities from Plaintiffs.

2. Specifically, Plaintiffs submitted Freedom of Information Act ("FOIA") requests to the agencies in April 2021 seeking all documents and communications relevant to the events at issue in this case. In their FOIA productions, the agencies redacted the names of every employee responsible for the events at issue in this case. Those employees are the Doe Defendants.

3. Plaintiffs timely appealed the agencies' productions, including the redaction of the Doe Defendants' names, identities, and job titles.

4. Plaintiffs' appeal was partially successful, resulting in the un-redaction of certain information. But the agencies continued to redact and withhold the names and identities of the Doe Defendants.

5. The agencies' FOIA productions do, however, make clear that the Doe Defendants are United States Postal Service and/or United States Postal Inspection Service employees and officers.

6. Therefore, Plaintiffs have identified the Doe Defendants as United States Postal Service and/or United States Postal Inspection Service employees and officers in Plaintiffs' complaint.

7. Neither the Doe Defendants nor the agencies will be prejudiced by granting this application.

8. Plaintiffs are serving their complaint on the United States Department of Justice,

United States District Court
Northern District of California

namely the United States Attorney General and the United States Attorney for the Northern District of California.

9. On information and belief, the Doe Defendants will be represented in this case by Department of Justice attorneys.

10. On information and belief, the names and identities of the Doe Defendants will be readily known to the agencies and to the Department of Justice.

11. Upon entries of appearance by Department of Justice attorneys on behalf of the Doe Defendants, Plaintiffs will promptly and diligently seek disclosure of the Doe Defendants' names and identities.

12. Upon receipt of the Doe Defendants' names and identities, Plaintiffs will promptly update the case documents and docket accordingly.

Dated: June 1, 2022

s/ Jaba Tsitsuashvili
Jaba Tsitsuashvili (CA Bar No. 309012)
Anya Bidwell* (TX Bar No. 24101516)
Patrick Jaicomo* (MI Bar No. P-75705)
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Phone: (703) 682-9320
Fax: (703) 682-9321
jtsitsuashvili@ij.org
abidwell@ij.org
pjaicomo@ij.org

*Applications for admission
pro hac vice forthcoming

*Counsel for Plaintiffs*

United States District Court
Northern District of California

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 1st day of June, 2022, a true and correct copy of the foregoing was filed electronically using the Court's CM/ECF system and served via U.S. Certified Mail on the following Defendants:

Unknown U.S. Postal Service and U.S. Postal Inspection Service officials
c/o U.S. Attorney General
Merrick Garland
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Unknown U.S. Postal Service and U.S. Postal Inspection Service officials
c/o U.S. Attorney for the Northern District of California
Civil-process clerk
U.S. Attorney's Office
Federal Courthouse
1301 Clay Street
Oakland, CA 94612

s/ Jaba Tsitsuashvili
Jaba Tsitsuashvili (CA Bar No. 309012)

Jaba Tsitsuashvili (CA Bar No. 309012)
Anya Bidwell* (TX Bar No. 24101516)
Patrick Jaicomo* (MI Bar No. P-75705)
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Phone: (703) 682-9320
Fax: (703) 682-9321
jtsitsuashvili@ij.org
abidwell@ij.org
pjaicomo@ij.org

*Applications for admission
pro hac vice forthcoming

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

RENÉ QUIÑONEZ and MOVEMENT INK LLC,

Plaintiffs,

v.

DOES 1 through 5, United States Postal Service and United States Postal Inspection Service officials in their individual capacities,

Defendants.

Case No. 4:22-cv-3195-KAW

**DECLARATION IN SUPPORT OF APPLICATION TO PROCEED WITH DOE DEFENDANTS**

**DECLARATION IN SUPPORT OF
APPLICATION TO PROCEED WITH DOE DEFENDANTS**

I, Jaba Tsitsuashvili, declare:

1. I am an active member of the State Bar of California and an attorney at the Institute for Justice. I am counsel for Plaintiffs René Quiñonez and Movement Ink LLC in this proceeding. This declaration is based on my personal knowledge.

2. Pursuant to this Court's e-filing instructions, Plaintiffs have submitted simultaneously with their complaint an application to proceed with Doe Defendants. In support, Plaintiffs aver the following facts.

3. Since at least April 2021, Plaintiffs have diligently pursued the names and identities



United States District Court
Northern District of California

of the Doe Defendants, but the Doe Defendants' employers (the United States Postal Service and the United States Postal Inspection Service, "the agencies") have repeatedly withheld the Doe Defendants' names and identities from Plaintiffs.

4. Specifically, Plaintiffs submitted Freedom of Information Act ("FOIA") requests to the agencies in April 2021 seeking all documents and communications relevant to the events at issue in this case. In their FOIA productions, the agencies redacted the names of every employee responsible for the events at issue in this case. Those employees are the Doe Defendants.

5. Plaintiffs timely appealed the agencies' productions, including the redaction of the Doe Defendants' names, identities, and job titles.

6. Plaintiffs' appeal was partially successful, resulting in the un-redaction of certain information. But the agencies continued to redact and withhold the names and identities of the Doe Defendants.

7. The agencies' FOIA productions do, however, make clear that the Doe Defendants are United States Postal Service and/or United States Postal Inspection Service employees and officers.

8. Therefore, Plaintiffs have identified the Doe Defendants as United States Postal Service and/or United States Postal Inspection Service employees and officers in Plaintiffs' complaint.

9. Neither the Doe Defendants nor the agencies will be prejudiced by granting this application.

10. Plaintiffs are serving their complaint on the United States Department of Justice, namely the United States Attorney General and the United States Attorney for the Northern District of California.

11. On information and belief, the Doe Defendants will be represented in this case by Department of Justice attorneys.

12. On information and belief, the names and identities of the Doe Defendants will be readily known to the agencies and to the Department of Justice.

United States District Court
Northern District of California

13. Upon entries of appearance by Department of Justice attorneys on behalf of the Doe Defendants, Plaintiffs will promptly and diligently seek disclosure of the Doe Defendants' names and identities.

14. Upon receipt of the Doe Defendants' names and identities, Plaintiffs will promptly update the case documents and docket accordingly.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: June 1, 2022

s/ Jaba Tsitsuashvili
Jaba Tsitsuashvili (CA Bar No. 309012)

*Counsel for Plaintiffs*

Jaba Tsitsuashvili (CA Bar No. 309012)
Anya Bidwell* (TX Bar No. 24101516)
Patrick Jaicomo* (MI Bar No. P-75705)
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Phone: (703) 682-9320
Fax: (703) 682-9321
jtsitsuashvili@ij.org
abidwell@ij.org
pjaicomo@ij.org

*Applications for admission
pro hac vice forthcoming

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

RENÉ QUIÑONEZ and
MOVEMENT INK LLC,

Plaintiffs,

v.

DOES 1 through 5, United States Postal Service and United States Postal Inspection Service officials in their individual capacities,

Defendants.

Case No. 4:22-cv-03195

**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil L.R. 3-15, the undersigned certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations), or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

1. Plaintiff Movement Ink LLC, a California limited liability company.
2. Plaintiff René A. Quiñonez – Owner of 60% interest in Movement Ink LLC.
3. Maya Talina Ponce – Owner of 10% interest in Movement Ink LLC.



United States District Court
Northern District of California

4. René Ernesto Quiñonez – Owner of 10% interest in Movement Ink LLC.
5. Quetzalli Anai Ponce – Owner of 10% interest in Movement Ink LLC.
6. Estate of Luis Alberto Quiñonez – Owner of 10% interest in Movement Ink LLC.

Dated: June 1, 2022

s/ Jaba Tsitsuashvili
Jaba Tsitsuashvili (CA Bar No. 309012)
Anya Bidwell* (TX Bar No. 24101516)
Patrick Jaicomo* (MI Bar No. P-75705)
INSTITUTE FOR JUSTICE
901 N. Glebe Road,Suite 900
Arlington, VA 22203
Phone: (703) 682-9320
Fax: (703) 682-9321
jtsitsuashvili@ij.org
abidwell@ij.org
pjaicomo@ij.org

*Applications for admission
pro hac vice forthcoming

*Counsel for Plaintiffs*

United States District Court
Northern District of California

United States District Court
Northern District of California

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 1st day of June, 2022, a true and correct copy of the foregoing was filed electronically using the Court's CM/ECF system and served via U.S. Certified Mail on the following Defendants:

Unknown U.S. Postal Service and U.S. Postal Inspection Service officials
c/o U.S. Attorney General
Merrick Garland
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Unknown U.S. Postal Service and U.S. Postal Inspection Service officials
c/o U.S. Attorney for the Northern District of California
Civil-process clerk
U.S. Attorney's Office
Federal Courthouse
1301 Clay Street
Oakland, CA 94612

s/ Jaba Tsitsuashvili
Jaba Tsitsuashvili (CA Bar No. 309012)

Jaba Tsitsuashvili (CA Bar No. 309012)
Anya Bidwell* (TX Bar No. 24101516)
Patrick Jaicomo* (MI Bar No. P-75705)
INSTITUTE FOR JUSTICE
901 N. Glebe Road
Suite 900
Arlington, VA 22203
Phone: (703) 682-9320
Fax: (703) 682-9321
jtsitsuashvili@ij.org
abidwell@ij.org
pjaicomo@ij.org

*Applications for admission
pro hac vice forthcoming

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

RENÉ QUIÑONEZ and MOVEMENT INK LLC,

Plaintiffs,

v.

DOES 1 through 5, United States Postal Service and United States Postal Inspection Service officials in their individual capacities,

Defendants.

Case No. ______________

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

## INTRODUCTION

1. The Fourth Amendment guarantees us the right to be secure in our papers and effects. That promise is illusory if postal officials can seize or search personal property without an individualized, articulable basis to believe that the property contains contraband or evidence of a crime. Worse yet would be if postal officials could seize or search personal property because of its political message. That is why the Constitution requires postal officials—like other government officials—to get a judicial warrant based on probable cause before seizing or searching personal property. It is also why the Constitution, federal statutes, and state statutory and common law



United States District Court
Northern District of California

provide judicially enforceable remedies for violations of these rights, against both individual federal officials and the United States.

2. In this case, postal officials did not have reasonable suspicion—let alone probable cause and a warrant (or probable cause and exigent circumstances)—when they seized four properly addressed and neatly taped brown boxes sent to various cities by René Quiñonez and Movement Ink LLC, which is René's small, family-run screen-printing business in Oakland, California that, like businesses small and large across the country, regularly ships well-bound brown boxes from one location to cities nationwide.

3. As confirmed by the postal official Defendants' internal notes memorializing the seizures and searches of those boxes, millions of packages shipped every year share the unexceptional characteristics of René's and Movement Ink's packages that Defendants relied on to justify their suspicionless, warrantless seizures and searches. And those same internal notes make clear that Defendants knew the packages coming from Movement Ink contained—in Defendants' words—"BLM MASKS." So Defendants appear to have violated not just the Fourth Amendment, but also the First Amendment, while committing several common law torts in the process.

4. The wisdom of our constitutional design is that it knows significant harms befall the public when government officials exceed constitutional bounds and violate rights. That is exactly what happened here. Defendants' unconstitutional and tortious seizures and searches have inflicted several significant harms, including reputational harms on René and Movement Ink that have cost them not only the opportunity to expand their labor of love but also significant business growth.

5. First, the packages were delayed by 48 hours. That is no trivial matter. They contained thousands of Covid-protective masks when the pandemic was raging and mass protests over police violence were happening every day. Second, these political mask shipments' recipients were not only deprived the Covid-protective effects of the masks, but also expression of the political messages emblazoned on the masks. Third, René and Movement Ink—for whom these shipments were not just commercial transactions—similarly had their rights to political speech stymied. Finally, René and Movement Ink lost the goodwill and business relationships they earned over a

decade of building community trust based on their activism and their quality products—costing them the opportunity to do substantial business not only with the recipients of the masks, but other existing and potential partners too. And all those partners lost a trusted supplier because of the uncertainty and air of suspicion created by Defendants' baseless seizures and searches of René's and Movement Ink's political mask shipments.

6. For all these reasons, René and Movement Ink seek to hold personally accountable the postal and law enforcement officials responsible for their injuries under the Constitution, *Bivens*, the Westfall Act (28 U.S.C. § 2679(b)(2)(A)), and California law, as well as the federal government as those officials' employer under the Federal Tort Claims Act.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1346, 1356, 1357, 1367, 2201, 2202, 2674, and 2679 and the United States Constitution.

8. Venue is proper in the Northern District of California under 28 U.S.C. § 1391.

**PARTIES**

9. Plaintiff René Quiñonez is an adult resident of California. He is the majority owner and manager of Plaintiff Movement Ink LLC.

10. Plaintiff Movement Ink LLC is a California limited liability company. Its majority owner and manager is Plaintiff René Quiñonez.

11. Defendants Does 1 through 5 are officials of the United States Postal Service and the United States Postal Inspection Service who are responsible for the acts, violations, and injuries alleged in this action. Their identities and their number are currently unknown to Plaintiffs. They will be added as named Defendants when their identities are determined. They are sued in their individual capacities under the Constitution, *Bivens*, the Westfall Act (28 U.S.C. § 2679(b)(2)(A)), and California law. The acts, violations, and injuries for which they are responsible in this action also form the basis for liability of the United States of America under the Federal Tort Claims Act.

**STATEMENT OF FACTS**

12. René Quiñonez is a family man, entrepreneur, organizer, businessperson, activist,

United States District Court
Northern District of California

and former youth gang prevention nonprofit director. All those aspects of his personality find expression in Movement Ink LLC, the small screen-printing business he and his family have spent the last decade building into a community presence, known for its brand of activism-inspired business practices and relationships.

13. From its inception, as the company's name indicates, Movement Ink has been publicly allied and involved with social justice and activism movements, organizations, nonprofits, and individual organizers.

14. René and Movement Ink have spent years cultivating their brand, their image, and their reputation in these spaces, including community involvement and social media presence.

15. As a result of years of commitment to causes, trust-building, and high-quality screen-printing, René and Movement Ink successfully developed business relationships with activist movements, organizations, nonprofits, and individual organizers, who relied on René and Movement Ink for various screen-printing needs for years leading up to and into 2020, regularly ordering products ranging from t-shirts, to hoodies, to onesies for toddlers.

16. René and Movement Ink methodically built and carved out this niche, making René very proud of what he and his family have built.

17. The business of screen-printing is hard, labor-intensive work. So is the work of community building and activism. But both, especially together, are a labor of love for René and his family.

18. From 2016 to 2019, Movement Ink's gross annual sales grew steadily.

19. So did its reputation—until that long-earned reputation was dashed one day by Defendants' baseless seizures and searches of Movement Ink's most high-profile, lucrative, and promising shipments.

20. Defendants' seizures and searches of those shipments impeded Movement Ink's opportunities for business and activism expansion.

21. Defendants' seizures and searches of those shipments also dashed René's newfound dream that he might actually be able to retire someday.

22. In the early months of the Covid-19 pandemic, from March to May 2020, Movement Ink was able to weather the economy's lockdowns and downturns, thanks to increases in certain types of orders, including, most notably, screen-printed Covid-protective masks.

23. Thanks to the years René and Movement Ink spent promoting and developing social justice causes and organizations, they were the supplier of choice when organizers around the country began ordering Covid-protective masks bearing political messages for the mass protests that broke out following the police killings of George Floyd and Breonna Taylor in 2020.

24. In the last week of May and the first week of June 2020, René, his family, and at least a dozen employees and volunteers worked around the clock to print, pack, and ship thousands of Covid-protective masks around the country. René could count on two hands the number of hours he slept over the course of several days.

25. The masks that René, Movement Ink, his family, and their employees and volunteers printed were emblazoned with core political messages, such as "STOP KILLING BLACK PEOPLE" and "DEFUND POLICE."

26. To be sure, Movement Ink was getting paid for its products. But this hard work and dedication was borne of much more than a profit motive; it was borne of a desire to contribute to the protest movement and express René's and Movement Ink's support for the messages they were printing.

27. Before the seizures and searches of the four political mask shipments at issue in this case, René and Movement Ink fulfilled three orders for thousands of political masks to organizers in Atlanta, Los Angeles, and Oakland.

28. René shipped those three orders, as well as the four at issue in this case, from the same postal facility and using similar packaging methods as he has done for years on behalf of Movement Ink.

29. The postal officials at that facility know René and his business. They were friendly with each other, and the postal officials used to joke about René's and Movement Ink's last-minute rush shipments and the high prices he paid for next-day deliveries. But after the seizures and



United States District Court
Northern District of California

searches at issue in this case, their friendly relationship ended; the postal officials became standoffish and quiet whenever René entered.

30. René's and Movement Ink's regular practice was to write on each box that it came from Movement Ink and what it contained, such as "masks."

31. This was done to avoid confusion because Movement Ink shares a workspace with another company, and also so that after boxes were taped up it would be obvious what was in them and where René or another Movement Ink employee should deliver or ship them.

32. The initial three political mask shipments to Atlanta, Los Angeles, and Oakland, which René sent about a week before the four at issue in this case, were packaged no differently or sent in any manner different than the subsequent four whose seizures and searches are at issue in this case.

33. Like the initial three political mask shipments, René and Movement Ink shipped the four packages at issue in this case in nondescript, securely packaged, cleanly taped boxes. The boxes were full; one or more of them may have had a bulge where masks where squeezed in tightly.

34. As usual, all of the political mask shipments were marked or identified with Movement Ink as the sender, and likely had their contents handwritten on the side, in accordance with René's and Movement Ink's regular practice.

35. Like the initial three political mask shipments, René and Movement Ink shipped the four packages at issue in this case using priority mail express overnight shipping—paying a premium to get the masks delivered as quickly as possible because the protests and Covid were both raging every day.

36. But unlike so many Movement Ink shipments before—including the initial three political mask shipments—the four that René and Movement Ink shipped on June 3, 2020 did not arrive on time.

37. This was no snafu in mail processing or an unavoidable or mistaken delay.

38. Rather, all four political mask shipments were, as indicated by the Postal Service's online tracking system, "Seized by Law Enforcement" (i.e., by Defendants) in Oakland on June 3

or June 4—the day the political mask shipments were already supposed to be arriving to organizers in Brooklyn, DC, Minneapolis, and St. Louis.

39. René and the shipments' intended recipients were greeted by this cryptic "Alert" on the Postal Service's online tracking system, which said only that René's and Movement Ink's political mask shipments were "Seized by Law Enforcement":




40. The four political mask shipments would not end up arriving at their destinations until June 6 (two days and several protests late), having been held by Defendants without reasonable suspicion, probable cause, or a warrant for more than 24 hours.

41. René and the mask recipients were all confused, dismayed, and disrupted in their critical work. Instead of focusing on printing and shipping political Covid-protective masks and other apparel, René and Movement Ink had to waste time figuring out why their innocuous packages were in the hands of law enforcement, and how to get them released, while also fielding questions, concerns, and even accusations from partners, community members, and social media commenters.

42. Similarly, the recipient organizers had to divert attention and resources to the seizure issue, having to consult legal counsel and field calls about this distraction, and having to post on social media about this latest disruption to their organizing efforts and their health and safety efforts.

43. René, Movement Ink, and their partners were left wondering why these Covid-protective political masks were in the hands of law enforcement officials instead of on the faces of political protestors.

United States District Court
Northern District of California

44. This uncertainty had a catastrophic impact on the reputation and the business that René and Movement Ink had worked so hard and so long to build.

45. As evidenced by the seven political mask shipments already made and commitments for more going forward on a rolling basis, René and Movement Ink were poised to become regular, national suppliers of activist Covid-protective masks and other activist apparel for protest movements and organizers.

46. Instead, Defendants' baseless seizures and searches of René's and Movement Ink's political mask shipments created a pall of suspicion, distraction, uncertainty, and confusion around René and Movement Ink.

47. René and Movement Ink suffered severe reputational harm because of Defendants' baseless seizures and searches of René's and Movement Ink's political mask shipments.

48. Talks for future orders were terminated, and René could not even get a call back from many of his partners—including not only his new partners, but preexisting ones too.

49. For example, in addition to the recipients of the political mask shipments at issue in this case, who terminated talks for future orders, at least three other groups who had regularly ordered from and collaborated with René and Movement Ink ceased their partnerships and cut off all ties with René and Movement Ink.

50. Those partnerships have not revived, and that business has not returned.

51. René's and Movement Ink's substantial, steady revenue opportunity and their opportunity to do substantial, steady work supporting movements and causes they are deeply committed to were dead on arrival because of Defendants' baseless seizures and searches of René's and Movement Ink's political mask shipments.

52. Defendants' baseless seizures and searches also caused and continue to cause René significant emotional and mental distress—not just because of his and Movement Ink's financial and reputational hits, but because he and Movement Ink have been effectively shut out of a movement and a community that they spent (and continue to spend) years investing their time and energy in.

United States District Court
Northern District of California

53. All of the harms described in paragraphs 35 through 52 and 99 are the direct and sole result and effect of Defendants' baseless, suspicionless, unconstitutional, and tortious seizures and searches of René's and Movement Ink's political mask shipments.

54. Feeling targeted, surveilled, despondent, and desperate to find out what happened, René worked with the office of his Congressperson, Rep. Barbara Lee, who submitted an official inquiry to the Postal Service.

55. The Postal Service responded in a letter that:

> *On June 3, 2020, the parcels in question were detained solely because the external physical characteristics of the parcels were consistent with parcels in other non-related instances that were confirmed to contain nonmailable matter, specifically controlled substances. The parcels in question were not detained based on the sender or recipient, because they were associated with organizations involved in protests or any other First Amendment protected activity, or because it was known the parcels contained masks or any articles containing statements supporting any group or position. Furthermore, there were no external characteristics of the parcels that indicated they contained masks or were associated with any specific organization.*
>
> *The customer in this matter did not contact the Inspection Service, but instead contacted the news media. On the morning of June 5, when the Inspection Service became aware of the media stories on the matter and what the contents of the parcels were, we immediately took action to rectify the situation. At 7:07 AM the parcels were placed back in the mail stream. The parcels were delivered on the following day to the intended destinations. Additionally, the USPIS assisted Mr. Quinonez with obtaining a full*

*refund for the cost of the mailings.*

56. The Postal Service's letter to Rep. Lee's office asserts that USPIS became aware of the contents of the parcels on June 5. But as described in paragraph 75, Defendants' own seizure notes explain that they knew the packages contained—in their words—"BLM MASKS."

57. The Postal Service's letter to Rep. Lee's office asserts that USPIS assisted René in obtaining a refund for the cost of the mailings. That is not true. René and Movement Ink did not receive refunds.

58. On information and belief, the recipients of the packages may have received refunds of the shipping costs from USPIS.

59. In any event, a refund could and would do nothing to account for any of the harms described in paragraphs 35 through 52 and 99, which remain and will remain entirely unremedied.

60. René's and Movement Ink's political mask shipments resembled lawful packages that legitimate businesses, including Movement Ink, ship on a regular basis.

61. The four political mask shipments were in neatly taped, nondescript brown boxes with the identities and locations of the sender and the recipients clearly labeled.

62. René remains at a loss to understand how that could give rise to a federal law enforcement seizure of his and Movement Ink's personal property.

63. According to the Postal Service's letter to Rep. Lee's office, the federal postal official Defendants asserted that they could seize, search, and hold for over 24 hours René's and Movement Ink's property because of the packages' "external physical characteristics".

64. According to the Postal Service's letter to Rep. Lee's office, the federal postal official Defendants asserted that they could seize, search, and hold for over 24 hours René's and Movement Ink's property based on "external physical characteristics" that apply to millions of packages shipped around the country every day, and to packages shipped by René and Movement Ink on a regular basis.

65. The "external physical characteristics" that the federal postal official Defendants relied on apply to millions of packages shipped around the country every day, and to packages

United States District Court
Northern District of California

United States District Court
Northern District of California

shipped by René and Movement Ink on a regular basis.

66. René also remains shocked that the federal postal official Defendants would do nothing for more than 24 hours to confirm or dispel any concerns or suspicions, namely by either confirming the identity of the sender and/or seeking a judicial warrant based on an attempt to demonstrate probable cause.

67. For more than 24 hours, Defendants did not attempt to confirm the identity or location of the sender of the packages.

68. For more than 24 hours, Defendants did not seek or obtain a warrant.

69. For more than 24 hours, Defendants did not establish that the packages posed an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence would be destroyed, or an articulable risk that a particular suspect would escape.

70. Instead, it appears from the Postal Service's letter to Rep. Lee's office that Defendants abandoned the political mask shipments to sit indefinitely until the issue became national news.

71. Had the issue not become national news, the packages would have remained seized even longer.

72. Defendants' own notes regarding the seizures and searches of René's and Movement Ink's packages, which René obtained through Freedom of Information Act requests to the Postal Service, confirm that Defendants did not have an individualized, articulable basis for seizing the political mask shipments, and did not obtain a warrant for their continued seizure.

73. Defendants' notes make clear that Defendants seized the political mask shipments without reasonable suspicion, because there was no individualized, particularized basis to believe the packages contained contraband or evidence of a crime, which is not satisfied by the nondescript, common characteristics of the packages at issue.

74. Defendants' notes make clear that Defendants left the packages unattended for over 24 hours without efforts to confirm or dispel whatever assumptions attended their seizures of the packages, which violates the Fourth Amendment even if the initial seizures could be justified by

United States District Court
Northern District of California

reasonable suspicion to conduct brief investigatory seizures.

75. Defendants' notes make clear that Defendants knew the contents of the package were, in Defendants' words, "BLM MASKS."

76. It is not clear whether Defendants knew that the packages contained—in Defendants' words—"BLM MASKS" before seizing the packages.

77. If Defendants knew that the packages contained—in Defendants' words—"BLM MASKS" before seizing the packages, Defendants violated the First Amendment by seizing packages because of their political messages.

78. If Defendants learned the contents of the packages after seizing them, by searching them, Defendants violated the Fourth Amendment by searching the packages in the absence of consent, probable cause plus a warrant, or probable cause plus exigent circumstances.

79. There was and is no indication anywhere—nor could there be—that the packages posed an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence would be destroyed, or an articulable risk that a particular suspect would escape.

80. Defendants' notes make clear that they did not have reasonable suspicion to conduct the initial seizures of the political mask shipments. Defendants' notes contend that the shipments were suspicious because of (1) "bulging contents," (2) "frequently mailed parcels from the same sender/address," (3) "parcel destination is a known drug trafficking area," (4) "taped or glued on all seams," and (5) "parcel mailed from a known drug source area."

81. Defendants' assertions are not reasonable suspicion because they do not satisfy the Fourth Amendment's demand for individualized circumstances suggesting that a particular, articulable crime is occurring in order to justify a seizure.

82. Defendants' assertions justifying the initial seizures of the political mask shipments apply to (1) any United States business or individual (2) that regularly sends padded items (like pillows, or vases wrapped in bulging padding) (3) in well-bound boxes (4) from just about any major United States city to any other major United States city.

83. On information and belief, Defendants have no comprehensive list of which cities

are or are not "known drug trafficking area[s]" or "known drug source area[s]."

84. On information and belief, Defendants do not rely on any definition of "known drug trafficking area" or "known drug source area."

85. On information and belief, most if not all American cities are either "known drug trafficking area[s]" or "known drug source area[s]."

86. If Defendants' assertions were sufficient to satisfy reasonable suspicion, then (1) any United States business or individual (2) that regularly sends padded items (like pillows, or vases wrapped in bulging padding) (3) in well-bound boxes (4) from just about any major United States city to any other major United States city is continually subjecting themselves to arbitrary seizure of their property by federal postal officials.

87. There is one additional purported justification that appears in Defendants' notes (and is implied in the letter sent from the Postal Service to Rep. Lee's office): that the political mask shipments resembled packages recently "sent from Eureka" that contained contraband.

88. That additional assertion regarding Eureka did not rise to reasonable suspicion sufficient to conduct a brief investigatory seizure.

89. Defendants could have confirmed or dispelled that assertion regarding Eureka without first seizing the packages.

90. After seizing the packages, Defendants could have immediately determined that the packages were from Movement Ink in Oakland, not anyone in Eureka.

91. After determining that the packages were from Movement Ink in Oakland and not anyone in Eureka, Defendants could have immediately released the packages.

92. Assuming Defendants' assertion regarding Eureka gave rise to reasonable suspicion sufficient to conduct a brief investigatory seizure (which it did not), and that Defendants could not confirm or dispel that assertion without first seizing the packages (which there is no reason to think they could not), Defendants still obviously violated the Fourth Amendment because as soon as they conducted that seizure, they could and should have immediately determined that the packages were from Movement Ink in Oakland, not anyone in Eureka, and immediately released them.

United States District Court
Northern District of California

93. Defendants did not release the packages or seek a warrant for over 24 hours.

94. Even if Defendants determined that the packages were from Movement Ink in Oakland, not anyone in Eureka, but still remained convinced they could not release the packages, they still obviously violated the Fourth Amendment because in order to continue the seizure of the packages beyond that brief investigatory period or to search the packages, they needed probable cause and a warrant.

95. Defendants did not have probable cause.

96. Defendants did not obtain a warrant.

97. Instead, they searched the packages and/or left the packages unattended for more than 24 hours.

98. Defendants would apparently have let the packages sit indefinitely had René and Movement Ink not generated a national news story about Defendants' violations of their Fourth and First Amendment rights.

99. In addition to the harms and injuries described in paragraphs 35 through 52, Defendants' baseless seizures and searches of René's and Movement Ink's political mask shipments have directly resulted in the chilling of René's and Movement Ink's political speech in two ways: (1) René and Movement Ink are less active and vocal on social media and in the community because of the pall of suspicion and fear of surveillance that Defendants' conduct has cast over them, and (2) René and Movement Ink have lost substantial opportunities to express their political views through their work because Defendants' conduct has significantly depressed their client base and their apparel production, which have always been built on the basis of political activism and speech.

100. On March 11, 2022, René and Movement Ink submitted claims for relief under the Federal Tort Claims Act to the Postal Service and the Postal Inspection Service. The agencies have until six months from that date to resolve the claims. If the claims are not resolved by the end of that six months, René and Movement Ink intend to amend this Complaint to include those claims in this action.

## CLAIMS FOR RELIEF

### Count 1
### Unreasonable Seizures in Violation of the Fourth Amendment
### Against Defendants Does 1 through 5
### Under *Bivens*

101. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 100.

102. Plaintiffs shipped four packages of their personal property via the United States Postal Service. Plaintiffs retained ownership rights and interests and possessory rights and interests in their packages until the packages were delivered to their intended recipients.

103. Defendants Does 1 through 5 seized Plaintiffs' personal property in violation of the Fourth Amendment, delaying the packages' arrival to their intended recipients by 48 hours, during which time the recipients were in dire need of the packages. Defendants' clearly and obviously unjustified and unreasonable seizures of Plaintiffs' packages caused the packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs.

104. Seizures of personal property without reasonable suspicion, probable cause, or a warrant are obviously unconstitutional.

105. It is clearly established and every reasonable postal official has fair warning that warrantless seizures of personal property are presumptively unconstitutional.

106. It is clearly established and every reasonable postal official has fair warning that postal officials must have at least reasonable suspicion to conduct brief investigatory seizures of personal property.

107. It is clearly established and every reasonable postal official has fair warning that postal officials do not have reasonable suspicion to conduct brief investigatory seizures of personal property in the absence of individualized circumstances suggesting that a particular, articulable crime is occurring.

108. It is clearly established and every reasonable postal official has fair warning that postal officials must have probable cause that a particular, articulable crime is occurring and either a warrant or exigent circumstances to seize personal property beyond the time needed for a brief

United States District Court
Northern District of California

investigatory seizure based on reasonable suspicion.

109. It is clearly established and every reasonable postal official has fair warning that postal officials do not have probable cause in the absence of individualized circumstances suggesting, to a higher degree of certainty than reasonable suspicion, that a particular, articulable crime is occurring.

110. It is clearly established and every reasonable postal official has fair warning that to forgo the warrant requirement, postal officials must have probable cause and face exigent circumstances.

111. It is clearly established and every reasonable postal official has fair warning that postal officials do not face exigent circumstances in the absence of an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence will be destroyed, or an articulable risk that a particular suspect will escape.

112. It is clearly established and every reasonable postal official has fair warning that postal officials violate the Fourth Amendment by (1) seizing personal property in the absence of reasonable suspicion based on individualized circumstances suggesting that a particular, articulable crime is occurring or (2) seizing property beyond the time needed for a brief investigatory seizure arising from reasonable suspicion in the absence of probable cause (individualized circumstances suggesting, to a higher degree of certainty than reasonable suspicion, that a particular, articulable crime is occurring) plus either a warrant or an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence will be destroyed, or an articulable risk that a particular suspect will escape.

113. It is clearly established and every reasonable postal official has fair warning that reasonable suspicion cannot be based on assumed facts that the postal official could dispel before conducting an investigatory seizure of personal property.

114. It is clearly established and every reasonable postal official has fair warning that reasonable suspicion cannot be based on characteristics that, individually and as a whole, apply to personal property that has no connection to criminal activity.

115. It is clearly established and every reasonable postal official has fair warning that probable cause cannot be based on an assumed fact that purportedly formed the basis for reasonable suspicion but was dispelled while conducting an investigatory seizure of personal property.

116. It is clearly established and every reasonable postal official has fair warning that probable cause cannot be based on characteristics that, individually and as a whole, apply to personal property that has no connection to criminal activity.

117. It is clearly established and every reasonable postal official has fair warning that probable cause to believe that drugs are present is not, in the absence of a risk of their destruction, an exigent circumstance that permits forgoing the warrant requirement.

118. Defendants seized Plaintiffs' personal property without reasonable suspicion. The characteristics they purportedly relied on to seize Plaintiffs' packages (i.e., that the packages were allegedly bulging, were taped all around, were going from one purported drug activity city to another, and were sent by a frequent shipper) apply, individually and as a whole, to entirely innocent packages that businesses small and large—including Plaintiffs themselves—ship throughout the country every single day. Every reasonable postal official should know that those characteristics do not give rise to reasonable suspicion because those characteristics are not individualized circumstances suggesting that a particular, articulable crime (or any crime) is occurring.

119. Even with the additional allegation that Plaintiffs' packages resembled some from Eureka that had contained drugs, Defendants did not have reasonable suspicion to conduct an investigatory seizure because (1) that additional factual assumption did not give rise to reasonable suspicion and (2) even if it did, Defendants could have easily dispelled that factual assumption without seizing Plaintiffs' packages simply by confirming that the packages came from Movement Ink LLC in Oakland (not any suspicious sender from Eureka).

120. Even if the totality of circumstances did arise to reasonable suspicion (which it did not) and Defendants could not dispel that suspicion before seizing Plaintiffs' packages for a brief investigatory seizure, that suspicion was (or should have been) dispelled immediately by Defendants' confirming that Plaintiffs' packages came from Movement Ink LLC in Oakland (not

United States District Court
Northern District of California

any suspicious sender from Eureka). Therefore, Defendants should have released Plaintiffs' packages immediately upon that realization, or sought a warrant in order to continue their seizure of the packages or to search the packages.

121. But Defendants did not release Plaintiffs' packages immediately upon that realization. And they did not get a warrant (nor could they have, because these circumstances did not amount to probable cause) or have any reason to believe that Plaintiffs' packages posed an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence would be destroyed (after all, it was in Defendants' possession), or an articulable risk that a particular suspect would escape. Nevertheless, Defendants continued to seize and even search Plaintiffs' packages.

122. Therefore, at every step, Defendants violated Plaintiffs' clearly established right to be free from unreasonable seizures of their personal property.

123. Defendants are line-level postal officials operating in the common and recurrent sphere of garden-variety postal inspections and law enforcement with respect to personal property.

124. Plaintiffs have no alternative remedies for their injuries caused by Defendants, and Plaintiffs' claims do not implicate separation of powers, national security considerations, or any other special factors counseling hesitation against a damages remedy for Plaintiffs' injuries.

125. Defendants' conduct caused: severe reputational harms to Plaintiffs; Plaintiffs' packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs; significant loss of Plaintiffs' ongoing and future revenue; and ongoing emotional and mental distress to René.

126. Plaintiffs are entitled to compensatory damages for their injuries caused by Defendants' seizures of their personal property.

**Count 2**
**Unreasonable Seizures in Violation of the Fourth Amendment**
**Against Defendants Does 1 through 5**
**Under the Westfall Act (28 U.S.C. § 2679(b)(2)(A))**

127. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 100.

128. Plaintiffs shipped four packages of their personal property via the United States Postal Service. Plaintiffs retained ownership rights and interests and possessory rights and interests in their packages until the packages were delivered to their intended recipients.

129. Defendants Does 1 through 5 seized Plaintiffs' personal property in violation of the Fourth Amendment, delaying the packages' arrival to their intended recipients by 48 hours, during which time the recipients were in dire need of the packages. Defendants' clearly and obviously unjustified and unreasonable seizures of Plaintiffs' packages caused the packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs.

130. Seizures of personal property without reasonable suspicion, probable cause, or a warrant are obviously unconstitutional.

131. It is clearly established and every reasonable postal official has fair warning that warrantless seizures of personal property are presumptively unconstitutional.

132. It is clearly established and every reasonable postal official has fair warning that postal officials must have at least reasonable suspicion to conduct brief investigatory seizures of personal property.

133. It is clearly established and every reasonable postal official has fair warning that postal officials do not have reasonable suspicion to conduct brief investigatory seizures of personal property in the absence of individualized circumstances suggesting that a particular, articulable crime is occurring.

134. It is clearly established and every reasonable postal official has fair warning that postal officials must have probable cause that a particular, articulable crime is occurring and either a warrant or exigent circumstances to seize personal property beyond the time needed for a brief investigatory seizure based on reasonable suspicion.

135. It is clearly established and every reasonable postal official has fair warning that postal officials do not have probable cause in the absence of individualized circumstances suggesting, to a higher degree of certainty than reasonable suspicion, that a particular, articulable crime is occurring.

136. It is clearly established and every reasonable postal official has fair warning that to forgo the warrant requirement, postal officials must have probable cause and face exigent circumstances.

137. It is clearly established and every reasonable postal official has fair warning that postal officials do not face exigent circumstances in the absence of an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence will be destroyed, or an articulable risk that a particular suspect will escape.

138. It is clearly established and every reasonable postal official has fair warning that postal officials violate the Fourth Amendment by (1) seizing personal property in the absence of reasonable suspicion based on individualized circumstances suggesting that a particular, articulable crime is occurring or (2) seizing property beyond the time needed for a brief investigatory seizure arising from reasonable suspicion in the absence of probable cause (individualized circumstances suggesting, to a higher degree of certainty than reasonable suspicion, that a particular, articulable crime is occurring) plus either a warrant or an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence will be destroyed, or an articulable risk that a particular suspect will escape.

139. It is clearly established and every reasonable postal official has fair warning that reasonable suspicion cannot be based on assumed facts that the postal official could dispel before conducting an investigatory seizure of personal property.

140. It is clearly established and every reasonable postal official has fair warning that reasonable suspicion cannot be based on characteristics that, individually and as a whole, apply to personal property that has no connection to criminal activity.

141. It is clearly established and every reasonable postal official has fair warning that probable cause cannot be based on an assumed fact that purportedly formed the basis for reasonable suspicion but was dispelled while conducting an investigatory seizure of personal property.

142. It is clearly established and every reasonable postal official has fair warning that probable cause cannot be based on characteristics that, individually and as a whole, apply to personal

United States District Court
Northern District of California

property that has no connection to criminal activity.

143. It is clearly established and every reasonable postal official has fair warning that probable cause to believe that drugs are present is not, in the absence of a risk of their destruction, an exigent circumstance that permits forgoing the warrant requirement.

144. Defendants seized Plaintiffs' personal property without reasonable suspicion. The characteristics they purportedly relied on to seize Plaintiffs' packages (i.e., that the packages were allegedly bulging, were taped all around, were going from one purported drug activity city to another, and were sent by a frequent shipper) apply, individually and as a whole, to entirely innocent packages that businesses small and large—including Plaintiffs themselves—ship throughout the country every single day. Every reasonable postal official should know that those characteristics do not give rise to reasonable suspicion because those characteristics are not individualized circumstances suggesting that a particular, articulable crime (or any crime) is occurring.

145. Even with the additional allegation that Plaintiffs' packages resembled some from Eureka that had contained drugs, Defendants did not have reasonable suspicion to conduct an investigatory seizure because (1) that additional factual assumption did not give rise to reasonable suspicion and (2) even if it did, Defendants could have easily dispelled that factual assumption without seizing Plaintiffs' packages simply by confirming that the packages came from Movement Ink LLC in Oakland (not any suspicious sender from Eureka).

146. Even if the totality of circumstances did arise to reasonable suspicion (which it did not) and Defendants could not dispel that suspicion before seizing Plaintiffs' packages for a brief investigatory seizure, that suspicion was (or should have been) dispelled immediately by Defendants' confirming that Plaintiffs' packages came from Movement Ink LLC in Oakland (not any suspicious sender from Eureka). Therefore, Defendants should have released Plaintiffs' packages immediately upon that realization, or sought a warrant in order to continue their seizure of the packages or to search the packages.

147. But Defendants did not release Plaintiffs' packages immediately upon that realization. And they did not get a warrant (nor could they have, because these circumstances did

not amount to probable cause) or have any reason to believe that Plaintiffs' packages posed an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence would be destroyed (after all, it was in Defendants' possession), or an articulable risk that a particular suspect would escape. Nevertheless, Defendants continued to seize and even search Plaintiffs' packages.

148. Therefore, at every step, Defendants violated Plaintiffs' clearly established right to be free from unreasonable seizures of their personal property.

149. Defendants are line-level postal officials operating in the common and recurrent sphere of garden-variety postal inspections and law enforcement with respect to personal property.

150. Plaintiffs have no alternative remedies for their injuries caused by Defendants, and Plaintiffs' claims do not implicate separation of powers, national security considerations, or any other special factors counseling hesitation against a damages remedy for Plaintiffs' injuries.

151. Defendants' conduct caused: severe reputational harms to Plaintiffs; Plaintiffs' packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs; significant loss of Plaintiffs' ongoing and future revenue; and ongoing emotional and mental distress to René.

152. Plaintiffs are entitled to compensatory damages for their injuries caused by Defendants' seizures of their personal property.

**Count 3**
**Unreasonable Seizures in Violation of the Fourth Amendment**
**Against Defendants Does 1 through 5**
**Under the Fourth Amendment**

153. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 100.

154. Plaintiffs shipped four packages of their personal property via the United States Postal Service. Plaintiffs retained ownership rights and interests and possessory rights and interests in their packages until the packages were delivered to their intended recipients.

155. Defendants Does 1 through 5 seized Plaintiffs' personal property in violation of the Fourth Amendment, delaying the packages' arrival to their intended recipients by 48 hours, during

United States District Court
Northern District of California

which time the recipients were in dire need of the packages. Defendants' clearly and obviously unjustified and unreasonable seizures of Plaintiffs' packages caused the packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs.

156. Seizures of personal property without reasonable suspicion, probable cause, or a warrant are obviously unconstitutional.

157. It is clearly established and every reasonable postal official has fair warning that warrantless seizures of personal property are presumptively unconstitutional.

158. It is clearly established and every reasonable postal official has fair warning that postal officials must have at least reasonable suspicion to conduct brief investigatory seizures of personal property.

159. It is clearly established and every reasonable postal official has fair warning that postal officials do not have reasonable suspicion to conduct brief investigatory seizures of personal property in the absence of individualized circumstances suggesting that a particular, articulable crime is occurring.

160. It is clearly established and every reasonable postal official has fair warning that postal officials must have probable cause that a particular, articulable crime is occurring and either a warrant or exigent circumstances to seize personal property beyond the time needed for a brief investigatory seizure based on reasonable suspicion.

161. It is clearly established and every reasonable postal official has fair warning that postal officials do not have probable cause in the absence of individualized circumstances suggesting, to a higher degree of certainty than reasonable suspicion, that a particular, articulable crime is occurring.

162. It is clearly established and every reasonable postal official has fair warning that to forgo the warrant requirement, postal officials must have probable cause and face exigent circumstances.

163. It is clearly established and every reasonable postal official has fair warning that postal officials do not face exigent circumstances in the absence of an articulable risk of immediate

United States District Court
Northern District of California

physical harm, an articulable risk that particular relevant evidence will be destroyed, or an articulable risk that a particular suspect will escape.

164. It is clearly established and every reasonable postal official has fair warning that postal officials violate the Fourth Amendment by (1) seizing personal property in the absence of reasonable suspicion based on individualized circumstances suggesting that a particular, articulable crime is occurring or (2) seizing property beyond the time needed for a brief investigatory seizure arising from reasonable suspicion in the absence of probable cause (individualized circumstances suggesting, to a higher degree of certainty than reasonable suspicion, that a particular, articulable crime is occurring) plus either a warrant or an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence will be destroyed, or an articulable risk that a particular suspect will escape.

165. It is clearly established and every reasonable postal official has fair warning that reasonable suspicion cannot be based on assumed facts that the postal official could dispel before conducting an investigatory seizure of personal property.

166. It is clearly established and every reasonable postal official has fair warning that reasonable suspicion cannot be based on characteristics that, individually and as a whole, apply to personal property that has no connection to criminal activity.

167. It is clearly established and every reasonable postal official has fair warning that probable cause cannot be based on an assumed fact that purportedly formed the basis for reasonable suspicion but was dispelled while conducting an investigatory seizure of personal property.

168. It is clearly established and every reasonable postal official has fair warning that probable cause cannot be based on characteristics that, individually and as a whole, apply to personal property that has no connection to criminal activity.

169. It is clearly established and every reasonable postal official has fair warning that probable cause to believe that drugs are present is not, in the absence of a risk of their destruction, an exigent circumstance that permits forgoing the warrant requirement.

170. Defendants seized Plaintiffs' personal property without reasonable suspicion. The

characteristics they purportedly relied on to seize Plaintiffs' packages (i.e., that the packages were allegedly bulging, were taped all around, were going from one purported drug activity city to another, and were sent by a frequent shipper) apply, individually and as a whole, to entirely innocent packages that businesses small and large—including Plaintiffs themselves—ship throughout the country every single day. Every reasonable postal official should know that those characteristics do not give rise to reasonable suspicion because those characteristics are not individualized circumstances suggesting that a particular, articulable crime (or any crime) is occurring.

171. Even with the additional allegation that Plaintiffs' packages resembled some from Eureka that had contained drugs, Defendants did not have reasonable suspicion to conduct an investigatory seizure because (1) that additional factual assumption did not give rise to reasonable suspicion and (2) even if it did, Defendants could have easily dispelled that factual assumption without seizing Plaintiffs' packages simply by confirming that the packages came from Movement Ink LLC in Oakland (not any suspicious sender from Eureka).

172. Even if the totality of circumstances did arise to reasonable suspicion (which it did not) and Defendants could not dispel that suspicion before seizing Plaintiffs' packages for a brief investigatory seizure, that suspicion was (or should have been) dispelled immediately by Defendants' confirming that Plaintiffs' packages came from Movement Ink LLC in Oakland (not any suspicious sender from Eureka). Therefore, Defendants should have released Plaintiffs' packages immediately upon that realization, or sought a warrant in order to continue their seizure of the packages or to search the packages.

173. But Defendants did not release Plaintiffs' packages immediately upon that realization. And they did not get a warrant (nor could they have, because these circumstances did not amount to probable cause) or have any reason to believe that Plaintiffs' packages posed an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence would be destroyed (after all, it was in Defendants' possession), or an articulable risk that a particular suspect would escape. Nevertheless, Defendants continued to seize and even search Plaintiffs' packages.

United States District Court
Northern District of California

174. Therefore, at every step, Defendants violated Plaintiffs' clearly established right to be free from unreasonable seizures of their personal property.

175. Defendants are line-level postal officials operating in the common and recurrent sphere of garden-variety postal inspections and law enforcement with respect to personal property.

176. Plaintiffs have no alternative remedies for their injuries caused by Defendants, and Plaintiffs' claims do not implicate separation of powers, national security considerations, or any other special factors counseling hesitation against a damages remedy for Plaintiffs' injuries.

177. Defendants' conduct caused: severe reputational harms to Plaintiffs; Plaintiffs' packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs; significant loss of Plaintiffs' ongoing and future revenue; and ongoing emotional and mental distress to René.

178. Plaintiffs are entitled to compensatory damages for their injuries caused by Defendants' seizures of their personal property.

**Count 4**
**Unreasonable Searches in Violation of the Fourth Amendment**
**Against Defendants Does 1 through 5**
**Under *Bivens***

179. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 100.

180. Plaintiffs shipped four packages of their personal property via the United States Postal Service. Plaintiffs retained ownership rights and interests and possessory rights and interests in their packages until the packages were delivered to their intended recipients.

181. Defendants Does 1 through 5 seized and searched Plaintiffs' personal property in violation of the Fourth Amendment, delaying the packages' arrival to their intended recipients by 48 hours, during which time the recipients were in dire need of the packages. Defendants' clearly and obviously unjustified and unreasonable seizures and searches of Plaintiffs' packages caused the packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs.

182. Searches of personal property without reasonable suspicion, probable cause, or a

United States District Court
Northern District of California

warrant are obviously unconstitutional.

183. It is clearly established and every reasonable postal official has fair warning that warrantless searches of personal property are presumptively unconstitutional.

184. It is clearly established and every reasonable postal official has fair warning that postal officials must have probable cause that a particular, articulable crime is occurring and either a warrant or exigent circumstances to search personal property.

185. It is clearly established and every reasonable postal official has fair warning that postal officials do not have probable cause in the absence of individualized circumstances suggesting, to a higher degree of certainty than reasonable suspicion, that a particular, articulable crime is occurring.

186. It is clearly established and every reasonable postal official has fair warning that to forgo the warrant requirement, postal officials must have probable cause and face exigent circumstances.

187. It is clearly established and every reasonable postal official has fair warning that postal officials do not face exigent circumstances in the absence of an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence will be destroyed, or an articulable risk that a particular suspect will escape.

188. It is clearly established and every reasonable postal official has fair warning that postal officials violate the Fourth Amendment by searching personal property in the absence of probable cause (individualized circumstances suggesting, to a higher degree of certainty than reasonable suspicion, that a particular, articulable crime is occurring) and either a warrant or an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence will be destroyed, or an articulable risk that a particular suspect will escape.

189. It is clearly established and every reasonable postal official has fair warning that probable cause cannot be based on an assumed fact that purportedly formed the basis for reasonable suspicion but was dispelled while conducting an investigatory seizure of personal property.

190. It is clearly established and every reasonable postal official has fair warning that

probable cause cannot be based on characteristics that, individually and as a whole, apply to personal property that has no connection to criminal activity.

191. It is clearly established and every reasonable postal official has fair warning that probable cause to believe that drugs are present is not, in the absence of a risk of their destruction, an exigent circumstance that permits forgoing the warrant requirement.

192. Defendants seized Plaintiffs' personal property without reasonable suspicion. The characteristics they purportedly relied on to seize Plaintiffs' packages (i.e., that the packages were allegedly bulging, were taped all around, were going from one purported drug activity city to another, and were sent by a frequent shipper) apply, individually and as a whole, to entirely innocent packages that businesses small and large—including Plaintiffs themselves—ship throughout the country every single day. Every reasonable postal official should know that those characteristics do not give rise to reasonable suspicion because those characteristics are not individualized circumstances suggesting that a particular, articulable crime (or any crime) is occurring.

193. Even with the additional allegation that Plaintiffs' packages resembled some from Eureka that had contained drugs, Defendants did not have reasonable suspicion to conduct an investigatory seizure because (1) that additional factual assumption did not give rise to reasonable suspicion and (2) even if it did, Defendants could have easily dispelled that factual assumption without seizing Plaintiffs' packages simply by confirming that the packages came from Movement Ink LLC in Oakland (not any suspicious sender from Eureka).

194. Even if the totality of circumstances did arise to reasonable suspicion (which it did not) and Defendants could not dispel that suspicion before seizing Plaintiffs' packages for a brief investigatory seizure, that suspicion was (or should have been) dispelled immediately by Defendants' confirming that Plaintiffs' packages came from Movement Ink LLC in Oakland (not any suspicious sender from Eureka). Therefore, Defendants should have released Plaintiffs' packages immediately upon that realization, or sought a warrant in order to continue their seizure of the packages or to search the packages.

195. But Defendants did not release Plaintiffs' packages immediately upon that

realization. And they did not get a warrant (nor could they have, because these circumstances did not amount to probable cause) or have any reason to believe that Plaintiffs' packages posed an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence would be destroyed (after all, it was in Defendants' possession), or an articulable risk that a particular suspect would escape. Nevertheless, Defendants continued to seize and even search Plaintiffs' packages.

196. Therefore, Defendants violated Plaintiffs' clearly established right to be free from unreasonable searches of their personal property.

197. Defendants are line-level postal officials operating in the common and recurrent sphere of garden-variety postal inspections and law enforcement with respect to personal property.

198. Plaintiffs have no alternative remedies for their injuries caused by Defendants, and Plaintiffs' claims do not implicate separation of powers, national security considerations, or any other special factors counseling hesitation against a damages remedy for Plaintiffs' injuries.

199. Defendants' conduct caused: severe reputational harms to Plaintiffs; Plaintiffs' packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs; significant loss of Plaintiffs' ongoing and future revenue; and ongoing emotional and mental distress to René.

200. Plaintiffs are entitled to compensatory damages for their injuries caused by Defendants' searches of their personal property.

**Count 5**
**Unreasonable Searches in Violation of the Fourth Amendment**
**Against Defendants Does 1 through 5**
**Under the Westfall Act (28 U.S.C. § 2679(b)(2)(A))**

201. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 100.

202. Plaintiffs shipped four packages of their personal property via the United States Postal Service. Plaintiffs retained ownership rights and interests and possessory rights and interests in their packages until the packages were delivered to their intended recipients.

203. Defendants Does 1 through 5 seized and searched Plaintiffs' personal property in

United States District Court
Northern District of California

violation of the Fourth Amendment, delaying the packages' arrival to their intended recipients by 48 hours, during which time the recipients were in dire need of the packages. Defendants' clearly and obviously unjustified and unreasonable seizures and searches of Plaintiffs' packages caused the packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs.

204. Searches of personal property without reasonable suspicion, probable cause, or a warrant are obviously unconstitutional.

205. It is clearly established and every reasonable postal official has fair warning that warrantless searches of personal property are presumptively unconstitutional.

206. It is clearly established and every reasonable postal official has fair warning that postal officials must have probable cause that a particular, articulable crime is occurring and either a warrant or exigent circumstances to search personal property.

207. It is clearly established and every reasonable postal official has fair warning that postal officials do not have probable cause in the absence of individualized circumstances suggesting, to a higher degree of certainty than reasonable suspicion, that a particular, articulable crime is occurring.

208. It is clearly established and every reasonable postal official has fair warning that to forgo the warrant requirement, postal officials must have probable cause and face exigent circumstances.

209. It is clearly established and every reasonable postal official has fair warning that postal officials do not face exigent circumstances in the absence of an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence will be destroyed, or an articulable risk that a particular suspect will escape.

210. It is clearly established and every reasonable postal official has fair warning that postal officials violate the Fourth Amendment by searching personal property in the absence of probable cause (individualized circumstances suggesting, to a higher degree of certainty than reasonable suspicion, that a particular, articulable crime is occurring) and either a warrant or an

United States District Court
Northern District of California

articulable risk of immediate physical harm, an articulable risk that particular relevant evidence will be destroyed, or an articulable risk that a particular suspect will escape.

211. It is clearly established and every reasonable postal official has fair warning that probable cause cannot be based on an assumed fact that purportedly formed the basis for reasonable suspicion but was dispelled while conducting an investigatory seizure of personal property.

212. It is clearly established and every reasonable postal official has fair warning that probable cause cannot be based on characteristics that, individually and as a whole, apply to personal property that has no connection to criminal activity.

213. It is clearly established and every reasonable postal official has fair warning that probable cause to believe that drugs are present is not, in the absence of a risk of their destruction, an exigent circumstance that permits forgoing the warrant requirement.

214. Defendants seized Plaintiffs' personal property without reasonable suspicion. The characteristics they purportedly relied on to seize Plaintiffs' packages (i.e., that the packages were allegedly bulging, were taped all around, were going from one purported drug activity city to another, and were sent by a frequent shipper) apply, individually and as a whole, to entirely innocent packages that businesses small and large—including Plaintiffs themselves—ship throughout the country every single day. Every reasonable postal official should know that those characteristics do not give rise to reasonable suspicion because those characteristics are not individualized circumstances suggesting that a particular, articulable crime (or any crime) is occurring.

215. Even with the additional allegation that Plaintiffs' packages resembled some from Eureka that had contained drugs, Defendants did not have reasonable suspicion to conduct an investigatory seizure because (1) that additional factual assumption did not give rise to reasonable suspicion and (2) even if it did, Defendants could have easily dispelled that factual assumption without seizing Plaintiffs' packages simply by confirming that the packages came from Movement Ink LLC in Oakland (not any suspicious sender from Eureka).

216. Even if the totality of circumstances did arise to reasonable suspicion (which it did not) and Defendants could not dispel that suspicion before seizing Plaintiffs' packages for a brief

United States District Court
Northern District of California

investigatory seizure, that suspicion was (or should have been) dispelled immediately by Defendants' confirming that Plaintiffs' packages came from Movement Ink LLC in Oakland (not any suspicious sender from Eureka). Therefore, Defendants should have released Plaintiffs' packages immediately upon that realization, or sought a warrant in order to continue their seizure of the packages or to search the packages.

217. But Defendants did not release Plaintiffs' packages immediately upon that realization. And they did not get a warrant (nor could they have, because these circumstances did not amount to probable cause) or have any reason to believe that Plaintiffs' packages posed an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence would be destroyed (after all, it was in Defendants' possession), or an articulable risk that a particular suspect would escape. Nevertheless, Defendants continued to seize and even search Plaintiffs' packages.

218. Therefore, Defendants violated Plaintiffs' clearly established right to be free from unreasonable searches of their personal property.

219. Defendants are line-level postal officials operating in the common and recurrent sphere of garden-variety postal inspections and law enforcement with respect to personal property.

220. Plaintiffs have no alternative remedies for their injuries caused by Defendants, and Plaintiffs' claims do not implicate separation of powers, national security considerations, or any other special factors counseling hesitation against a damages remedy for Plaintiffs' injuries.

221. Defendants' conduct caused: severe reputational harms to Plaintiffs; Plaintiffs' packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs; significant loss of Plaintiffs' ongoing and future revenue; and ongoing emotional and mental distress to René.

222. Plaintiffs are entitled to compensatory damages for their injuries caused by Defendants' searches of their personal property.

**Count 6**
**Unreasonable Searches in Violation of the Fourth Amendment**
**Against Defendants Does 1 through 5**
**Under the Fourth Amendment**

223. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 100.

224. Plaintiffs shipped four packages of their personal property via the United States Postal Service. Plaintiffs retained ownership rights and interests and possessory rights and interests in their packages until the packages were delivered to their intended recipients.

225. Defendants Does 1 through 5 seized and searched Plaintiffs' personal property in violation of the Fourth Amendment, delaying the packages' arrival to their intended recipients by 48 hours, during which time the recipients were in dire need of the packages. Defendants' clearly and obviously unjustified and unreasonable seizures and searches of Plaintiffs' packages caused the packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs.

226. Searches of personal property without reasonable suspicion, probable cause, or a warrant are obviously unconstitutional.

227. It is clearly established and every reasonable postal official has fair warning that warrantless searches of personal property are presumptively unconstitutional.

228. It is clearly established and every reasonable postal official has fair warning that postal officials must have probable cause that a particular, articulable crime is occurring and either a warrant or exigent circumstances to search personal property.

229. It is clearly established and every reasonable postal official has fair warning that postal officials do not have probable cause in the absence of individualized circumstances suggesting, to a higher degree of certainty than reasonable suspicion, that a particular, articulable crime is occurring.

230. It is clearly established and every reasonable postal official has fair warning that to forgo the warrant requirement, postal officials must have probable cause and face exigent circumstances.

United States District Court
Northern District of California

231. It is clearly established and every reasonable postal official has fair warning that postal officials do not face exigent circumstances in the absence of an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence will be destroyed, or an articulable risk that a particular suspect will escape.

232. It is clearly established and every reasonable postal official has fair warning that postal officials violate the Fourth Amendment by searching personal property in the absence of probable cause (individualized circumstances suggesting, to a higher degree of certainty than reasonable suspicion, that a particular, articulable crime is occurring) and either a warrant or an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence will be destroyed, or an articulable risk that a particular suspect will escape.

233. It is clearly established and every reasonable postal official has fair warning that probable cause cannot be based on an assumed fact that purportedly formed the basis for reasonable suspicion but was dispelled while conducting an investigatory seizure of personal property.

234. It is clearly established and every reasonable postal official has fair warning that probable cause cannot be based on characteristics that, individually and as a whole, apply to personal property that has no connection to criminal activity.

235. It is clearly established and every reasonable postal official has fair warning that probable cause to believe that drugs are present is not, in the absence of a risk of their destruction, an exigent circumstance that permits forgoing the warrant requirement.

236. Defendants seized Plaintiffs' personal property without reasonable suspicion. The characteristics they purportedly relied on to seize Plaintiffs' packages (i.e., that the packages were allegedly bulging, were taped all around, were going from one purported drug activity city to another, and were sent by a frequent shipper) apply, individually and as a whole, to entirely innocent packages that businesses small and large—including Plaintiffs themselves—ship throughout the country every single day. Every reasonable postal official should know that those characteristics do not give rise to reasonable suspicion because those characteristics are not individualized circumstances suggesting that a particular, articulable crime (or any crime) is occurring.

237. Even with the additional allegation that Plaintiffs' packages resembled some from Eureka that had contained drugs, Defendants did not have reasonable suspicion to conduct an investigatory seizure because (1) that additional factual assumption did not give rise to reasonable suspicion and (2) even if it did, Defendants could have easily dispelled that factual assumption without seizing Plaintiffs' packages simply by confirming that the packages came from Movement Ink LLC in Oakland (not any suspicious sender from Eureka).

238. Even if the totality of circumstances did arise to reasonable suspicion (which it did not) and Defendants could not dispel that suspicion before seizing Plaintiffs' packages for a brief investigatory seizure, that suspicion was (or should have been) dispelled immediately by Defendants' confirming that Plaintiffs' packages came from Movement Ink LLC in Oakland (not any suspicious sender from Eureka). Therefore, Defendants should have released Plaintiffs' packages immediately upon that realization, or sought a warrant in order to continue their seizure of the packages or to search the packages.

239. But Defendants did not release Plaintiffs' packages immediately upon that realization. And they did not get a warrant (nor could they have, because these circumstances did not amount to probable cause) or have any reason to believe that Plaintiffs' packages posed an articulable risk of immediate physical harm, an articulable risk that particular relevant evidence would be destroyed (after all, it was in Defendants' possession), or an articulable risk that a particular suspect would escape. Nevertheless, Defendants continued to seize and even search Plaintiffs' packages.

240. Therefore, Defendants violated Plaintiffs' clearly established right to be free from unreasonable searches of their personal property.

241. Defendants are line-level postal officials operating in the common and recurrent sphere of garden-variety postal inspections and law enforcement with respect to personal property.

242. Plaintiffs have no alternative remedies for their injuries caused by Defendants, and Plaintiffs' claims do not implicate separation of powers, national security considerations, or any other special factors counseling hesitation against a damages remedy for Plaintiffs' injuries.



United States District Court
Northern District of California

243. Defendants' conduct caused: severe reputational harms to Plaintiffs; Plaintiffs' packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs; significant loss of Plaintiffs' ongoing and future revenue; and ongoing emotional and mental distress to René.

244. Plaintiffs are entitled to compensatory damages for their injuries caused by Defendants' searches of their personal property.

**Count 7**
**Retaliation in Violation of the First Amendment**
**Against Defendants Does 1 through 5**
**Under *Bivens***

245. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 100.

246. Plaintiffs shipped four packages of their personal property via the United States Postal Service. Those packages consisted of Covid-protective masks bearing core political speech, including phrases such as "STOP KILLING BLACK PEOPLE" and "DEFUND POLICE."

247. Retaliation for protected speech is an obvious violation of the First Amendment.

248. It is clearly established and every reasonable postal official has fair warning that seizing, searching, detaining, or delaying personal property or interfering with contractual or business relationships or operations because of the property's or its owner's speech, message, content, viewpoint, association, or affiliation is a violation of the First Amendment.

249. It is clearly established and every reasonable postal official has fair warning that protected speech, adverse government action that might chill an ordinary person from continuing to engage in that speech, and a causal relationship between the two constitute retaliation in violation of the First Amendment, and that a government actor's knowledge of the speech and the temporal proximity of the speech and the adverse government action raise an inference of retaliation.

250. Plaintiffs' packages were going to community activists and organizers in four major cities where large racial justice demonstrations were happening every day.

251. René is a known community activist and organizer with a community and social media presence promoting racial and social justice messages.

United States District Court
Northern District of California

252. Movement Ink is a screen printing business; its commercial activity is expressive in nature. And it is known for its community and social media presence promoting racial and social justice messages.

253. Plaintiffs' business is more than just a business; it is also an outlet for expressing and helping others express core political speech and activism. Plaintiffs have always publicly cultivated and publicly promoted that expressive and activist identity as core to their business model.

254. Plaintiffs are well-known to the postal officials at their local post office, from which Plaintiffs have regularly shipped Movement Ink packages for years.

255. When national protests erupted in May 2020 following the police killings of George Floyd and Breonna Taylor, Plaintiffs began receiving a much higher volume of orders than usual. Activists and organizers around the country came to Plaintiffs seeking thousands of Covid-protective masks for protests that were happening all over the country every day.

256. Those protests were controversial. In particular, governmental attitudes and responses to the protestors' messages—including "Black Lives Matter" and "Defund the Police"—were highly critical and often violent.

257. So while Plaintiffs have for years worked with and been connected to social and racial justice movements, this was the first time they were connected to such high profile, highly publicized, and highly visible protests, organizers, and apparel, and the first time they were shipping such rapid quantities of apparel in such rapid time.

258. Covid-protective masks, which all four of Plaintiffs' seized and searched packages contained, were also controversial and subject to governmental and societal disdain.

259. Plaintiffs' packages were clearly identified as having been shipped from Movement Ink in Oakland to major cities across the country.

260. Defendants' own internal notes clearly state Defendants' knowledge that Plaintiffs' packages contained, in Defendants' words, "BLM MASKS."

261. Within days of Plaintiffs' apparent association with and support for the protests in the form of politically emblazoned Covid-protective masks, Defendants seized, searched, detained,



United States District Court
Northern District of California

United States District Court
Northern District of California

and delayed the shipment of Plaintiffs' packages, interfering with Plaintiffs' contractual and business relationships and operations, as well as Plaintiffs' political speech.

262. Plaintiffs' public association with and support for the protests, their marking of their politically emblazoned Covid-protective masks with Movement Ink identifiers, Defendants' own "BLM MASKS" notation in their internal notes, and the immediacy of Defendants' adverse action against Plaintiffs raise an inference of retaliation.

263. Therefore, Defendants violated Plaintiffs' clearly established right to be free from retaliation for protected political speech.

264. Defendants are line-level postal officials operating in the common and recurrent sphere of garden-variety postal inspections and law enforcement with respect to personal property.

265. Plaintiffs have no alternative remedies for their injuries caused by Defendants, and Plaintiffs' claims do not implicate separation of powers, national security considerations, or any other special factors counseling hesitation against a damages remedy for Plaintiffs' injuries.

266. Defendants' conduct caused: severe reputational harms to Plaintiffs; Plaintiffs' packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs; significant loss of Plaintiffs' ongoing and future revenue; and ongoing emotional and mental distress to René.

267. Plaintiffs are entitled to compensatory damages for their injuries caused by Defendants' retaliatory conduct.

**Count 8**
**Retaliation in Violation of the First Amendment**
**Against Defendants Does 1 through 5**
**Under the Westfall Act (28 U.S.C. § 2679(b)(2)(A))**

268. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 100.

269. Plaintiffs shipped four packages of their personal property via the United States Postal Service. Those packages consisted of Covid-protective masks bearing core political speech, including phrases such as "STOP KILLING BLACK PEOPLE" and "DEFUND POLICE."

270. Retaliation for protected speech is an obvious violation of the First Amendment.

United States District Court
Northern District of California

271. It is clearly established and every reasonable postal official has fair warning that seizing, searching, detaining, or delaying personal property or interfering with contractual or business relationships or operations because of the property's or its owner's speech, message, content, viewpoint, association, or affiliation is a violation of the First Amendment.

272. It is clearly established and every reasonable postal official has fair warning that protected speech, adverse government action that might chill an ordinary person from continuing to engage in that speech, and a causal relationship between the two constitute retaliation in violation of the First Amendment, and that a government actor's knowledge of the speech and the temporal proximity of the speech and the adverse government action raise an inference of retaliation.

273. Plaintiffs' packages were going to community activists and organizers in four major cities where large racial justice demonstrations were happening every day.

274. René is a known community activist and organizer with a community and social media presence promoting racial and social justice messages.

275. Movement Ink is a screen printing business; its commercial activity is expressive in nature. And it is known for its community and social media presence promoting racial and social justice messages.

276. Plaintiffs' business is more than just a business; it is also an outlet for expressing and helping others express core political speech and activism. Plaintiffs have always publicly cultivated and publicly promoted that expressive and activist identity as core to their business model.

277. Plaintiffs are well-known to the postal officials at their local post office, from which Plaintiffs have regularly shipped Movement Ink packages for years.

278. When national protests erupted in May 2020 following the police killings of George Floyd and Breonna Taylor, Plaintiffs began receiving a much higher volume of orders than usual. Activists and organizers around the country came to Plaintiffs seeking thousands of Covid-protective masks for protests that were happening all over the country every day.

279. Those protests were controversial. In particular, governmental attitudes and responses to the protestors' messages—including "Black Lives Matter" and "Defund the Police"—

United States District Court
Northern District of California

were highly critical and often violent.

280. So while Plaintiffs have for years worked with and been connected to social and racial justice movements, this was the first time they were connected to such high profile, highly publicized, and highly visible protests, organizers, and apparel, and the first time they were shipping such rapid quantities of apparel in such rapid time.

281. Covid-protective masks, which all four of Plaintiffs' seized and searched packages contained, were also controversial and subject to governmental and societal disdain.

282. Plaintiffs' packages were clearly identified as having been shipped from Movement Ink in Oakland to major cities across the country.

283. Defendants' own internal notes clearly state Defendants' knowledge that Plaintiffs' packages contained, in Defendants' words, "BLM MASKS."

284. Within days of Plaintiffs' apparent association with and support for the protests in the form of politically emblazoned Covid-protective masks, Defendants seized, searched, detained, and delayed the shipment of Plaintiffs' packages, interfering with Plaintiffs' contractual and business relationships and operations, as well as Plaintiffs' political speech.

285. Plaintiffs' public association with and support for the protests, their marking of their politically emblazoned Covid-protective masks with Movement Ink identifiers, Defendants' own "BLM MASKS" notation in their internal notes, and the immediacy of Defendants' adverse action against Plaintiffs raise an inference of retaliation.

286. Therefore, Defendants violated Plaintiffs' clearly established right to be free from retaliation for protected political speech.

287. Defendants are line-level postal officials operating in the common and recurrent sphere of garden-variety postal inspections and law enforcement with respect to personal property.

288. Plaintiffs have no alternative remedies for their injuries caused by Defendants, and Plaintiffs' claims do not implicate separation of powers, national security considerations, or any other special factors counseling hesitation against a damages remedy for Plaintiffs' injuries.

289. Defendants' conduct caused: severe reputational harms to Plaintiffs; Plaintiffs'

packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs; significant loss of Plaintiffs' ongoing and future revenue; and ongoing emotional and mental distress to René.

290. Plaintiffs are entitled to compensatory damages for their injuries caused by Defendants' retaliatory conduct.

**Count 9**
**Retaliation in Violation of the First Amendment**
**Against Defendants Does 1 through 5**
**Under the First Amendment**

291. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 100.

292. Plaintiffs shipped four packages of their personal property via the United States Postal Service. Those packages consisted of Covid-protective masks bearing core political speech, including phrases such as "STOP KILLING BLACK PEOPLE" and "DEFUND POLICE."

293. Retaliation for protected speech is an obvious violation of the First Amendment.

294. It is clearly established and every reasonable postal official has fair warning that seizing, searching, detaining, or delaying personal property or interfering with contractual or business relationships or operations because of the property's or its owner's speech, message, content, viewpoint, association, or affiliation is a violation of the First Amendment.

295. It is clearly established and every reasonable postal official has fair warning that protected speech, adverse government action that might chill an ordinary person from continuing to engage in that speech, and a causal relationship between the two constitute retaliation in violation of the First Amendment, and that a government actor's knowledge of the speech and the temporal proximity of the speech and the adverse government action raise an inference of retaliation.

296. Plaintiffs' packages were going to community activists and organizers in four major cities where large racial justice demonstrations were happening every day.

297. René is a known community activist and organizer with a community and social media presence promoting racial and social justice messages.

298. Movement Ink is a screen printing business; its commercial activity is expressive in

nature. And it is known for its community and social media presence promoting racial and social justice messages.

299. Plaintiffs' business is more than just a business; it is also an outlet for expressing and helping others express core political speech and activism. Plaintiffs have always publicly cultivated and publicly promoted that expressive and activist identity as core to their business model.

300. Plaintiffs are well-known to the postal officials at their local post office, from which Plaintiffs have regularly shipped Movement Ink packages for years.

301. When national protests erupted in May 2020 following the police killings of George Floyd and Breonna Taylor, Plaintiffs began receiving a much higher volume of orders than usual. Activists and organizers around the country came to Plaintiffs seeking thousands of Covid-protective masks for protests that were happening all over the country every day.

302. Those protests were controversial. In particular, governmental attitudes and responses to the protestors' messages—including "Black Lives Matter" and "Defund the Police"—were highly critical and often violent.

303. So while Plaintiffs have for years worked with and been connected to social and racial justice movements, this was the first time they were connected to such high profile, highly publicized, and highly visible protests, organizers, and apparel, and the first time they were shipping such rapid quantities of apparel in such rapid time.

304. Covid-protective masks, which all four of Plaintiffs' seized and searched packages contained, were also controversial and subject to governmental and societal disdain.

305. Plaintiffs' packages were clearly identified as having been shipped from Movement Ink in Oakland to major cities across the country.

306. Defendants' own internal notes clearly state Defendants' knowledge that Plaintiffs' packages contained, in Defendants' words, "BLM MASKS."

307. Within days of Plaintiffs' apparent association with and support for the protests in the form of politically emblazoned Covid-protective masks, Defendants seized, searched, detained, and delayed the shipment of Plaintiffs' packages, interfering with Plaintiffs' contractual and

United States District Court
Northern District of California

business relationships and operations, as well as Plaintiffs' political speech.

308. Plaintiffs' public association with and support for the protests, their marking of their politically emblazoned Covid-protective masks with Movement Ink identifiers, Defendants' own "BLM MASKS" notation in their internal notes, and the immediacy of Defendants' adverse action against Plaintiffs raise an inference of retaliation.

309. Therefore, Defendants violated Plaintiffs' clearly established right to be free from retaliation for protected political speech.

310. Defendants are line-level postal officials operating in the common and recurrent sphere of garden-variety postal inspections and law enforcement with respect to personal property.

311. Plaintiffs have no alternative remedies for their injuries caused by Defendants, and Plaintiffs' claims do not implicate separation of powers, national security considerations, or any other special factors counseling hesitation against a damages remedy for Plaintiffs' injuries.

312. Defendants' conduct caused: severe reputational harms to Plaintiffs; Plaintiffs' packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs; significant loss of Plaintiffs' ongoing and future revenue; and ongoing emotional and mental distress to René.

313. Plaintiffs are entitled to compensatory damages for their injuries caused by Defendants' retaliatory conduct.

**Count 10**
**Trespass to Chattels**
**Against Defendants Does 1 through 5**
**Under California Law**

314. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 100.

315. Plaintiffs shipped four packages of their personal property via the United States Postal Service. Plaintiffs retained ownership rights and interests and possessory rights and interests in their packages until the packages were delivered to their intended recipients.

316. Without consent, cause, or legal authority, Defendants intentionally interfered with Plaintiffs' possession, right to possess, use, right to use, enjoyment, and right to enjoy their personal

United States District Court
Northern District of California

property by seizing, detaining, and searching Plaintiffs' personal property.

317. Defendants' conduct caused: severe reputational harms to Plaintiffs; Plaintiffs' packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs; significant loss of Plaintiffs' ongoing and future revenue; and ongoing emotional and mental distress to René.

318. Plaintiffs are entitled to compensatory damages for their injuries caused by Defendants' conduct.

319. Plaintiffs recognize that this claim is currently barred by the Westfall Act (28 U.S.C. § 2679(b)(1)), but Plaintiffs preserve the issue.

**Count 11**
**Interference with Contractual Relations**
**Against Defendants Does 1 through 5**
**Under California Law**

320. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 100.

321. Plaintiffs had contracts with protest organizers for the rush printing and immediate delivery of four packages containing Covid-protective masks emblazoned with political speech.

322. Defendants knew, should have known, or had reason to know of those contracts, based on Plaintiffs' regular business activities and the packages' shipping information (including the sender and recipients) that Plaintiffs provided to Defendants.

323. Defendants' intentional seizures, detentions, and searches of the packages, as well as Defendants' "Alert" to the recipients of the packages that the packages were "seized by law enforcement," prevented Plaintiffs' performance of the contracts or made Plaintiffs' performance of the contracts more expensive or difficult.

324. Defendants' intentional seizures, detentions, and searches of the packages, as well as Defendants' "Alert" to the recipients of the packages that the packages were "seized by law enforcement," were certain or substantially certain to prevent Plaintiffs' performance of the contracts or make Plaintiffs' performance of the contracts more expensive or difficult.

325. Defendants' conduct caused: severe reputational harms to Plaintiffs; Plaintiffs'

packages' intended recipients to sever all ongoing and future contractual and business relationships with Plaintiffs; significant loss of Plaintiffs' ongoing and future revenue; and ongoing emotional and mental distress to René.

326. Plaintiffs are entitled to compensatory damages for their injuries caused by Defendants' conduct.

327. Plaintiffs recognize that this claim is currently barred by the Westfall Act (28 U.S.C. § 2679(b)(1)), but Plaintiffs preserve the issue.

**Count 12**
**Interference with Prospective Economic Relations**
**Against Defendants Does 1 through 5**
**Under California Law**

328. Plaintiffs reallege and incorporate the allegations in paragraphs 1 through 100.

329. Plaintiffs had contracts and other economic relationships with protest organizers for the rush printing and immediate delivery of four packages containing Covid-protective masks emblazoned with political speech and for similar ongoing and regular orders in the future.

330. Defendants knew, should have known, or had reason to know of those contracts or those future economic benefits, based on Plaintiffs' regular business activities, the packages' shipping information (including the sender and recipients) that Plaintiffs provided to Defendants, and the ongoing nature of the need for Covid-protective masks and political protests.

331. Defendants' intentionally seized, detained, and searched the packages and issued an "Alert" to the recipients of the packages that the packages were "seized by law enforcement."

332. Defendants' intentional seizures, detentions, and searches of the packages, as well as Defendants' "Alert" to the recipients of the packages that the packages were "seized by law enforcement," were certain or substantially certain to prevent Plaintiffs' performance of the contracts or make Plaintiffs' performance of the contracts more expensive or difficult and to disrupt similar ongoing and regular orders in the future.

333. Defendants' conduct caused: severe reputational harms to Plaintiffs; Plaintiffs' packages' intended recipients to sever all ongoing and future contractual and business relationships

with Plaintiffs; significant loss of Plaintiffs' ongoing and future revenue; and ongoing emotional and mental distress to René.

334. Plaintiffs are entitled to compensatory damages for their injuries caused by Defendants' conduct.

335. Plaintiffs recognize that this claim is currently barred by the Westfall Act (28 U.S.C. § 2679(b)(1)), but Plaintiffs preserve the issue.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request that this Court:

336. Declare that Defendants Does 1 through 5 are liable in damages under the Constitution, *Bivens*, and the Westfall Act (28 U.S.C. § 2679(b)(2)(A)) for violating Plaintiffs' Fourth Amendment right to be free from unreasonable seizures of personal property.

337. Declare that Defendants Does 1 through 5 are liable in damages under the Constitution, *Bivens*, and the Westfall Act (28 U.S.C. § 2679(b)(2)(A)) for violating Plaintiffs' Fourth Amendment right to be free from unreasonable searches of personal property.

338. Declare that Defendants Does 1 through 5 are liable in damages under the Constitution, *Bivens*, and the Westfall Act (28 U.S.C. § 2679(b)(2)(A)) for violating Plaintiffs' First Amendment right to be free from retaliation for political speech.

339. Declare that Defendants Does 1 through 5 are liable in damages under California law for trespasses to Plaintiffs' chattels. (Plaintiffs recognize that this relief is currently barred by the Westfall Act (28 U.S.C. § 2679(b)(1)), but Plaintiffs preserve the issue.)

340. Declare that Defendants Does 1 through 5 are liable in damages under California law for interference with Plaintiffs' contractual relations. (Plaintiffs recognize that this relief is currently barred by the Westfall Act (28 U.S.C. § 2679(b)(1)), but Plaintiffs preserve the issue.)

341. Declare that Defendants Does 1 through 5 are liable in damages under California law for interference with Plaintiffs' prospective economic relations. (Plaintiffs recognize that this relief is currently barred by the Westfall Act (28 U.S.C. § 2679(b)(1)), but Plaintiffs preserve the issue.)

342. Award Plaintiffs' compensatory damages for Defendants' unconstitutional and

tortious conduct, in amounts to be proven at trial.

343. Award Plaintiffs' attorneys' fees, costs, and expenses under 28 U.S.C. § 2412 and any other applicable provisions of law or equity.

344. Award any further legal or equitable relief the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38 and Civil Local Rule 3-6, Plaintiffs demand a jury trial on all issues so triable.

Dated: June 1, 2022

s/ Jaba Tsitsuashvili
Jaba Tsitsuashvili (CA Bar No. 309012)
Anya Bidwell* (TX Bar No. 24101516)
Patrick Jaicomo* (MI Bar No. P-75705)
INSTITUTE FOR JUSTICE
901 N. Glebe Road
Suite 900
Arlington, VA 22203
Phone: (703) 682-9320
Fax: (703) 682-9321
jtsitsuashvili@ij.org
abidwell@ij.org
pjaicomo@ij.org

*Applications for admission
pro hac vice forthcoming

*Counsel for Plaintiffs*

United States District Court
Northern District of California

Jaba Tsitsuashvili (CA Bar No. 309012)
Patrick Jaicomo* (MI Bar No. P-75705)
Bobbi Taylor* (NJ Bar No. 435162023)
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Phone: (703) 682-9320
Fax: (703) 682-9321
jtsitsuashvili@ij.org

*Admitted *pro hac vice*

Anna M. Barvir (CA Bar No. 268728)
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
Phone: (562) 216-4444
Fax: (562) 216-4445
abarvir@michellawyers.com

*Counsel for Plaintiffs*

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| RENÉ QUIÑONEZ and MOVEMENT INK LLC,<br>Plaintiffs,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | 3:22-cv-3195-WHO<br><br>**PLAINTIFFS' NOTICE OF APPEAL**<br><br>Judge: Hon. William H. Orrick<br>Complaint Filed: June 1, 2022<br>Judgment Entered: April 15, 2025 |

Notice is hereby given that Plaintiffs René Quiñonez and Movement Ink LLC appeal to the United States Court of Appeals for the Ninth Circuit from this Court's: final judgment (Doc. 163, entered April 15, 2025); order granting summary judgment (Doc. 159, entered March 25, 2025); order granting administrative motion to file under seal (Doc. 162, entered April 15, 2025); order granting Defendant's motion to dismiss in part and denying Plaintiffs' motion for partial summary judgment (Doc. 138, entered November 8, 2024); order denying motion for leave to make additional

amendments to third amended complaint (Doc. 91, entered August 30, 2023); order granting in part and denying in part motions to dismiss (Doc. 80, entered June 29, 2023); order granting motions to dismiss (Doc. 62, entered April 3, 2023); and any and all other adverse judgments, orders, holdings, and findings of this Court in this case.

May 22, 2025

Respectfully submitted,

s/ Jaba Tsitsuashvili
Jaba Tsitsuashvili (CA Bar No. 309012)
Patrick Jaicomo* (MI Bar No. P-75705)
Bobbi Taylor* (NJ Bar No. 435162023)
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Phone: (703) 682-9320
Fax: (703) 682-9321
jtsitsuashvili@ij.org
pjaicomo@ij.org
btaylor@ij.org

*Admitted pro hac vice

Anna M. Barvir (CA Bar No. 268728)
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
Phone: (562) 216-4444
Fax: (562) 216-4445
abarvir@michellawyers.com

*Counsel for Plaintiffs*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 6. Representation Statement

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form06instructions.pdf*

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*

Name(s) of party/parties:

René Quiñonez and Movement Ink LLC

Name(s) of counsel (if any):

Jaba Tsitsuashvili, Patrick Jaicomo, and Bobbi Taylor (Institute for Justice)

Address: 901 N. Glebe Rd., Suite 900, Arlington VA 22203

Telephone number(s): (703) 682-9320

Email(s): jtsitsuashvili@ij.org, pjaicomo@ij.org, btaylor@ij.org

Is counsel registered for Electronic Filing in the 9th Circuit? ◉ Yes ○ No

---

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*

Name(s) of party/parties:

United States of America

Name(s) of counsel (if any):

Michael A. Keough

Address: 1301 Clay St., Ste. 340S, Oakland, CA 94612

Telephone number(s): (510) 637-3721

Email(s): michael.keough@usdoj.gov

*To list additional parties and/or counsel, use next page.*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

Continued list of parties and counsel: *(attach additional pages as necessary)*

**Appellants**

Name(s) of party/parties:

René Quiñonez and Movement Ink LLC

Name(s) of counsel (if any):

Anna M. Barvir (Michel & Associates, P.C.)

Address: 180 E. Ocean Blvd., Ste. 200, Long Beach, CA 90802

Telephone number(s): (562) 216-4444

Email(s): abarvir@michellawyers.com

Is counsel registered for Electronic Filing in the 9th Circuit? (•) Yes ( ) No

---

**Appellees**

Name(s) of party/parties:

United States of America

Name(s) of counsel (if any):

Patrick D. Robbins
Pamela T. Johann

Address: 1301 Clay St., Ste. 340S, Oakland, California 94612-5217

Telephone number(s): (510) 637-3721

Email(s): patrick.robbins@usdoj.gov, pamela.johann@usdoj.gov

---

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

Query Reports Utilities Help Log Out

ADRMOP,APPEAL,CLOSED,REFSET-AGT

# U.S. District Court
# California Northern District (San Francisco)
# CIVIL DOCKET FOR CASE #: 3:22-cv-03195-WHO

Quinonez et al v. United States of America, et al.
Assigned to: Judge William H. Orrick
Referred to: Magistrate Judge Alex G. Tse (Settlement)
Case in other court: US Court of Appeals 9th Circuit, 25-03386
Cause: 28:1331 Fed. Question

Date Filed: 06/01/2022
Date Terminated: 04/15/2025
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**Rene Quinonez** represented by

**Jaba Tsitsuashvili**
Institute for Justice
901 N. Glebe Road, Suite 900
Arlington, VA 22203
703-682-9320
Fax: 703-682-9321
Email: jtsitsuashvili@ij.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna Marie Barvir**
Michel and Associates, P.C.
180 E. Ocean Blvd
Suite 200
Long Beach, CA 90802
562-216-4444
Email: abarvir@michellawyers.com
*ATTORNEY TO BE NOTICED*

**Anna Bidwell**
Institute for Justice
901 N. Glebe Road
Ste 900
Arlington, VA 22203
703-682-9320
Email: abidwell@ij.org
*TERMINATED: 07/21/2022*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Bobbi M. Taylor**
Institute for Justice
Litigation
901 N Glebe Rd.
Suite 900
Arlington, VA 22203

703-682-9320
Email: btaylor@ij.org
*ATTORNEY TO BE NOTICED*

**Patrick Jaicomo**
Institute For Justice
901 N. Glebe Road
Suite 900
Arlington, VA 22203
703 682 9320
Fax: 703 682 9321
Email: pjaicomo@ij.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Trace Mitchell**
Institute for Justice
901 N. Glebe Road
Suite 900
Arlington, VA 22203
703-682-9320
Email: tmitchell@ij.org
*TERMINATED: 09/28/2023*
*PRO HAC VICE*

**Plaintiff**

**Movement Ink LLC** represented by **Jaba Tsitsuashvili**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna Marie Barvir**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Anna Bidwell**
(See above for address)
*TERMINATED: 07/21/2022*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Bobbi M. Taylor**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patrick M. Jaicomo**
Institute for Justice
901 N. Glebe Road, Suite 900
Arlington, VA 22203
703-682-9320
Fax: (703) 682-9321
Email: pjaicomo@ij.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Trace Mitchell**
(See above for address)
*TERMINATED: 09/28/2023*
*PRO HAC VICE*

V.

**Defendant**

**Does 1 through 5**
*United States Postal Service and United States Postal Inspection Service officials in their individual capacities*
*TERMINATED: 09/21/2022*

**Defendant**

**United States of America** represented by **Michael A. Keough**
United States Attorney's Office
Department of Justice
1301 Clay Street, Suite 340S
Oakland, CA 94612
(510) 637-3721
Email: michael.keough@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Mainardi**
DOJ-USAO
1301 Clay Street, FL 3
Oakland, CA 94612
510-788-3509
Email: andrew.mainardi@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jeff Agster**
*in his individual capacity* represented by **Michael A. Keough**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Mainardi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Eva Chan**
*in her individual capacity* represented by **Michael A. Keough**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Mainardi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Stephen Fajardo**
*in his individual capacity*

**Defendant**

**Mark Hodges**
*in his individual capacity*

represented by **Michael A. Keough**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Mainardi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Robin Lee**
*in her individual capacity*

represented by **Michael A. Keough**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Mainardi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**DOES 1 through 2**
*United States Postal Service and United States Postal Inspection Service officials in their individual capacities*
*TERMINATED: 05/22/2025*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/01/2022 | 1 | COMPLAINT against Does 1 through 5. Filed byRen Quionez, Movement Ink LLC. (Attachments: # 1 Civil Cover Sheet)(Tsitsuashvili, Jaba) Filing Fee Paid $402.00 Receipt Number ACANDC-17226674. (Filed on 6/1/2022) Modified on 6/1/2022 (mbc, COURT STAFF). (Entered: 06/01/2022) |
| 06/01/2022 | 2 | Proposed Summons. (Tsitsuashvili, Jaba) (Filed on 6/1/2022) (Entered: 06/01/2022) |
| 06/01/2022 | 3 | Case assigned to Magistrate Judge Kandis A. Westmore.<br><br>Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing orders and all other new case documents upon the opposing parties. For information, visit *E-Filing A New Civil Case* at http://cand.uscourts.gov/ecf/caseopening.<br><br>Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. Upon receipt, the summons will be issued and returned electronically. A scheduling order will be sent by Notice of Electronic Filing (NEF) within two business days. Consent/Declination due by 6/15/2022. (mbc, COURT STAFF) (Filed on 6/1/2022) (Entered: 06/01/2022) |

| | | |
|---|---|---|
| 06/01/2022 | 4 | Certificate of Interested Entities by Movement Ink LLC, Ren Quionez identifying Corporate Parent Movement Ink LLC, Other Affiliate Rene A. Quinonez, Other Affiliate Maya Talina Ponce, Other Affiliate Rene Ernesto Quinonez, Other Affiliate Quetzalli Anai Ponce, Other Affiliate Est. of Luis Alberto Quinonez for Movement Ink LLC, Ren Quionez. (Tsitsuashvili, Jaba) (Filed on 6/1/2022) (Entered: 06/01/2022) |
| 06/01/2022 | 5 | Ex Parte Application *to Proceed with Doe Defendants* filed by Movement Ink LLC, Ren Quionez. (Attachments: # 1 Declaration in Support of Application to Proceed with Doe Defendants, # 2 Proposed Order)(Tsitsuashvili, Jaba) (Filed on 6/1/2022) (Entered: 06/01/2022) |
| 06/01/2022 | 6 | NOTICE of Appearance by Jaba Tsitsuashvili *for Plaintiffs Rene Quinonez and Movement Ink LLC* (Tsitsuashvili, Jaba) (Filed on 6/1/2022) (Entered: 06/01/2022) |
| 06/01/2022 | 7 | **Initial Case Management Scheduling Order with ADR Deadlines: Case Management Statement due by 8/23/2022. Initial Case Management Conference set for 8/30/2022 01:30 PM in Oakland, - To be determined. (kmg, COURT STAFF) (Filed on 6/1/2022) (Entered: 06/01/2022)** |
| 06/01/2022 | | Electronic filing error. Please download the WORD document from our website at https://www.cand.uscourts.gov/attorneys/. Make any changes needed to the document and select File - Save As Re: 2 Proposed Summons filed by Movement Ink LLC, Ren Quionez (kmg, COURT STAFF) (Filed on 6/1/2022) Modified on 6/2/2022 (kmg, COURT STAFF). (Entered: 06/02/2022) |
| 06/02/2022 | 8 | Proposed Summons. (Attachments: # 1 Proposed Summons)(Tsitsuashvili, Jaba) (Filed on 6/2/2022) (Entered: 06/02/2022) |
| 06/02/2022 | 15 | Summons Issued as to USA.(kmg, COURT STAFF) (Filed on 6/2/2022) (Entered: 06/07/2022) |
| 06/03/2022 | 9 | **Order by Magistrate Judge Kandis A. Westmore granting 5 Ex Parte Application to Proceed with Doe Defendants. (wft, COURT STAFF) (Filed on 6/3/2022) (Entered: 06/03/2022)** |
| 06/03/2022 | 10 | NOTICE of Appearance by Anna Marie Barvir (Barvir, Anna) (Filed on 6/3/2022) (Entered: 06/03/2022) |
| 06/03/2022 | 11 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 317, receipt number ACANDC-17234368.) filed by Movement Ink LLC, Rene Quinonez. (Bidwell, Anya) (Filed on 6/3/2022) (Entered: 06/03/2022) |
| 06/03/2022 | 12 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 317, receipt number ACANDC-17234397.) filed by Movement Ink LLC, Rene Quinonez. (Jaicomo, Patrick) (Filed on 6/3/2022) (Entered: 06/03/2022) |
| 06/06/2022 | 13 | **Order by Magistrate Judge Kandis A. Westmore granting 11 Motion for Pro Hac Vice as to Anya Bidwell. Counsel is instructed in the future to use the appropriate form for filing of pro hac vice applications. Please reference *https://cand.uscourts.gov/wp-content/uploads/attorneys/CAND_Application_for_Pro_Hac_Vice-11-2021.pdf (wft, COURT STAFF) (Filed on 6/6/2022) (Entered: 06/06/2022)*** |
| 06/06/2022 | 14 | **Order by Magistrate Judge Kandis A. Westmore granting 12 Motion for Pro Hac Vice as to Patrick Jaicomo. Counsel is instructed in the future to use the appropriate form for filing of pro hac vice applications. Please reference *https://cand.uscourts.gov/wp-*** |

| | | |
|---|---|---|
| | | ***content/uploads/attorneys/CAND_Application_for_Pro_Hac_Vice-11-2021.pdf (wft, COURT STAFF) (Filed on 6/6/2022) (Entered: 06/06/2022)*** |
| 06/15/2022 | 16 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Movement Ink LLC, Rene Quinonez.. (Tsitsuashvili, Jaba) (Filed on 6/15/2022) (Entered: 06/15/2022) |
| 06/15/2022 | 17 | CLERK'S NOTICE OF IMPENDING REASSIGNMENT TO A U.S. DISTRICT COURT JUDGE: The Clerk of this Court will now randomly reassign this case to a District Judge because either (1) a party has not consented to the jurisdiction of a Magistrate Judge, or (2) time is of the essence in deciding a pending judicial action for which the necessary consents to Magistrate Judge jurisdiction have not been secured. You will be informed by separate notice of the district judge to whom this case is reassigned.<br><br>ALL HEARING DATES PRESENTLY SCHEDULED BEFORE THE CURRENT MAGISTRATE JUDGE ARE VACATED AND SHOULD BE RE-NOTICED FOR HEARING BEFORE THE JUDGE TO WHOM THIS CASE IS REASSIGNED.<br><br>*This is a text only docket entry; there is no document associated with this notice.* (amg, COURT STAFF) (Filed on 6/15/2022) (Entered: 06/15/2022) |
| 06/16/2022 | 18 | **ORDER REASSIGNING CASE. Case reassigned using a proportionate, random, and blind system pursuant to General Order No. 44 to Judge William H. Orrick for all further proceedings. Magistrate Judge Kandis A. Westmore no longer assigned to case. Notice: The assigned judge participates in the Cameras in the Courtroom Pilot Project. See General Order No. 65 and http://cand.uscourts.gov/cameras. Signed by The Clerk on 06/16/2022. (Attachments: # 1 Notice of Eligibility for Video Recording)(jrs, COURT STAFF) (Filed on 6/16/2022) (Entered: 06/16/2022)** |
| 06/30/2022 | 19 | SUMMONS Returned Executed by Rene Quinonez, Movement Ink LLC. Does 1 through 5 served on 6/13/2022, answer due 8/12/2022. (Attachments: # 1 Proof of Service on U.S. Attorney for the Northern District of California)(Tsitsuashvili, Jaba) (Filed on 6/30/2022) (Entered: 06/30/2022) |
| 07/05/2022 | 20 | **CASE MANAGEMENT CONFERENCE ORDER - Case Management Conference set for 9/6/2022 02:00 p.m. Case Management Statement due by 8/30/2022. This proceeding will be held via Zoom webinar.**<br><br>**Webinar Access: All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/who**<br><br>**General Order 58. Persons granted access to court proceedings held by telephone or video conference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.**<br><br>**Zoom Guidance and Setup: https://www.cand.uscourts.gov/zoom/.**<br><br>**(jmd, COURT STAFF) (Filed on 7/5/2022) (Entered: 07/05/2022)** |
| 07/20/2022 | 21 | NOTICE of Change In Counsel by Anya Bidwell (Bidwell, Anya) (Filed on 7/20/2022) (Entered: 07/20/2022) |
| 07/20/2022 | 22 | AFFIDAVIT of Service for Standing Orders of Hon. William H. Orrick served on U.S. Attorney General and U.S. Attorney for the N.D. of California on June 22, 2022, filed by Movement Ink LLC, Rene Quinonez. (Attachments: # 1 Affidavit of Service of Judge Orrick's Standing Orders on U.S. Attorney for the Northern District of California) (Tsitsuashvili, Jaba) (Filed on 7/20/2022) (Entered: 07/20/2022) |

| | | |
|---|---|---|
| 08/10/2022 | 23 | ADR Certification (ADR L.R. 3-5 b) of discussion of ADR options (Jaicomo, Patrick) (Filed on 8/10/2022) (Entered: 08/10/2022) |
| 08/12/2022 | 24 | NOTICE of Appearance by Michael A. Keough (Keough, Michael) (Filed on 8/12/2022) (Entered: 08/12/2022) |
| 08/12/2022 | 25 | MOTION to Dismiss filed by United States of America. Motion Hearing set for 9/21/2022 02:00 PM in San Francisco, - To be determined before Judge William H. Orrick. Responses due by 8/26/2022. Replies due by 9/2/2022. (Keough, Michael) (Filed on 8/12/2022) (Entered: 08/12/2022) |
| 08/18/2022 | 26 | STIPULATION WITH PROPOSED ORDER to Enlarge Time re 25 MOTION to Dismiss filed by Movement Ink LLC, Rene Quinonez. (Attachments: # 1 Declaration in Support of Stipulated Request to Enlarge Time to Respond to Motion to Dismiss)(Jaicomo, Patrick) (Filed on 8/18/2022) (Entered: 08/18/2022) |
| 08/19/2022 | 27 | **ORDER granting 26 STIPULATION to enlarge time re 25 MOTION to Dismiss. Response due by 9/26/2022. Reply due by 10/7/2022. Motion Hearing reset for 10/26/2022 02:00 PM via Videoconference before Judge William H. Orrick. Signed by Judge William H. Orrick on 08/19/2022. (jmd, COURT STAFF) (Filed on 8/19/2022) (Entered: 08/19/2022)** |
| 09/02/2022 | 28 | STIPULATION *to Continue September 6 Initial Case Management Conference* filed by Movement Ink LLC, Rene Quinonez. (Attachments: # 1 Declaration)(Tsitsuashvili, Jaba) (Filed on 9/2/2022) (Entered: 09/02/2022) |
| 09/02/2022 | 29 | CLERKS NOTICE RESETTING ZOOM HEARING - Case Management Conference reset for 10/26/2022 02:00 PM (Case Management Statement due by 10/19/2022). This proceeding and the Motion to Dismiss Hearing will be held via Zoom webinar.<br><br>**Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/who<br><br>**General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (jmd, COURT STAFF) (Filed on 9/2/2022) (Entered: 09/02/2022) |
| 09/21/2022 | 30 | STIPULATION *to File First Amended Complaint* filed by Movement Ink LLC, Rene Quinonez. (Attachments: # 1 Declaration in Support of Stipulated Request to File First Amended Complaint)(Tsitsuashvili, Jaba) (Filed on 9/21/2022) (Entered: 09/21/2022) |
| 09/21/2022 | 31 | NOTICE by Movement Ink LLC, Rene Quinonez re 30 Stipulation *(Notice of Withdrawal of Stipulation)* (Tsitsuashvili, Jaba) (Filed on 9/21/2022) (Entered: 09/21/2022) |
| 09/21/2022 | 32 | STIPULATION *to File First Amended Complaint* filed by Movement Ink LLC, Rene Quinonez. (Attachments: # 1 Declaration in Support of Stipulated Request to File First Amended Complaint)(Tsitsuashvili, Jaba) (Filed on 9/21/2022) (Entered: 09/21/2022) |
| 09/21/2022 | 33 | AMENDED COMPLAINT *and Demand for Jury Trial* against United States of America, Jeff Agster, Eva Chan, Stephen Fajardo, Mark Hodges, Robin Lee, DOES 1 through 2. Filed byRene Quinonez, Movement Ink LLC. (Tsitsuashvili, Jaba) (Filed on 9/21/2022) (Entered: 09/21/2022) |

| | | |
|---|---|---|
| 09/23/2022 | 34 | **ORDER granting 32 STIPULATED REQUEST TO FILE FIRST AMENDED COMPLAINT. Signed by Judge William H. Orrick on 09/23/2022. (jmd, COURT STAFF) (Filed on 9/23/2022) (Entered: 09/23/2022)** |
| 10/12/2022 | 35 | Proposed Summons. (Attachments: # 1 Proposed Summons - Jeff Agster, # 2 Proposed Summons - Eva Chan, # 3 Proposed Summons - Stephen Fajardo, # 4 Proposed Summons - Mark Hodges, # 5 Proposed Summons - Robin Lee, # 6 Proposed Summons - Doe 1, # 7 Proposed Summons - Doe 2)(Tsitsuashvili, Jaba) (Filed on 10/12/2022) (Entered: 10/12/2022) |
| 10/12/2022 | 36 | Summons Issued as to Jeff Agster, Eva Chan, Stephen Fajardo, Mark Hodges, Robin Lee, U.S. Attorney DOES 1 and DOES 2, (Attachments: # 1 Summons Jeff Agster, # 2 Summons Eva Chan, # 3 Summons Stephen Fajardo,, # 4 Summons Mark Hodges, # 5 Summons Robin Lee, # 6 Summons Doe 1, # 7 Summons Doe 2)(msr, COURT STAFF) (Filed on 10/12/2022) (Entered: 10/12/2022) |
| 10/18/2022 | 37 | SUMMONS Returned Executed by Movement Ink LLC, Rene Quinonez. United States of America served on 10/15/2022, answer due 12/14/2022. (Attachments: # 1 Proof of Service on U.S. Attorney General)(Tsitsuashvili, Jaba) (Filed on 10/18/2022) (Entered: 10/18/2022) |
| 10/19/2022 | 38 | JOINT CASE MANAGEMENT STATEMENT filed by United States of America. (Keough, Michael) (Filed on 10/19/2022) (Entered: 10/19/2022) |
| 10/24/2022 | 39 | CLERKS NOTICE SETTING ZOOM HEARING - Case Management Conference reset for 1/17/2023 02:00 PM. This proceeding will be held via Zoom webinar.<br><br>**Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/who<br><br>**General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing , recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://ww w.cand.uscourts.gov/zoom/.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (jmd, COURT STAFF) (Filed on 10/24/2022) (Entered: 10/24/2022) |
| 11/01/2022 | 40 | WAIVER OF SERVICE Returned Executed filed by Movement Ink LLC, Rene Quinonez. Service waived by Jeff Agster waiver sent on 10/13/2022, answer due 12/12/2022. (Tsitsuashvili, Jaba) (Filed on 11/1/2022) (Entered: 11/01/2022) |
| 11/01/2022 | 41 | SUMMONS Returned Executed by Movement Ink LLC, Rene Quinonez. Eva Chan served on 10/27/2022, answer due 11/17/2022; Stephen Fajardo served on 10/27/2022, answer due 11/17/2022; Mark Hodges served on 10/27/2022, answer due 11/17/2022; Robin Lee served on 10/27/2022, answer due 11/17/2022. (Tsitsuashvili, Jaba) (Filed on 11/1/2022) (Entered: 11/01/2022) |
| 11/16/2022 | 42 | SUMMONS Returned Executed by Movement Ink LLC, Rene Quinonez. Eva Chan served on 11/13/2022, answer due 12/5/2022. (Tsitsuashvili, Jaba) (Filed on 11/16/2022) (Entered: 11/16/2022) |
| 11/16/2022 | 43 | WAIVER OF SERVICE Returned Executed filed by Movement Ink LLC, Rene Quinonez. Service waived by Robin Lee waiver sent on 10/13/2022, answer due 12/12/2022. (Tsitsuashvili, Jaba) (Filed on 11/16/2022) (Entered: 11/16/2022) |

| | | |
|---|---|---|
| 11/29/2022 | 44 | WAIVER OF SERVICE Returned Executed filed by Movement Ink LLC, Rene Quinonez. Service waived by Mark Hodges waiver sent on 10/13/2022, answer due 12/12/2022. (Tsitsuashvili, Jaba) (Filed on 11/29/2022) (Entered: 11/29/2022) |
| 12/01/2022 | 45 | SUMMONS Returned Executed by Movement Ink LLC, Rene Quinonez. Stephen Fajardo served on 11/30/2022, answer due 12/21/2022. (Tsitsuashvili, Jaba) (Filed on 12/1/2022) (Entered: 12/01/2022) |
| 12/05/2022 | 46 | NOTICE of Appearance by Michael A. Keough *for Defendants the United States of America, Robin Lee, Jeff Agster, Mark Hodges, and Eva Chan* (Keough, Michael) (Filed on 12/5/2022) (Entered: 12/05/2022) |
| 12/05/2022 | 47 | STIPULATION WITH PROPOSED ORDER *Regarding Case Schedule* filed by Jeff Agster, Eva Chan, Mark Hodges, Robin Lee, United States of America. (Attachments: # 1 Declaration of Michael A. Keough)(Keough, Michael) (Filed on 12/5/2022) (Entered: 12/05/2022) |
| 12/05/2022 | 48 | **Order by Judge William H. Orrick granting 47 Stipulation to Extend Time to Respond and Set Briefing Schedule for Motion to Dismiss. (jmd, COURT STAFF) (Filed on 12/5/2022) (Entered: 12/05/2022)** |
| 12/09/2022 | 49 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 317, receipt number ACANDC-17800362.) filed by Movement Ink LLC, Rene Quinonez. (Mitchell, Trace) (Filed on 12/9/2022) (Entered: 12/09/2022) |
| 12/22/2022 | 50 | **Order by Judge William H. Orrick granting 49 Motion for Pro Hac Vice by Trace E. Mitchell. (jmd, COURT STAFF) (Filed on 12/22/2022) (Entered: 12/22/2022)** |
| 01/11/2023 | 51 | MOTION to Dismiss *or in the Alternative to Strike* filed by United States of America. Motion Hearing set for 3/8/2023 02:00 PM in San Francisco, - To be determined before Judge William H. Orrick. Responses due by 2/10/2023. Replies due by 2/22/2023. (Attachments: # 1 Exhibit A - Scope Certification, # 2 Proposed Order)(Keough, Michael) (Filed on 1/11/2023) (Entered: 01/11/2023) |
| 01/11/2023 | 52 | MOTION to Dismiss *or in the Alternative to Strike* filed by Jeff Agster, Eva Chan, Mark Hodges, Robin Lee. Motion Hearing set for 3/8/2023 02:00 PM in San Francisco, - To be determined before Judge William H. Orrick. Responses due by 2/10/2023. Replies due by 2/22/2023. (Attachments: # 1 Proposed Order)(Keough, Michael) (Filed on 1/11/2023) (Entered: 01/11/2023) |
| 01/12/2023 | 53 | CLERKS NOTICE RESETTING ZOOM HEARING - Case Management Conference reset for 3/8/2023 02:00 PM (to coincide with hearing on motions to dismiss). This proceeding will be held via Zoom webinar. Case Management Statement due 3/1/2023.<br><br>**Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/who<br><br>**General Order 58.** Persons granted acc ess to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (jmd , COURT STAFF) (Filed on 1/12/2023) (Entered: 01/12/2023) |

| | | |
|---|---|---|
| 02/07/2023 | 54 | Consent ADMINISTRATIVE MOTION to Exceed Page Limitations filed by Movement Ink LLC, Rene Quinonez. Responses due by 2/13/2023. (Tsitsuashvili, Jaba) (Filed on 2/7/2023) (Entered: 02/07/2023) |
| 02/07/2023 | 55 | STIPULATION WITH PROPOSED ORDER re 54 Consent ADMINISTRATIVE MOTION to Exceed Page Limitations filed by Movement Ink LLC, Rene Quinonez. (Tsitsuashvili, Jaba) (Filed on 2/7/2023) (Entered: 02/07/2023) |
| 02/08/2023 | 56 | **ORDER GRANTING REQUEST TO EXTEND PAGE LIMITATIONS by Judge William H. Orrick re: 54 Motion and 55 Stipulation. (jmd, COURT STAFF) (Filed on 2/8/2023) (Entered: 02/08/2023)** |
| 02/10/2023 | 57 | OPPOSITION/RESPONSE (re 52 MOTION to Dismiss *or in the Alternative to Strike*, 51 MOTION to Dismiss *or in the Alternative to Strike* ) *Plaintiffs' Consolidated Opposition to Defendants' Motions to Dismiss* filed byMovement Ink LLC, Rene Quinonez. (Tsitsuashvili, Jaba) (Filed on 2/10/2023) (Entered: 02/10/2023) |
| 02/22/2023 | 58 | REPLY (re 51 MOTION to Dismiss *or in the Alternative to Strike* ) filed byUnited States of America. (Keough, Michael) (Filed on 2/22/2023) (Entered: 02/22/2023) |
| 02/22/2023 | 59 | REPLY (re 52 MOTION to Dismiss *or in the Alternative to Strike* ) filed byJeff Agster, Eva Chan, Mark Hodges, Robin Lee. (Keough, Michael) (Filed on 2/22/2023) (Entered: 02/22/2023) |
| 03/01/2023 | 60 | JOINT CASE MANAGEMENT STATEMENT filed by Jeff Agster, Eva Chan, Mark Hodges, Robin Lee, United States of America. (Keough, Michael) (Filed on 3/1/2023) (Entered: 03/01/2023) |
| 03/08/2023 | 61 | **Minute Entry for proceedings held before Judge William H. Orrick: Motion Hearing held on 3/8/2023 re 51 , 52 Motions to Dismiss. Digital Recording Time: 1:57-2:19. Plaintiff Attorneys: Jaba Tsitsuashvili, Patrick Jaicomo, and Trace Mitchell. Defendant Attorney: Michael A. Keough. (jmd, COURT STAFF) (Date Filed: 3/8/2023) Proceedings transcribed by Peggy Schuerger of Ad Hoc Reporting (adhocreporting@aol.com) (bns, COURT STAFF). (Entered: 03/08/2023)** |
| 04/03/2023 | 62 | **ORDER GRANTING 51 . 52 MOTIONS TO DISMISS by Judge William H. Orrick. Any amended complaint is due by May 3, 2023. (jmd, COURT STAFF) (Filed on 4/3/2023) (Entered: 04/03/2023)** |
| 05/03/2023 | 63 | AMENDED COMPLAINT *Second Amended Complaint and Demand for Jury Trial* against Jeff Agster, Eva Chan, DOES 1 through 2, Stephen Fajardo, Mark Hodges, Robin Lee, United States of America. Filed byMovement Ink LLC, Rene Quinonez. (Tsitsuashvili, Jaba) (Filed on 5/3/2023) (Entered: 05/03/2023) |
| 05/17/2023 | 64 | MOTION to Dismiss *the Second Amended Complaint* filed by United States of America. Motion Hearing set for 6/28/2023 02:00 PM in San Francisco, - To be determined before Judge William H. Orrick. Responses due by 5/31/2023. Replies due by 6/7/2023. (Attachments: # 1 Declaration of Michael A. Keough, # 2 Exhibit A, # 3 Exhibit B, # 4 Proposed Order)(Keough, Michael) (Filed on 5/17/2023) (Entered: 05/17/2023) |
| 05/17/2023 | 65 | MOTION to Dismiss *the Second Amended Complaint* filed by Jeff Agster, Eva Chan, Mark Hodges, Robin Lee. Motion Hearing set for 6/28/2023 02:00 PM in San Francisco, - To be determined before Judge William H. Orrick. Responses due by 5/31/2023. Replies due by 6/7/2023. (Attachments: # 1 Proposed Order)(Keough, Michael) (Filed on 5/17/2023) (Entered: 05/17/2023) |
| 05/18/2023 | 66 | CLERKS NOTICE RESETTING ZOOM HEARING - The Hearing on 64 , 65 Motions to Dismiss is reset for 7/12/2023 02:00 PM. This proceeding will be held via Zoom webinar. |

| | | |
|---|---|---|
| | | **Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/who<br><br>**General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>, *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (jmd, COURT STAFF) (Filed on 5/18/2023) (Entered: 05/18/2023) |
| 05/19/2023 | 67 | STIPULATION WITH PROPOSED ORDER re 66 Clerk's Notice Setting Zoom Hearing.,,,, Set Motion and Deadlines/Hearings,,, *(Stipulation to Reset Hearing Date of Pending Motions to Dismiss)* filed by Movement Ink LLC, Rene Quinonez. (Attachments: # 1 Declaration of Jaba Tsitsuashvili)(Tsitsuashvili, Jaba) (Filed on 5/19/2023) (Entered: 05/19/2023) |
| 05/22/2023 | 68 | **ORDER granting 67 Stipulation to Reset Hearing Date re 64 , 65 Motions to Dismiss. Motion Hearing reset for 6/21/2023 02:00 PM via Videoconference before Judge William H. Orrick. Signed by Judge William H. Orrick on 05/22/2023. (jmd, COURT STAFF) (Filed on 5/22/2023) Modified on 5/22/2023 to correct time (jmd, COURT STAFF). (Entered: 05/22/2023)** |
| 05/22/2023 | | Reset Deadlines as to 64 MOTION to Dismiss and 65 MOTION to Dismiss. Motion Hearing reset for 6/21/2023 02:00 PM via Videoconference. (jmd, COURT STAFF) (Filed on 5/22/2023) (Entered: 05/22/2023) |
| 05/25/2023 | 69 | Consent ADMINISTRATIVE MOTION to Exceed Page Limitations filed by Movement Ink LLC, Rene Quinonez. Responses due by 5/31/2023. (Tsitsuashvili, Jaba) (Filed on 5/25/2023) (Entered: 05/25/2023) |
| 05/25/2023 | 70 | STIPULATION WITH PROPOSED ORDER re 69 Consent ADMINISTRATIVE MOTION to Exceed Page Limitations filed by Movement Ink LLC, Rene Quinonez. (Tsitsuashvili, Jaba) (Filed on 5/25/2023) (Entered: 05/25/2023) |
| 05/26/2023 | 71 | **ORDER by Judge William H. Orrick granting 70 STIPULATION IN SUPPORT OF UNOPPOSED MOTION FOR ADMINISTRATIVE RELIEF TO EXCEED PAGE LIMITATIONS. (jmd, COURT STAFF) (Filed on 5/26/2023) (Entered: 05/26/2023)** |
| 05/31/2023 | 72 | OPPOSITION/RESPONSE (re 64 MOTION to Dismiss *the Second Amended Complaint*, 65 MOTION to Dismiss *the Second Amended Complaint* ) *Plaintiffs' Consolidated Opposition to Defendants' Motions to Dismiss the Second Amended Complaint* filed byMovement Ink LLC, Rene Quinonez. (Attachments: # 1 Declaration of Jaba Tsitsuashvili, # 2 Exhibit A)(Tsitsuashvili, Jaba) (Filed on 5/31/2023) (Entered: 05/31/2023) |
| 06/07/2023 | 73 | REPLY (re 64 MOTION to Dismiss *the Second Amended Complaint* ) filed byUnited States of America. (Attachments: # 1 Declaration of Ave Heath)(Keough, Michael) (Filed on 6/7/2023) (Entered: 06/07/2023) |
| 06/07/2023 | 74 | REPLY (re 65 MOTION to Dismiss *the Second Amended Complaint* ) filed byJeff Agster, Eva Chan, Mark Hodges, Robin Lee. (Keough, Michael) (Filed on 6/7/2023) (Entered: 06/07/2023) |
| 06/12/2023 | 75 | CLERKS NOTICE RESETTING ZOOM HEARING - The Hearing on 64 , 65 Motions to Dismiss is reset for 6/21/2023 10:00 AM. This proceeding will be held via Zoom webinar. |

| | | |
|---|---|---|
| | | **Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/who<br><br>**General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (jmd, COURT STAFF) (Filed on 6/12/2023) (Entered: 06/12/2023) |
| 06/21/2023 | 76 | **Minute Entry for proceedings held before Judge William H. Orrick: Hearing held on 6/21/2023 re 64 , 65 Motions to Dismiss. Motions taken under submission; written order to follow. Total Time in Court: 16 minutes. Court Reporter: Marla Knox. (jmd, COURT STAFF) (Date Filed: 6/21/2023) (Entered: 06/21/2023)** |
| 06/22/2023 | 77 | AUDIO RECORDINGS ORDER (requesting docket(s): 76 , 61 ), by Movement Ink LLC, Rene Quinonez. Court will send to Rebekah Ramirez at rramirez@ij.org a link to the files requested in this order. ( Filing fee $ 32, receipt number ACANDC-18381890). (Tsitsuashvili, Jaba) (Filed on 6/22/2023) (Entered: 06/22/2023) |
| 06/22/2023 | 78 | TRANSCRIPT ORDER for proceedings held on March 8, 2023 before Judge William H. Orrick by Movement Ink LLC, Rene Quinonez, for Court Reporter not listed - San Francisco. (Tsitsuashvili, Jaba) (Filed on 6/22/2023) (Entered: 06/22/2023) |
| 06/22/2023 | 79 | TRANSCRIPT ORDER for proceedings held on June 21, 2023 before Judge William H. Orrick by Movement Ink LLC, Rene Quinonez, for Court Reporter Marla Knox. (Tsitsuashvili, Jaba) (Filed on 6/22/2023) (Entered: 06/22/2023) |
| 06/29/2023 | 80 | **ORDER GRANTING IN PART AND DENYING IN PART 64 , 65 MOTIONS TO DISMISS. Case Management Statement due by 8/8/2023. Case Management Conference set for 8/15/2023 02:00 PM via Videoconference. Signed by Judge William H. Orrick on 06/29/2023. (jmd, COURT STAFF) (Filed on 6/29/2023) (Entered: 06/29/2023)** |
| 07/07/2023 | 81 | STIPULATION WITH PROPOSED ORDER *Joint Stipulation Regarding Case Schedule* filed by United States of America. (Attachments: # 1 Declaration of Michael A. Keough) (Keough, Michael) (Filed on 7/7/2023) (Entered: 07/07/2023) |
| 07/08/2023 | 82 | Transcript of Proceedings held on 03/08/2023, before Judge William H. Orrick. Court Reporter/Transcriber Peggy Schuerger/Ad Hoc Reporting, telephone number (619) 228-3774/adhocreporting@aol.com. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 78 Transcript Order ) Redaction Request due 7/31/2023. Redacted Transcript Deadline set for 8/8/2023. Release of Transcript Restriction set for 10/6/2023. (Related documents(s) 78 ) (Schuerger, Peggy) (Filed on 7/8/2023) (Entered: 07/08/2023) |
| 07/10/2023 | 83 | **Order by Judge William H. Orrick granting 81 Stipulation Regarding Response Date and Case Management Conference. Case Management Statement due by 10/10/2023. Case Management Conference reset for 10/17/2023 02:00 PM via Videoconference. (jmd, COURT STAFF) (Filed on 7/10/2023) (Entered: 07/10/2023)** |

| | | |
|---|---|---|
| 07/31/2023 | 84 | MOTION for Additional Amendments to Third Amended Complaint filed by Movement Ink LLC, Rene Quinonez. Motion Hearing set for 9/13/2023 02:00 PM in San Francisco, - To be determined before Judge William H. Orrick. Responses due by 8/14/2023. Replies due by 8/21/2023. (Attachments: # 1 Declaration of Jaba Tsitsuashvili, # 2 Third Amended Complaint and Demand for Jury Trial, # 3 Proposed Order)(Tsitsuashvili, Jaba) (Filed on 7/31/2023) (Entered: 07/31/2023) |
| 08/11/2023 | 85 | NOTICE of Appearance by Andrew Mainardi (Mainardi, Andrew) (Filed on 8/11/2023) (Entered: 08/11/2023) |
| 08/11/2023 | 86 | STIPULATION re 84 MOTION for Additional Amendments to Third Amended Complaint *EXTENDING TIME* filed by Jeff Agster, Eva Chan, Mark Hodges, Robin Lee, United States of America. (Mainardi, Andrew) (Filed on 8/11/2023) (Entered: 08/11/2023) |
| 08/14/2023 | 87 | **ORDER GRANTING 86 STIPULATION EXTENDING TIME re 84 MOTION for Additional Amendments to Third Amended Complaint. Responses due by 8/21/2023. Replies due by 8/28/2023. Signed by Judge William H. Orrick on 08/14/2023. (jmd, COURT STAFF) (Filed on 8/14/2023) (Entered: 08/14/2023)** |
| 08/21/2023 | 88 | OPPOSITION/RESPONSE (re 84 MOTION for Additional Amendments to Third Amended Complaint ) filed byJeff Agster, Eva Chan, Mark Hodges, Robin Lee, United States of America. (Mainardi, Andrew) (Filed on 8/21/2023) (Entered: 08/21/2023) |
| 08/28/2023 | 89 | REPLY (re 84 MOTION for Additional Amendments to Third Amended Complaint ) filed byMovement Ink LLC, Rene Quinonez. (Tsitsuashvili, Jaba) (Filed on 8/28/2023) (Entered: 08/28/2023) |
| 08/30/2023 | 90 | Transcript of Proceedings held on June 21, 2023, before Judge William H. Orrick. Court Reporter, Marla F. Knox, RPR, CRR, RMR, telephone number (602) 391-6990/email marla_knox@cand.uscourts.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 79 Transcript Order ) Release of Transcript Restriction set for 11/28/2023. (Related documents(s) 79 ) (mfk, COURT STAFF) (Filed on 8/30/2023) (Entered: 08/30/2023) |
| 08/30/2023 | 91 | **ORDER DENYING 84 MOTION FOR LEAVE TO MAKE ADDITIONAL AMENDMENTS TO THIRD AMENDED COMPLAINT by Judge William H. Orrick. (jmd, COURT STAFF) (Filed on 8/30/2023) (Entered: 08/30/2023)** |
| 09/11/2023 | 92 | AMENDED COMPLAINT *Third Amended Complaint and Demand for Jury Trial* against United States of America. Filed byMovement Ink LLC, Rene Quinonez. (Tsitsuashvili, Jaba) (Filed on 9/11/2023) (Entered: 09/11/2023) |
| 09/25/2023 | 93 | ANSWER to Amended Complaint byUnited States of America. (Mainardi, Andrew) (Filed on 9/25/2023) (Entered: 09/25/2023) |
| 09/28/2023 | 94 | NOTICE of Change In Counsel by Trace Mitchell (Mitchell, Trace) (Filed on 9/28/2023) (Entered: 09/28/2023) |
| 10/10/2023 | 95 | JOINT CASE MANAGEMENT STATEMENT filed by Movement Ink LLC, Rene Quinonez. (Tsitsuashvili, Jaba) (Filed on 10/10/2023) (Entered: 10/10/2023) |
| 10/16/2023 | 96 | CLERKS NOTICE RE ZOOM HEARING - The Case Management Conference set for 10/17/2023 at 2:00 p.m. will be held via Zoom webinar. |

| | | |
|---|---|---|
| | | **Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/who<br><br>**General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (jmd, COURT STAFF) (Filed on 10/16/2023) (Entered: 10/16/2023) |
| 10/17/2023 | 97 | **Minute Entry for proceedings held before Judge William H. Orrick: Case Management Conference held on 10/17/2023. Further Case Management Conference set for 4/16/2024 02:00 PM via Videoconference (Case Management Statement due by 4/9/2024). Close of Fact Discovery: 7/31/2024. Dispositive Motions to be heard by 2/26/2025. Pretrial Conference set for 5/12/2025 02:00 PM and Bench Trial set for 6/9/2025 08:30 AM, both in San Francisco, Courtroom 02, 17th Floor before Judge William H. Orrick. Total Time in Court: 7 minutes. Court Reporter: Kim Greiner. Plaintiff Attorney: Jaba Tsitsuashvilli. Defendant Attorney: Michael A. Keough. (jmd, COURT STAFF) (Date Filed: 10/17/2023) Modified on 10/17/2023 to revise jury trial to bench trial (jmd, COURT STAFF). (Entered: 10/17/2023)** |
| 10/17/2023 | | Set/Reset Hearing - Bench Trial set for 6/9/2025 08:30 AM before Judge William H. Orrick. (jmd, COURT STAFF) (Filed on 10/17/2023) (Entered: 10/17/2023) |
| 02/07/2024 | 98 | STIPULATION WITH PROPOSED ORDER *Model Stipulated Protective Order* filed by United States of America. (Attachments: # 1 Declaration of Michael A. Keough)(Keough, Michael) (Filed on 2/7/2024) (Entered: 02/07/2024) |
| 02/08/2024 | 99 | **MODEL STIPULATED PROTECTIVE ORDER by Judge William H. Orrick granting 98 Stipulation. (jmd, COURT STAFF) (Filed on 2/8/2024) (Entered: 02/08/2024)** |
| 04/09/2024 | 100 | JOINT CASE MANAGEMENT STATEMENT filed by Movement Ink LLC, Rene Quinonez. (Tsitsuashvili, Jaba) (Filed on 4/9/2024) (Entered: 04/09/2024) |
| 04/11/2024 | 101 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 328, receipt number ACANDC-19311373.) filed by Movement Ink LLC, Rene Quinonez. (Taylor, Bobbi) (Filed on 4/11/2024) (Entered: 04/11/2024) |
| 04/12/2024 | 102 | **Order by Judge William H. Orrick granting 101 Motion for Pro Hac Vice by Bobbi M. Taylor. (jmd, COURT STAFF) (Filed on 4/12/2024) (Entered: 04/12/2024)** |
| 04/15/2024 | 103 | CLERKS NOTICE RE ZOOM HEARING. The Case Management Conference set for 4/16/2024 at 2:00 p.m. will be held via Zoom webinar.<br><br>**Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/who<br><br>**General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/. |

| | | |
|---|---|---|
| | | *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (jmd, COURT STAFF) (Filed on 4/15/2024) (Entered: 04/15/2024) |
| 04/16/2024 | 104 | **Minute Entry for proceedings held before Judge William H. Orrick: Case Management Conference held on 4/16/2024. CASE REFERRED to Magistrate Judge for Settlement Conference. Further Case Management Conference set for 10/30/2024 02:00 PM via Videoconference (Case Management Statement due by 10/23/2024). Total Time in Court: 6 minutes. Court Reporter: Beth Krupa. Plaintiff Attorneys: Jaba Tsitsuashvili and Bobbi M. Taylor. Defendant Attorney: Michael Keough. (jmd, COURT STAFF) (Date Filed: 4/16/2024) (Entered: 04/16/2024)** |
| 04/17/2024 | 105 | CLERKS NOTICE SETTING PRE-SETTLEMENT SCHEDULING CONFERENCE. The parties are hereby notified that a Scheduling Conference is set for 4/23/2024 at 2:30 AM before Magistrate Judge Alex G. Tse. This proceeding will be held via a non-public Zoom meeting.<br><br>**Court Appearances:** Advanced notice is required of counsel who wish to be identified by the court as making an appearance or will be participating in the conference. A list of names must be sent to the courtroom deputy at AGTcrd@cand.uscourts.gov no later than 4/19/2023.<br><br>**Zoom Meeting Access:** Information on how to join the conference can be found on the Court's website under the subheading Joining Non-Public Hearings (Settlement Conferences, etc.) at https://www.cand.uscourts.gov/judges/tse-alex-g-agt/<br><br>**General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (shy, COURT STAFF) (Filed on 4/17/2024) (Entered: 04/17/2024) |
| 04/17/2024 | 106 | AMENDED CLERKS NOTICE SETTING PRE-SETTLEMENT SCHEDULING CONFERENCE. The parties are hereby notified that a Scheduling Conference is set for 4/23/2024 at 2:30 PM before Magistrate Judge Alex G. Tse. This proceeding will be held via a non-public Zoom meeting.<br><br>**Court Appearances:** Advanced notice is required of counsel who wish to be identified by the court as making an appearance or will be participating in the conference. A list of names must be sent to the courtroom deputy at AGTcrd@cand.uscourts.gov no later than 4/19/2023.<br><br>**Zoom Meeting Access:** Information on how to join the conference can be found on the Court's website under the subheading Joining Non-Public Hearings (Settlement Conferences, etc.) at https://www.cand.uscourts.gov/judges/tse-alex-g-agt/<br><br>**General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/. |

| | | |
|---|---|---|
| | | *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (shy, COURT STAFF) (Filed on 4/17/2024) (Entered: 04/17/2024) |
| 04/18/2024 | 107 | CLERKS NOTICE RESCHEDULING PRE-SETTLEMENT SCHEDULING CONFERENCE. The parties are hereby notified that the Scheduling Conference is rescheduled to 4/24/2024 at 1:30 PM before Magistrate Judge Alex G. Tse. This proceeding will be held via a non-public Zoom meeting.<br><br>Court Appearances: Advanced notice is required of counsel who wish to be identified by the court as making an appearance or will be participating in the conference. A list of names must be sent to the courtroom deputy at AGTcrd@cand.uscourts.gov no later than 4/19/2023.<br><br>**Zoom Meeting Access:** Information on how to join the conference can be found on the Court's website under the subheading Joining Non-Public Hearings (Settlement Conferences, etc.) at https://www.cand.uscourts.gov/judges/tse-alex-g-agt/<br><br>**General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (shy, COURT STAFF) (Filed on 4/18/2024) (Entered: 04/18/2024) |
| 04/24/2024 | 108 | **Minute Entry for pre-settlement conference held on 4/24/2024 before Magistrate Judge Alex G. Tse. The Court shall schedule the settlement conference to take place in late September or early October 2024. (Not Reported.)**<br><br>**Plaintiff Attorneys: Jaba Tsitsuashvili and Bobbi M. Taylor.**<br>**Defendant Attorney: Michael A. Keough.**<br><br>***(This is a text-only entry generated by the court. There is no document associated with this entry.)* (shy, COURT STAFF) (Date Filed: 4/24/2024) (Entered: 04/30/2024)** |
| 04/30/2024 | 109 | CLERKS NOTICE SETTING SETTLEMENT CONFERENCE. A Settlement Conference is set for 10/2/2024 at 10:00 AM before Magistrate Judge Alex G. Tse. This proceeding will be held via a non-public Zoom meeting.<br><br>**Zoom Meeting Access:** Information on how to join the conference can be found on the Court's website under the subheading Joining Non-Public Hearings (Settlement Conferences, etc.) at https://www.cand.uscourts.gov/judges/tse-alex-g-agt/<br><br>**General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>(shy, COURT STAFF) (Filed on 4/30/2024) (Entered: 04/30/2024) |

| | | |
|---|---|---|
| 07/25/2024 | 110 | STIPULATION WITH PROPOSED ORDER *Regarding Certain Discovery Deadlines* filed by Movement Ink LLC, Rene Quinonez. (Attachments: # 1 Declaration of Jaba Tsitsuashvili)(Tsitsuashvili, Jaba) (Filed on 7/25/2024) (Entered: 07/25/2024) |
| 07/25/2024 | 111 | **Order by Judge William H. Orrick granting 110 Stipulation. Plaintiffs have until August 7 to respond to outstanding discovery requests and Defendant has until August 14 to initiate challenges under Local Rule 37-3. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (wholc3, COURT STAFF) (Filed on 7/25/2024) (Entered: 07/25/2024)** |
| 08/15/2024 | 112 | STIPULATION WITH PROPOSED ORDER *Stipulated Request to File Fourth Amended Complaint* filed by Movement Ink LLC, Rene Quinonez. (Attachments: # 1 Declaration in Support of Stipulated Request to File Fourth Amended Complaint, # 2 Fourth Amended Complaint)(Tsitsuashvili, Jaba) (Filed on 8/15/2024) (Entered: 08/15/2024) |
| 08/16/2024 | 113 | **Order by Judge William H. Orrick granting 112 Stipulation to File Fourth Amended Complaint. (jmd, COURT STAFF) (Filed on 8/16/2024) (Entered: 08/16/2024)** |
| 08/16/2024 | 114 | FOURTH AMENDED COMPLAINT against United States of America. Filed by Movement Ink LLC and Rene Quinonez. (jmd, COURT STAFF) (Filed on 8/16/2024) (Entered: 08/19/2024) |
| 08/29/2024 | 115 | MOTION to Dismiss *Fourth Amended Complaint in Part and Motion to Strike* filed by United States of America. Motion to Dismiss Hearing set for 10/9/2024 02:00 PM in San Francisco, - To be determined. Responses due by 9/12/2024. Replies due by 9/19/2024. (Attachments: # 1 Proposed Order)(Keough, Michael) (Filed on 8/29/2024) (Entered: 08/29/2024) |
| 09/06/2024 | 116 | STIPULATION WITH PROPOSED ORDER *Stipulated Request Regarding Briefing Schedule* filed by Movement Ink LLC, Rene Quinonez. (Attachments: # 1 Declaration in Support of Stipulated Request Regarding Briefing Schedule)(Tsitsuashvili, Jaba) (Filed on 9/6/2024) (Entered: 09/06/2024) |
| 09/11/2024 | 117 | **ORDER granting 116 STIPULATION re 115 MOTION to Dismiss. Responses due by 9/20/2024. Replies due by 10/4/2024. Motion Hearing set for 10/30/2024 02:00 PM via Videoconference. Signed by Judge William H. Orrick on 09/11/2024. (jmd, COURT STAFF) (Filed on 9/11/2024) (Entered: 09/11/2024)** |
| 09/20/2024 | 118 | OPPOSITION/RESPONSE (re 115 MOTION to Dismiss *Fourth Amended Complaint in Part and Motion to Strike* ) filed byMovement Ink LLC, Rene Quinonez. (Tsitsuashvili, Jaba) (Filed on 9/20/2024) (Entered: 09/20/2024) |
| 09/20/2024 | 119 | MOTION for Partial Summary Judgment *Plaintiffs' Motion for Partial Summary Judgment as to Count 1 of the Fourth Amended Complaint* filed by Movement Ink LLC, Rene Quinonez. Motion Hearing set for 10/30/2024 02:00 PM in San Francisco, - Videoconference Only before Judge William H. Orrick. Responses due by 10/4/2024. Replies due by 10/11/2024. (Attachments: # 1 Exhibit A - Declaration of Rene Quinonez, # 2 Exhibit B - Defendant's Interrogatory Responses, # 3 Exhibit C - FILED UNDER SEAL, # 4 Exhibit D - FILED UNDER SEAL, # 5 Exhibit E - FILED UNDER SEAL, # 6 Proposed Order)(Tsitsuashvili, Jaba) (Filed on 9/20/2024) (Entered: 09/20/2024) |
| 09/20/2024 | 120 | Administrative Motion to Consider Whether Another Party's Material Should Be Sealed filed by Movement Ink LLC, Rene Quinonez. (Attachments: # 1 Declaration of Jaba Tsitsuashvili, # 2 Plaintiffs' Motion for Partial Summary Judgment as to Count 1 of the Fourth Amended Complaint, # 3 Exhibit A - Declaration of Rene Quinonez, # 4 Exhibit B - Defendant's Interrogatory Responses, # 5 Exhibit C - Deposition Transcript Stephen Fajardo with Exhibits 1-5, # 6 Exhibit D - Deposition Transcript Carlos Ruiz with Exhibits 27, 35 & 43, # 7 Exhibit E - Deposition Transcript - USPIS 30(b)(6) Jeffrey |

| | | |
|---|---|---|
| | | Agster with Exhibits 47-49, # 8 Proposed Order)(Tsitsuashvili, Jaba) (Filed on 9/20/2024) (Entered: 09/20/2024) |
| 09/27/2024 | 121 | STIPULATION WITH PROPOSED ORDER re 120 Administrative Motion to Consider Whether Another Party's Material Should Be Sealed filed by United States of America. (Attachments: # 1 Declaration of Michael A. Keough)(Keough, Michael) (Filed on 9/27/2024) (Entered: 09/27/2024) |
| 10/02/2024 | 122 | **Minute Entry for settlement conference held on 10/2/2024 before Magistrate Judge Alex G. Tse. Case did not settle. The Court shall engage counsel for the parties in a follow video conference in November 2024. (Not Reported.)**<br><br>**Plaintiff Attorney: Jaba Tsitsuashvili and Bobbi M. Taylor.**<br>**Defendant Attorney: Michael A. Keough.**<br><br>***(This is a text-only entry generated by the court. There is no document associated with this entry.)* (shy, COURT STAFF) (Date Filed: 10/2/2024) (Entered: 10/03/2024)** |
| 10/03/2024 | 123 | CLERKS NOTICE SETTING VIDEO CONFERENCE. The parties are hereby notified that a conference regarding settlement status is set for 11/6/2024 at 10:00 AM before Magistrate Judge Alex G. Tse. This proceeding will be held via a non-public Zoom meeting. Clients are not required to attend this proceeding.<br><br>**Court Appearances:** Advanced notice is required of counsel who wish to be identified by the court as making an appearance or will be participating in the conference. A list of names must be sent to the courtroom deputy at AGTcrd@cand.uscourts.gov no later than 10/30/2024.<br><br>**Zoom Meeting Access:** Information on how to join the conference can be found on the Court's website under the subheading Joining Non-Public Hearings (Settlement Conferences, etc.) at https://www.cand.uscourts.gov/judges/tse-alex-g-agt/<br><br>**General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (shy, COURT STAFF) (Filed on 10/3/2024) (Entered: 10/03/2024) |
| 10/04/2024 | 124 | REPLY (re 115 MOTION to Dismiss *Fourth Amended Complaint in Part and Motion to Strike* ) filed byUnited States of America. (Keough, Michael) (Filed on 10/4/2024) (Entered: 10/04/2024) |
| 10/04/2024 | 125 | OPPOSITION/RESPONSE (re 119 MOTION for Partial Summary Judgment *Plaintiffs' Motion for Partial Summary Judgment as to Count 1 of the Fourth Amended Complaint* ) filed byUnited States of America. (Attachments: # 1 Declaration of Mark Hodges with attachment, # 2 Declaration of Jeffrey Agster, # 3 Declaration of Michael Keough, # 4 Exhibit 1 - Deposition Excerpt)(Keough, Michael) (Filed on 10/4/2024) (Entered: 10/04/2024) |
| 10/04/2024 | 126 | OPPOSITION/RESPONSE (re 120 Administrative Motion to Consider Whether Another Party's Material Should Be Sealed ) filed byUnited States of America. (Attachments: # 1 Declaration of Jeffrey Agster, # 2 Proposed Order)(Keough, Michael) (Filed on 10/4/2024) (Entered: 10/04/2024) |

| | | |
|---|---|---|
| 10/08/2024 | 127 | REPLY (re 120 Administrative Motion to Consider Whether Another Party's Material Should Be Sealed ) filed byMovement Ink LLC, Rene Quinonez. (Tsitsuashvili, Jaba) (Filed on 10/8/2024) (Entered: 10/08/2024) |
| 10/11/2024 | 128 | REPLY (re 119 MOTION for Partial Summary Judgment *Plaintiffs' Motion for Partial Summary Judgment as to Count 1 of the Fourth Amended Complaint* ) filed byMovement Ink LLC, Rene Quinonez. (Attachments: # 1 Exhibit F - FILED UNDER SEAL) (Tsitsuashvili, Jaba) (Filed on 10/11/2024) (Entered: 10/11/2024) |
| 10/11/2024 | 129 | Administrative Motion to Consider Whether Another Party's Material Should Be Sealed filed by Movement Ink LLC, Rene Quinonez. (Attachments: # 1 Declaration of Jaba Tsitsuashvili, # 2 Exhibit F - Deposition Transcript - Mark Hodges, # 3 Proposed Order) (Tsitsuashvili, Jaba) (Filed on 10/11/2024) (Entered: 10/11/2024) |
| 10/17/2024 | 130 | CLERKS NOTICE RESCHEDULING VIDEO CONFERENCE.<br><br>The parties are hereby notified that the conference regarding settlement status is rescheduled to 11/12/2024 at 1:30 PM before Magistrate Judge Alex G. Tse. This proceeding will be held via a non-public Zoom meeting. Clients are not required to attend this proceeding.<br><br>**Court Appearances:** Advanced notice is required of counsel who wish to be identified by the court as making an appearance or will be participating in the conference. A list of names must be sent to the courtroom deputy at AGTcrd@cand.uscourts.gov no later than 11/5/2024.<br><br>**Zoom Meeting Access:** Information on how to join the conference can be found on the Court's website under the subheading Joining Non-Public Hearings (Settlement Conferences, etc.) at https://www.cand.uscourts.gov/judges/tse-alex-g-agt/<br><br>**General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (shy, COURT STAFF) (Filed on 10/17/2024) (Entered: 10/17/2024) |
| 10/18/2024 | 131 | NOTICE of Change of Address by Michael A. Keough (Keough, Michael) (Filed on 10/18/2024) (Entered: 10/18/2024) |
| 10/18/2024 | 132 | OPPOSITION/RESPONSE (re 129 Administrative Motion to Consider Whether Another Party's Material Should Be Sealed ) filed byUnited States of America. (Attachments: # 1 Proposed Order)(Keough, Michael) (Filed on 10/18/2024) (Entered: 10/18/2024) |
| 10/22/2024 | 133 | REPLY (re 129 Administrative Motion to Consider Whether Another Party's Material Should Be Sealed ) filed byMovement Ink LLC, Rene Quinonez. (Tsitsuashvili, Jaba) (Filed on 10/22/2024) (Entered: 10/22/2024) |
| 10/23/2024 | 134 | JOINT CASE MANAGEMENT STATEMENT filed by Movement Ink LLC, Rene Quinonez. (Tsitsuashvili, Jaba) (Filed on 10/23/2024) (Entered: 10/23/2024) |
| 10/30/2024 | 135 | CLERKS NOTICE RE ZOOM HEARING - The 115 Motion to Dismiss and Case Management Conference set for 10/30/2024 at 2:00 p.m. will be held via Zoom webinar. |

| | | |
|---|---|---|
| | | **Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/who<br><br>**General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (jmd, COURT STAFF) (Filed on 10/30/2024) (Entered: 10/30/2024) |
| 10/30/2024 | 136 | **Minute Entry for proceedings held before Judge William H. Orrick: Motion Hearing held on 10/30/2024 re 115 MOTION to Dismiss and 119 MOTION for Partial Summary Judgment. Motions taken under submission; written order to follow. Total Time in Court: 17 minutes. Court Reporter: Marla Knox. Plaintiff Attorneys: Jaba Tsitsushvili, Bobbi M. Taylor, and Patrick Jaicomo. Defendant Attorney: Michael A. Keough. (jmd, COURT STAFF) (Date Filed: 10/30/2024) (Entered: 10/31/2024)** |
| 11/01/2024 | 137 | TRANSCRIPT ORDER for proceedings held on October 30, 2024 before Judge William H. Orrick by Movement Ink LLC, Rene Quinonez, for Court Reporter Marla Knox. (Tsitsuashvili, Jaba) (Filed on 11/1/2024) (Entered: 11/01/2024) |
| 11/08/2024 | 138 | **ORDER GRANTING DEFENDANT'S 115 MOTION TO DISMISS IN PART AND DENYING PLAINTIFF'S 119 MOTION FOR PARTIAL SUMMARY JUDGMENT by Judge William H. Orrick. (jmd, COURT STAFF) (Filed on 11/8/2024) (Entered: 11/08/2024)** |
| 11/12/2024 | 139 | **Minute Entry for status conference held on 11/12/2024 before Magistrate Judge Alex G. Tse. The Court shall schedule a further conference regarding settlement status to take place in March 2025. (Not Reported.)**<br><br>**Plaintiff Attorneys: Jaba Tsitsuashvili, Bobbi M. Taylor, and Patrick Jaicomo. Defendant Attorney: Michael A. Keough.**<br><br>***(This is a text-only entry generated by the court. There is no document associated with this entry.)* (shy, COURT STAFF) (Date Filed: 11/12/2024) (Entered: 11/12/2024)** |
| 11/15/2024 | 140 | CLERKS NOTICE SETTING FURTHER VIDEO CONFERENCE.<br><br>The parties are hereby notified that the a further conference regarding settlement status is set for 3/11/2025 at 11:00 AM before Magistrate Judge Alex G. Tse. This proceeding will be held via a non-public Zoom meeting.<br><br>**Court Appearances:** Advanced notice is required of counsel who wish to be identified by the court as making an appearance or will be participating in the conference. A list of names must be sent to the courtroom deputy at AGTcrd@cand.uscourts.gov no later than 3/4/2025.<br><br>**Webinar Access:** : Information on how to join the conference can be found on the Court's website under the subheading Joining Non-Public Hearings (Settlement Conferences, etc.) at https://www.cand.uscourts.gov/judges/tse-alex-g-agt/<br><br>**General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court |

| | | |
|---|---|---|
| | | proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (shy, COURT STAFF) (Filed on 11/15/2024) (Entered: 11/15/2024) |
| 11/21/2024 | 141 | STIPULATION *Joint Stipulation Modifying Defendant's Answer Date to December 13, 2024* filed by United States of America. (Keough, Michael) (Filed on 11/21/2024) (Entered: 11/21/2024) |
| 12/12/2024 | 142 | ANSWER to Amended Complaint by United States of America. (Keough, Michael) (Filed on 12/12/2024) (Entered: 12/12/2024) |
| 01/12/2025 | 143 | Transcript of Proceedings held on October 30, 2024, before Judge William H. Orrick. Court Reporter, Marla F. Knox, RPR, CRR, RMR, telephone number (602) 391-6990/email marla_knox@cand.uscourts.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 137 Transcript Order ) Release of Transcript Restriction set for 4/14/2025. (Related documents(s) 137 ) (mfk, COURT STAFF) (Filed on 1/12/2025) (Entered: 01/12/2025) |
| 01/22/2025 | 144 | MOTION for Summary Judgment filed by United States of America. Motion for Summary Judgment Hearing set for 2/26/2025 02:00 PM in San Francisco, - Videoconference Only before Judge William H. Orrick. Responses due by 2/5/2025. Replies due by 2/12/2025. (Attachments: # 1 Declaration of Michael A. Keough, # 2 Exhibit 1 - Lee Excerpt, # 3 Exhibit 2 - Movement Ink Excerpt, # 4 Exhibit 3 - Rog Responses, # 5 Exhibit 4 - Invoices (Sealed), # 6 Exhibit 5 - M4BL Excerpts (Sealed), # 7 Exhibit 6 - Email, # 8 Exhibit 7 - Quinonez Excerpt, # 9 Proposed Order)(Keough, Michael) (Filed on 1/22/2025) (Entered: 01/22/2025) |
| 01/22/2025 | 145 | Administrative Motion to Consider Whether Another Party's Material Should Be Sealed filed by United States of America. (Attachments: # 1 Proposed Order, # 2 Exhibit MSJ Exhibit 4, # 3 Exhibit MSJ Exhibit 5, # 4 Exhibit Unredacted MSJ Brief)(Keough, Michael) (Filed on 1/22/2025) (Entered: 01/22/2025) |
| 01/22/2025 | 146 | CERTIFICATE OF SERVICE by United States of America *as Required by Judge Orricks Standing Order on Administrative Motions to File Under Seal* (Keough, Michael) (Filed on 1/22/2025) (Entered: 01/22/2025) |
| 02/05/2025 | 147 | OPPOSITION/RESPONSE (re 144 MOTION for Summary Judgment ) filed byRene Quinonez, Movement Ink LLC. (Attachments: # 1 Exhibit A - Declaration of Rene Quinonez, # 2 Exhibit B - FILED UNDER SEAL, # 3 Exhibit C - FILED UNDER SEAL, # 4 Exhibit D - FILED UNDER SEAL, # 5 Exhibit E - FILED UNDER SEAL, # 6 Exhibit F - FILED UNDER SEAL, # 7 Exhibit G - FILED UNDER SEAL, # 8 Exhibit H - FILED UNDER SEAL, # 9 Exhibit I - FILED UNDER SEAL)(Tsitsuashvili, Jaba) (Filed on 2/5/2025) (Entered: 02/05/2025) |
| 02/05/2025 | 148 | Administrative Motion to Consider Whether Another Party's Material Should Be Sealed filed by Rene Quinonez, Movement Ink LLC. (Attachments: # 1 Declaration of Jaba Tsitsuashvili, # 2 Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, # 3 Exhibit B - Deposition Transcript of Movement for Black Lives, # 4 Exhibit C - Deposition Transcript of Tito Cuevas with Exhibits 5, 32-34, # 5 Exhibit D - Deposition |

| | | |
|---|---|---|
| | | Transcript of Johnny Leong, # 6 Exhibit E - USPIS Instructions, # 7 Exhibit F - Deposition Transcript of Mark Hodges with Exhibits 32-34, # 8 Exhibit G - Deposition Transcript of Carlos Ruiz, # 9 Exhibit H - Deposition Transcript of Stephen Fajardo, # 10 Exhibit I - Deposition Transcript of USPIS 30(b)(6) Jeffrey Agster, # 11 Proposed Order)(Tsitsuashvili, Jaba) (Filed on 2/5/2025) (Entered: 02/05/2025) |
| 02/06/2025 | 149 | CERTIFICATE OF SERVICE by Rene Quinonez, Movement Ink LLC *as Required by Judge Orrick's Standing Order on Administrative Motions to File Under Seal* (Tsitsuashvili, Jaba) (Filed on 2/6/2025) (Entered: 02/06/2025) |
| 02/12/2025 | 150 | REPLY (re 144 MOTION for Summary Judgment ) filed byUnited States of America. (Attachments: # 1 Declaration of Michael A. Keough, # 2 Exhibit A - Plaintiffs' Third Interrogatories)(Keough, Michael) (Filed on 2/12/2025) (Entered: 02/12/2025) |
| 02/12/2025 | 151 | Administrative Motion to Consider Whether Another Party's Material Should Be Sealed filed by United States of America. (Attachments: # 1 Exhibit Unredacted Reply Brief (Under Seal), # 2 Proposed Order)(Keough, Michael) (Filed on 2/12/2025) (Entered: 02/12/2025) |
| 02/12/2025 | 152 | OPPOSITION/RESPONSE (re 148 Administrative Motion to Consider Whether Another Party's Material Should Be Sealed ) filed byUnited States of America. (Attachments: # 1 Proposed Order)(Keough, Michael) (Filed on 2/12/2025) (Entered: 02/12/2025) |
| 02/12/2025 | 153 | CERTIFICATE OF SERVICE by United States of America *as Required by Judge Orricks Standing Order on Administrative Motions to File Under Seal* (Keough, Michael) (Filed on 2/12/2025) (Entered: 02/12/2025) |
| 02/18/2025 | 154 | REPLY (re 148 Administrative Motion to Consider Whether Another Party's Material Should Be Sealed ) filed byRene Quinonez, Movement Ink LLC. (Tsitsuashvili, Jaba) (Filed on 2/18/2025) (Entered: 02/18/2025) |
| 02/24/2025 | 155 | CLERKS NOTICE RESCHEDULING FURTHER VIDEO CONFERENCE.<br><br>The parties are hereby notified that the further conference regarding settlement status is rescheduled to 3/19/2025 at 10:00 AM before Magistrate Judge Alex G. Tse. This proceeding will be held via a non-public Zoom meeting.<br><br>**Court Appearances:** Advanced notice is required of counsel who wish to be identified by the court as making an appearance or will be participating in the conference. A list of names must be sent to the courtroom deputy at AGTcrd@cand.uscourts.gov no later than 3/12/2025.<br><br>**Zoom Meeting Access:** Information on how to join the conference can be found on the Court's website under the subheading Joining Non-Public Hearings (Settlement Conferences, etc.) at https://www.cand.uscourts.gov/judges/tse-alex-g-agt/<br><br>**General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (shy, COURT STAFF) (Filed on 2/24/2025) (Entered: 02/24/2025) |
| 02/25/2025 | 156 | CLERKS NOTICE RE ZOOM HEARING - The Hearing on 144 Motion for Summary Judgment set for 2/26/2026 at 2:00 p.m. will be held via Zoom webinar. |

| | | |
|---|---|---|
| | | **Webinar Access:** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/who<br><br>**General Order 58.** Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.<br><br>**Zoom Guidance and Setup:** https://www.cand.uscourts.gov/zoom/.<br><br>*(This is a text-only entry generated by the court. There is no document associated with this entry.)* (jmd, COURT STAFF) (Filed on 2/25/2025) (Entered: 02/25/2025) |
| 02/26/2025 | 157 | **Minute Entry for proceedings held before Judge William H. Orrick: Motion Hearing held on 2/26/2025 re 144 MOTION for Summary Judgment. Motion taken under submission; written order to follow. Total Time in Court: 37 minutes. Court Reporter: Summer Fisher. Plaintiff Attorneys: Jaba Tsitsuashvili and Bobbi M. Taylor. Defendant Attorney: Michael A. Keough. (jmd, COURT STAFF) (Date Filed: 2/26/2025) (Entered: 02/28/2025)** |
| 03/19/2025 | 158 | **Minute Entry for proceedings held before Magistrate Judge Alex G. Tse: Status Conference held on 3/19/2025. Discussion held regarding settlement status. If at a later date the parties resume settlement discussions and wish to set a settlement conference, then they shall contact Judge Tse's courtroom deputy. (Not Reported.)**<br><br>**Plaintiff Attorneys: Jaba Tsitsuashvili and Bobbi M. Taylor.<br>Defendant Attorney: Michael A. Keough.**<br><br>***(This is a text-only entry generated by the court. There is no document associated with this entry.)* (shy, COURT STAFF) (Date Filed: 3/19/2025) (Entered: 03/19/2025)** |
| 03/25/2025 | 159 | **Order Granting Defendant's Motion for Summary Judgment.** (jmd, COURT STAFF) (Filed on 3/25/2025) Modified on 3/28/2025 to release restrictions following confirmation from counsel that no confidential information is contained in the order (jmd, COURT STAFF). (Entered: 03/25/2025) |
| 03/28/2025 | 160 | RESPONSE *Regarding Redactions to Order Granting Defendant's Motion for Summary Judgment* by United States of America. (Keough, Michael) (Filed on 3/28/2025) (Entered: 03/28/2025) |
| 04/14/2025 | 161 | Administrative Motion to File Under Seal *Proposed Revised Redactions For Documents and Transcripts in Response to Court's Summary Judgment Order, Footnote 1 (Dkt. 159)* filed by United States of America. (Attachments: # 1 Exhibit Ruiz Proposed Redactions, # 2 Exhibit Hodges Proposed Redactions, # 3 Exhibit Fajardo Proposed Redactions, # 4 Exhibit USPIS 30b6 Proposed Redactions, # 5 Proposed Order)(Keough, Michael) (Filed on 4/14/2025) (Entered: 04/14/2025) |
| 04/15/2025 | 162 | **Order by Judge William H. Orrick granting 161 Administrative Motion to File Under Seal. (jmd, COURT STAFF) (Filed on 4/15/2025) (Entered: 04/15/2025)** |
| 04/15/2025 | 163 | CLERK'S JUDGMENT. (jmd, COURT STAFF) (Filed on 4/15/2025) (Entered: 04/15/2025) |
| 04/25/2025 | 164 | BILL OF COSTS by United States of America. Objections due by 5/9/2025. (Attachments: # 1 Declaration of Michael A. Keough, # 2 Exhibit 1, # 3 Exhibit 2) (Keough, Michael) (Filed on 4/25/2025) (Entered: 04/25/2025) |

| | | |
|---|---|---|
| 05/05/2025 | 165 | REDACTION to 162 Order on Administrative Motion to File Under Seal *Redacted Transcripts* by United States of America. (Attachments: # 1 Exhibit 1 - Cuevas, # 2 Exhibit 2 - Fajardo, # 3 Exhibit 3 - Hodges, # 4 Exhibit 4 - Leong, # 5 Exhibit 5 - Ruiz, # 6 Exhibit 6 - USPIS)(Keough, Michael) (Filed on 5/5/2025) (Entered: 05/05/2025) |
| 05/07/2025 | 166 | STIPULATION WITH PROPOSED ORDER re 164 Bill of Costs *Stipulated Request for 10-day Extension of Deadline for Plaintiffs' Objections to Bill of Costs* filed by Rene Quinonez, Movement Ink LLC. (Attachments: # 1 Declaration of Jaba Tsitsuashvili)(Tsitsuashvili, Jaba) (Filed on 5/7/2025) (Entered: 05/07/2025) |
| 05/08/2025 | 167 | **Order by Judge William H. Orrick granting 166 STIPULATED REQUEST FORTEN-DAY EXTENSION OF DEADLINE FOR PLAINTIFFS' OBJECTIONS TO DEFENDANT'S BILL OF COSTS. Objections due by 5/19/2025. (jmd, COURT STAFF) (Filed on 5/8/2025) (Entered: 05/08/2025)** |
| 05/15/2025 | 168 | TRANSCRIPT ORDER for proceedings held on February 26, 2025 before Judge William H. Orrick by Rene Quinonez, Movement Ink LLC, for Court Reporter Summer Fisher. (Tsitsuashvili, Jaba) (Filed on 5/15/2025) (Entered: 05/15/2025) |
| 05/19/2025 | 169 | OBJECTIONS to re 164 Bill of Costs by Rene Quinonez, Movement Ink LLC. (Attachments: # 1 Declaration of Jaba Tsitsuashvili, # 2 Proposed Order)(Tsitsuashvili, Jaba) (Filed on 5/19/2025) (Entered: 05/19/2025) |
| 05/21/2025 | 170 | Transcript of Proceedings held on 02/26/2025, before Judge William H. Orrick. Court Reporter/Transcriber Summer Fisher, telephone number summer_fisher@cand.uscourts.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 168 Transcript Order ) Redaction Request due 6/11/2025. Redacted Transcript Deadline set for 6/23/2025. Release of Transcript Restriction set for 8/19/2025. (Related documents(s) 168 ) (Fisher, Summer) (Filed on 5/21/2025) (Entered: 05/21/2025) |
| 05/22/2025 | 171 | NOTICE OF APPEAL to the 9th Circuit Court of Appeals filed by Rene Quinonez, Movement Ink LLC. Appeal of Order on Motion to Dismiss, 62 , Order on Administrative Motion to File Under Seal 162 , Order on Motion for Miscellaneous Relief 91 , Sealed Document, 159 , Order on Motion to Dismiss, Order on Motion for Partial Summary Judgment 138 , Clerk's Judgment 163 , Order,, Terminate Motions,, Set Deadlines/Hearings, 80 (Appeal fee of $605 receipt number ACANDC-20708924 paid.) (Attachments: # 1 Representation Statement)(Tsitsuashvili, Jaba) (Filed on 5/22/2025) (Entered: 05/22/2025) |
| 05/28/2025 | 172 | USCA Case Number 25-3386 US Court of Appeals 9th Circuit filed by Movement Ink LLC, Rene Quinonez. (kam2, COURT STAFF) (Filed on 5/28/2025) (Entered: 05/30/2025) |
| 06/02/2025 | 173 | Transcript Designation Form for proceedings held on March 8, 2023, June 21, 2023, October 30, 2024, and February 26, 2025 before Judge William H. Orrick, (Tsitsuashvili, Jaba) (Filed on 6/2/2025) (Entered: 06/02/2025) |
| 08/21/2025 | 174 | Costs Taxed in amount of $21,834.03 against Plaintiffs. (Plaintiffs' 169 Objections address issues outside the Clerk's scope which have not been considered; these issues may be raised in a motion to the Court.) (jmd, COURT STAFF) (Filed on 8/21/2025) (Entered: 08/21/2025) |

| | | |
|---|---|---|
| 08/29/2025 | 175 | MOTION for Review of Taxation of Costs *Plaintiffs' Renewed Objections and Motion to Deny Billing of Costs* filed by Rene Quinonez, Movement Ink LLC. Motion Hearing set for 10/8/2025 02:00 PM in San Francisco, - Videoconference Only before Judge William H. Orrick. Responses due by 9/12/2025. Replies due by 9/19/2025. (Attachments: # 1 Declaration of Jaba Tsitsuashvili, # 2 Proposed Order)(Tsitsuashvili, Jaba) (Filed on 8/29/2025) (Entered: 08/29/2025) |
| 09/12/2025 | 176 | OPPOSITION/RESPONSE (re 175 MOTION for Review of Taxation of Costs *Plaintiffs' Renewed Objections and Motion to Deny Billing of Costs* ) filed byUnited States of America. (Keough, Michael) (Filed on 9/12/2025) (Entered: 09/12/2025) |
| 09/19/2025 | 177 | REPLY (re 175 MOTION for Review of Taxation of Costs *Plaintiffs' Renewed Objections and Motion to Deny Billing of Costs* ) filed byRene Quinonez, Movement Ink LLC. (Tsitsuashvili, Jaba) (Filed on 9/19/2025) (Entered: 09/19/2025) |
| 10/01/2025 | 178 | ADMINISTRATIVE MOTION for a Stay in Light of Lapse in Appropriations filed by United States of America. Responses due by 10/6/2025. (Attachments: # 1 Declaration of Michael A. Keough)(Keough, Michael) (Filed on 10/1/2025) (Entered: 10/01/2025) |
| 10/06/2025 | 179 | CLERK'S NOTICE - Pursuant to Civil L.R. 7-1(b), it has been determined that the 175 Motion for Review of Taxation of Costs is appropriate for disposition without hearing. As such, the hearing scheduled for 10/8/2025 is VACATED. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (jmd, COURT STAFF) (Filed on 10/6/2025) (Entered: 10/06/2025) |

**PACER Service Center**

**Transaction Receipt**

10/06/2025 13:10:54

| | | | |
|---|---|---|---|
| **PACER Login:** | if012567 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:22-cv-03195-WHO |
| **Billable Pages:** | 22 | **Cost:** | 2.20 |