No. 25-3386

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

RENÉ QUIÑONEZ and MOVEMENT INK LLC,

Plaintiff-Appellants,

v.

UNITED STATES OF AMERICA, *et al.*,

Defendant-Appellees.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

District Court Case No. 22-cv-3195-WHO

_____

**ANSWERING BRIEF OF DEFENDANT-APPELLEES
UNITED STATES OF AMERICA, JEFF AGSTER, EVA CHAN, MARK
HODGES, AND ROBIN LEE**

_____

**CRAIG H. MISSAKIAN**
United States Attorney
**PAMELA T. JOHANN**
Chief, Civil Division
**MICHAEL A. KEOUGH**
Assistant United States Attorney
1301 Clay Street, Suite 340S
Oakland, California 94612
PH: 510-637-3721/FX: 510-637-3724
michael.keough@usdoj.gov

March 4, 2026                    **Attorneys for Defendant-Appellees**

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ...............................................................1

STATEMENT OF ISSUES ...........................................................................1

STATEMENT OF THE CASE........................................................................1

I. Factual Background .............................................................................1

    A. The June 2020 Parcels at Issue ..................................................2

    B. Appellants' Relationship with M4BL ............................................4

II. The District Court's Orders at Issue ...................................................6

    A. The District Court's April 3, 2023 Order Granting the United States and Individual Defendants' Motions to Dismiss in Part .......................................7

    B. The District Court's June 29, 2023 Order Granting the United States and Individual Defendants' Motions to Dismiss in Part .....................................10

    C. The District Court's August 30, 2023 Order Denying Appellants' Motion for Leave to Amend.......................................................................11

    D. The District Court's November 8, 2024 Order Granting the Motion to Dismiss in Part and Denying Appellants' Motion for Partial Summary Judgment…..................................................................12

    E. The District Court's March 25, 2025 Order Granting Summary Judgment for the United States on the Remaining Claims ...................................13

SUMMARY OF ARGUMENT .....................................................................14

STANDARD OF REVIEW ..........................................................................17

ARGUMENT ...............................................................................................18

I. The District Court Correctly Granted Judgment to the United States on Appellants' FTCA Claims. ...............................................................18

i

A.   Appellants' Trespass to Chattels Claim Fails.................................................18

    1.   The Detention of Goods Exception to the FTCA Applies to the Initial Detention of Appellants' Packages, and Appellants' New Theory is Forfeited and Meritless .................................................................................18

    2.   Appellants Fail to State a Trespass Claim Based on a "Search" of Their Packages ........................................................................................................24

B.   The District Court Correctly Granted Summary Judgment to the United States on the Interference with Prospective Economic Relations Claim ......30

    1.   The Tort Exception Bars Appellants' Claims for Interference with Prospective Economic Relations..............................................................31

    2.   No Admissible Evidence Demonstrated the Probability of Future Economic Benefit to Plaintiff-Appellees from M4BL...............................33

    3.   Plaintiff-Appellants Cannot Show Actual Disruption to a Relationship with M4BL .................................................................................................35

II.   The District Court Correctly Rejected Appellants' Claims Against the Individual Defendants. ....................................................................................39

CONCLUSION .............................................................................................................49

# TABLE OF AUTHORITIES

**Cases**                                                                                       **Pages**

*Art Metal-U.S.A., Inc. v. United States*,
753 F.2d 1151 (D.C. Cir. 1985)................................................................32

*Bank Melli Iran v. Pahlavi*,
58 F.3d 1406 (9th Cir. 1995) ...................................................................35

*Barthelemy v. Air Lines Pilots Ass'n*,
897 F.2d 999 (9th Cir. 1990) ...................................................................36

*Bazuaye v. United States*,
83 F.3d 482 (D.C. Cir. 1996)........................................................... 20, 21

*Black Lives Matter D.C. v. Barr*,
No. 20-CV-1469 (DLF), 2024 WL 3300158 (D.D.C. July 4, 2024) ...................48

*Blank v. Kirwan*,
39 Cal. 3d 311 (1985) ...............................................................................34

*Boyd v. City of Oakland*,
458 F. Supp. 2d 1015 (N.D. Cal. 2006)................................... 35, 36, 37

*Buchanan v. Barr*,
71 F.4th 1003 (D.C. Cir. 2023) ............................................. 17, 44, 48

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................... 37, 38

*Chao v. Westside Drywall, Inc.*,
709 F. Supp. 2d 1037 (D. Or. 2010)....................................................37

*Chen v. United States*,
854 F.2d 622 (2d Cir. 1988) ...................................................................32

*Columbia Pictures Indus., Inc. v. Fung*,
710 F.3d 1020 (9th Cir. 2013)................................................................18

*Cooper v. American Automobile Insurance Co.*,
  978 F.2d 602 (10th Cir. 1992) ................................................................32

*CRST Van Expedited, Inc. v. Werner Enters., Inc.*,
  479 F.3d 1099 (9th Cir. 2007) ........................................................ 33, 35

*Davis v. Passman*,
  442 U.S. 228 (1979) ..............................................................................48

*De Martinez v. Lamagno*,
  515 U.S. 417 (1995) ..............................................................................40

*DeVillier v. Texas*,
  601 U.S. 285 (2024) ..............................................................................49

*Dolan v. U.S. Postal Serv.*,
  546 U.S. 481 (2006) ..............................................................................22

*Donell v. Kowell*,
  533 F.3d 762 (9th Cir. 2008) ................................................................17

*Dupree v. United States*,
  264 F.2d 140 (3d Cir. 1959) .................................................................32

*Dupris v. McDonald*,
  554 F. App'x 570 (9th Cir. 2014).........................................................26

*Egbert v. Boule*,
  596 U.S. 482 (2022) ...................................................................... passim

*Florida v. Jardines*,
  569 U.S. 1 (2013) ..................................................................................30

*Garcia v. Serv. Emps. Int'l Union*,
  993 F.3d 757 (9th Cir. 2021) ................................................................18

*Goodyear Atomic Corp. v. Miller*,
  486 U.S. 174 (1988) ..............................................................................47

iv

*Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*,
  No. C 03-05340 JF, 2005 WL 832398 (N.D. Cal. Mar. 30, 2005) ......................34

*Gray v. Bell*,
  712 F.2d 490 (D.C. Cir. 1983)..................................................................................26

*Henry v. Essex County*,
  113 F.4th 355 (3d Cir. 2024) ................................................................. 17, 46, 48

*Hernandez v. Mesa*,
  589 U.S. 93 (2020) ..................................................................................... passim

*Hernandez v. United States*,
  353 F.2d 624 (9th Cir. 1965) ...............................................................................29

*Hui v. Castaneda*,
  559 U.S. 799 (2010) ................................................................................ 17, 41, 46

*Jacobsen v. Filler*,
  790 F.2d 1362 (9th Cir. 1986)..............................................................................36

*Johnson v. United States*,
  529 F. App'x 474 (6th Cir. 2013).........................................................................23

*Linder v. United States*,
  937 F.3d 1087 (7th Cir. 2019)..............................................................................28

*Lowry v. City of San Diego*,
  858 F.3d 1248 (9th Cir. 2017)..............................................................................18

*Marine Insurance Co. v. United States*,
  378 F.2d 812 (2d Cir. 1967) ................................................................................23

*Mass. Mut. Life Ins. Co. v. Ludwig*,
  426 U.S. 479 (1976) .............................................................................................21

*Mellein v. United States*,
  No. 23-cv-7970, 2024 WL 1601802 (C.D. Cal. Mar. 14, 2024).........................48

*Moessmer v. United States*,
  760 F.2d 236 (8th Cir. 1985) ................................................................32

*Nieves Martinez v. United States*,
  997 F.3d 867 (9th Cir. 2021) ...............................................................25

*Nurse v. United States*,
  226 F.3d 996 (9th Cir. 2000) ...............................................................27

*One Indus., LLC v. Jim O'Neal Distrib., Inc.*,
  578 F.3d 1154 (9th Cir. 2009) .............................................................21

*Osborn v. Haley*,
  549 U.S. 225 (2007) ...............................................................................9

*Pearsons v. United States*,
  723 F. Supp. 3d 825 (C.D. Cal. 2024) .................................................48

*Persian Gulf Inc. v. BP W. Coast Prods. LLC*,
  632 F. Supp. 3d 1108 (S.D. Cal. 2022) ...............................................36

*Pettibone v. Russell*,
  59 F.4th 449 (9th Cir. 2023) ................................................................42

*Pompy v. First Merchants Bank*,
  No. 24-1249, 2025 WL 2694801 (6th Cir. May 23, 2025) ............... 17, 23, 45, 48

*Republican Nat'l Comm. v. Google Inc.*,
  No. 24-5358, 2026 WL 125195 (9th Cir. Jan. 16, 2026) ....................33

*Republican Nat'l Comm. v. Google LLC*,
  742 F. Supp. 3d 1099 (E.D. Cal. 2024) ......................................... 33, 34

*Sabow v. United States*,
  93 F.3d 1445 (9th Cir. 1996) ...............................................................26

*Saleh v. Bush*,
  848 F.3d 880 (9th Cir. 2017) ....................................................... 17, 41, 46

vi

*Schweiker v. Chilicky*,
487 U.S. 412 (1988) ................................................................48

*Shivers v. United States*,
1 F.4th 924 (11th Cir. 2021) ..................................................28

*Sportique Fashions, Inc. v. Sullivan*,
597 F.2d 664 (9th Cir. 1979) .................................................22

*Sybersound Recs., Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008) ...............................................35

*Thomas v. Kuo*,
No. 116CV00524DADEPGPC, 2019 WL 2369898 (E.D. Cal. June 5, 2019) ....37

*United States Postal Serv. v. Konan*,
No. 24-351, 2026 WL 501765 (U.S. Feb. 24, 2026) ............................23

*United States v. England*,
971 F.2d 419 (9th Cir. 1992) .................................................29

*United States v. Gaubert*,
499 U.S. 315 (1991) ..................................................... 25, 27

*United States v. Hernandez*,
313 F.3d 1206 (9th Cir. 2002) ...............................................28

*United States v. Jefferson*,
566 F.3d 928 (9th Cir. 2009) .................................................28

*United States v. Johnston*,
497 F.2d 397 (9th Cir. 1974) .................................................28

*United States v. Jones*,
565 U.S. 400 (2012) ...........................................................30

*United States v. Quoc Viet Hoang*,
486 F.3d 1156 (9th Cir. 2007) ...............................................28

*United States v. Smith*,
  499 U.S. 160 (1991) ................................................................. passim

*United States v. Taylor*,
  No. 14-cr-00065, 2015 WL 856840 (S.D. W. Va. Feb. 27, 2015).......................29

*Westfall v. Erwin*,
  484 U.S. 292 (1988) ..............................................................................40

*Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*,
  42 Cal. App. 4th 507 (1996).................................................................34

*Xi v. Haugen*,
  68 F.4th 824 (3d Cir. 2023) ................................................................28

*Xue Lu v. Powell*,
  621 F.3d 944 (9th Cir. 2010) .............................................................27

*Ziglar v. Abbasi*,
  582 U.S. 120 (2017) ................................................................. 41, 42, 45

**Statutes**

5 U.S.C. § 1101 ...................................................................................47

18 U.S.C. § 3061 .................................................................................25

28 U.S.C. § 1291.................................................................... 1, 3, 4, 8

28 U.S.C. § 1331 ....................................................................................1

28 U.S.C. § 1346..................................................................................40

28 U.S.C. § 2679........................................................................... passim

28 U.S.C. § 2680........................................................................... passim

31 U.S.C. § 3724..................................................................................47

**Rules**

Fed. R. Evid. 602 .......................................................................................35

Fed. R. Evid. 801(c)...................................................................................36

**Regulations**

39 C.F.R. § 233.1(a)...................................................................................25

## JURISDICTIONAL STATEMENT

Appellants appeal from the district court's final judgment entered on April 15, 2025. 1-ER-2. Appellants filed a timely notice of appeal. The district court properly exercised jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1. Whether the district court correctly granted judgment to the United States on Appellants' claims for trespass to chattels and interference with prospective economic relations claims under the Federal Tort Claims Act.

2. Whether the district court correctly concluded that Appellants could not bring suit under California state law directly against individual federal employees for conduct within the scope of their federal employment.

## STATEMENT OF THE CASE

### I. Factual Background

René Quiñonez is the majority owner and manager of Movement Ink LLC, a small screen-printing business in Oakland, California. 4-ER-817–18. Movement Ink describes itself as "publicly allied and involved with social justice and activism movements, organizations, nonprofits, and individual organizers." 4-ER-818. In 2020, during protests in response to the police killing of George Floyd, M4BL placed an order for thousands of screen-printed face masks. 4-ER-819.

1

### A. The June 2020 Parcels at Issue

As part of fulfilling the M4BL orders, Quiñonez shipped four parcels via Express Mail from the Oakland Main Post Office on June 3, 2020. 4-ER-820. Quiñonez has no personal knowledge of what happened to the four parcels after he deposited them at the Post Office on June 3, 2020. 4-ER-706. Those parcels bore the following tracking numbers: EJ363119375US, EJ363119384US, EJ363119353US, and EJ363119367US. 4-ER-687. Appellants contend that United States Postal Service ("Postal Service" or "USPS") clerk Robin Lee "diverted" the four packages to the United States Postal Inspection Service ("Postal Inspection Service" or "USPIS") to be "assessed" by contractors who "decide[d] whether to detain the packages or return them to the mail stream" based on whether the parcels had characteristics that might indicate the parcels contained marijuana or other unmailable matter. 4-ER-820–21. Appellants contend that Lee "knew about the screen-printing and activist nature of [his] business." 4-ER-820.

On June 4, 2020, the parcels arrived at the Postal Inspection Service's Division Headquarters ("DHQ") in Richmond, California, and were processed as part of the Postal Inspection Service's Administrative Nonmailability Protocol ("ANP"), the administrative procedure used to address suspected narcotics parcels. 4-ER-687. The parcels were then evaluated and processed by Postal Inspection Service contractors Stephen Fajardo and Carlos Ruiz. Fajardo processed three of

2

the parcels (EJ363119375US, EJ363119353US, and EJ363119367US). *Id.* Ruiz processed the fourth (EJ363119384US). *Id.*; 12-ER-2920–24 (Parcel Detail Worksheets for the parcels at issue). Appellants contend that the Postal Inspection Service contractors made the decision to detain the parcels. 4-ER-821. The following characteristics of the parcels, consistent with parcels containing illegal drugs, were noted during the assessment: bulging contents, parcel mailed from a known drug source area, frequently mailed parcels from the same sender/address, parcel destination is a drug trafficking area, missing sender's name, and taped or glued on all seams. 4-ER-822. As part of the assessment, Ruiz and Fajardo squeezed the parcels and would have determined whether their smell was consistent with nonmailable matter. 1-ER-31.

After initial assessment by Fajardo and Ruiz to determine whether the parcels should be processed as part of the ANP, all four parcels were held – unopened – at DHQ. 4-ER-687–88. The next day, Postal Inspection Service officials learned via national news reports that the parcels contained face masks. 4-ER-823. On the morning of June 5, 2020, Postal Inspector Mark Hodges retrieved the four parcels from DHQ and photographed them. 4-ER-688–97 (photographs of the parcels taken by Postal Inspector Hodges). Like Fajardo and Ruiz, Hodges did not open the parcels. 4-ER-688. Hodges then transported the unopened parcels to the Oakland Processing & Delivery Center ("P&DC"). *Id.* The parcels were returned to the mail

stream and delivered to their intended recipients on June 6, 2025. *Id.*;[1] 4-ER-826.

**B.    Appellants' Relationship with M4BL**

Movement Ink was established as a sole proprietorship in 2009. 3-ER-582. Movement Ink's corporate representative testified that all of Movement Ink's sales were tracked in Square beginning in 2014 when Movement Ink existed as sole proprietorship and continuing after Movement Ink was incorporated in 2019.  3-ER-584–85.

Appellants claimed that they suffered economic and reputational harms as a result of the delay in delivering their parcels. As relevant to this appeal, they alleged that their relationship with M4BL was interfered with.    *See* 3-ER-590–91 (identifying customers); ER-531, n.3 (noting abandonment of arguments as to customers other than M4BL).  Movement Ink made no sales to M4BL until June 2020.  Movement Ink's sales records reflect four Square invoices, each of which were paid in full:

- Invoice #000887 (June 3, 2020): $24,852.50

- Invoice #000891 (June 4, 2020): $8,050.00

- Invoice #000896 (June 11, 2020): $45,480.00

---

[1] The 4AC alleged that three other parcels mailed on June 4, 2020 "were not diverted to USPIS," 4-ER-824, but discovery had already confirmed that this allegation was incorrect.  Quiñonez mailed these parcels from a different post office, and those parcels were also diverted for assessment by the Postal Inspection Service after processing by a different postal clerk.  *See* 11-ER-2286-88; 11-ER-2634.

- Invoice #000897 (June 11, 2020): $30,200.00

11-ER-2587. As part of the orders for face masks placed by M4BL in June 2020, Quiñonez worked with Fresco Steez. 3-ER-594. Quiñonez contends that Steez told him that Movement Ink would become the national and consistent screen-printing partner of M4BL, which Quiñonez hoped would lead to large quantities of orders being placed. 3-ER-600. But Steez was not an employee of M4BL; rather, he was a contractor who assisted with designs for some of M4BL's merchandise orders like the face masks. 11-ER-2600. Steez did not have the authority to enter into an agreement to name Movement Ink the national and consistent screen-printing partner of M4BL. 11-ER-2603.

M4BL confirmed at its entity deposition that, at the time the orders for face masks were placed – before parcels containing those face masks were ever handled by the Postal Inspection Service – M4BL had no plans to place future orders with Movement Ink for any kind of product. 11-ER-2602 (M4BL Rule 30(b)(6) Deposition Transcript). Nor had M4BL placed any other orders with Movement Ink. 11-ER-2601. Once M4BL received the masks, M4BL had no additional plans to place future orders with Movement Ink. 11-ER-2602–03. M4BL testified there was no reason that it opted not to place any further orders with Movement Ink. 11-ER-2603. M4BL specifically stated that no one at M4BL had expressed any concern in June 2020 that working with Movement Ink could lead to scrutiny from law

5

enforcement. 11-ER-2605. M4BL also confirmed that it never had an agreement for Movement Ink to become the "national and consistent screen-printing partner" of M4BL in 2020. 11-ER-2603. M4BL has never had a national and consistent screen-printing partner. 11-ER-2603–04.

M4BL's internal controls require expenses over $7,500 to have a written contract or invoice. 11-ER-2596–97. No M4BL employee or contractor was allowed to place an oral order for more than $10,000 worth of goods. 11-ER-2598–99. No contract or invoice between Movement Ink and M4BL, other than the four invoices identified above, exists.

## II.    The District Court's Orders at Issue

The procedural history of this case is lengthy, beginning with an initial complaint filed on June 1, 2022, 7-ER-1509–1555, and followed by four amended complaints, which were winnowed in a series of orders by the district court. Plaintiffs' first amended complaint contained claims against the United States and several individuals including, Lee, Fajardo, and Postal Inspection Service employees Jeff Agster, Eva Chan, and Mark Hodges (the "Individual Defendants"). 7-ER-1434–1486. Appellants brought three tort claims against the United States under the FTCA (Count 1, trespass to chattels; Count 2, interference with contractual relations; and Count 3, interference with prospective economic relations). Appellants asserted the same three tort claims directly against the Individual Defendants (Counts 13, 14,

6

and 15). Appellants also asserted claims against the Individual Defendants for unreasonable searches and seizures in violation of the Fourth Amendment and First Amendment retaliation, invoking *Bivens*, the Westfall Act, and the constitutional provisions themselves as causes of action (Counts 4-12). Appellants sought declaratory relief and monetary damages.

> **A. The District Court's April 3, 2023 Order Granting the United States and Individual Defendants' Motions to Dismiss in Part**

The district court dismissed Appellants' first amended complaint in part. 1-ER-63–89. As to Appellants' FTCA claims, the district court considered whether those claims were barred by four exceptions to the FTCA: the postal exception, the detention of goods exception, the discretionary function exception, and the intentional tort exception. The district court held that their claims were not barred by the postal exception because Appellants alleged intentional acts beyond the late delivery of mail. 1-ER-68–69. Next, the district court held that the detention of goods exception barred any claims arising from the seizure and detention of the packages but not the search of the packages. 1-ER-70–71. The court further concluded that plaintiffs had not plausibly alleged that the packages had been searched, which the district court viewed as central to Appellants' trespass to chattels claim and the application of the discretionary function exception. 1-ER-71–75. Finally, the court concluded that the intentional tort exception barred Appellants' interference with contractual relations claim. 1-ER-75–76. And even if Appellants'

7

interference with prospective economic relations claim was not barred by that exception, the court held that their claim was not adequately pled because Appellants had not plausibly alleged that Appellees knew of any valid contract or economic relationship giving rise to their interference claims. 1-ER-78.

The district court dismissed all of the claims against the Individual Defendants. The district court dismissed with prejudice Appellants' claims under California law against the Individual Defendants as duplicative of their tort claims under the FTCA. 1-ER-79. The court noted that United States was the only proper defendant under the Westfall Act. *Id.*

The district court further held that Appellants' Fourth Amendment claims under *Bivens* presented a new *Bivens* context – searches and seizures by Postal Service employees – and that the grievance procedure of the Postal Service's Office of Inspector General cautioned against extending *Bivens* to this new context. 1-ER-84–85. The court dismissed with prejudice Appellants' First Amendment retaliation claim under *Bivens* as not cognizable under *Egbert v. Boule*, 596 U.S. 482, 499 (2022) ("[T]here is no *Bivens* action for First Amendment retaliation."). 1-ER-81.

The district court also dismissed with prejudice Appellants' claims they attempted to assert directly under the Westfall Act. As the court explained, the Westfall Act generally "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their

8

official duties," 1-ER-79 (quoting *Osborn v. Haley*, 549 U.S. 225, 229 (2007)), and does so by substituting the United States as the defendant in any action against a federal employee based on conduct within the scope of his employment, *see* 28 U.S.C. § 2679(b)(1). The district court explained that although the Westfall Act does not substitute the United States for civil actions "brought for a violation of the Constitution of the United States," *id.* § 2679(b)(2)(A), that provision does not create a wide-ranging *Bivens*-like cause of action against federal employees for all alleged constitutional violations, but instead simply "simply left *Bivens* where it found it" by excluding *Bivens* claims from the Act's grant of immunity. 1-ER-86 (quotation omitted). The district court likewise dismissed with prejudice Appellants' First and Fourth Amendment claims brought directly under those amendments because the Constitution itself does not provide a cause of action. 1-ER-87.

Finally, the district court rejected Appellants' argument that the FTCA and Westfall Act were unconstitutional as applied if none of their claims were cognizable under the FTCA, *Bivens*, the Westfall Act, the Constitution, or state tort law, explaining "there is no indication that Congress intended for every violation of a right to be compensated by money damages." 1-ER-88.

The court permitted Appellants leave to amend the following claims: trespass to chattels and interference with prospective economic relationships under the FTCA, and their Fourth Amendment claims for unreasonable seizures and searches

9

under *Bivens*. 1-ER-88–89.

**B. The District Court's June 29, 2023 Order Granting the United States and Individual Defendants' Motions to Dismiss in Part**

Appellants filed a second amended complaint, 6-ER-1249–1302, and the district court again dismissed in part. 1-ER-46. The district court held that Appellants "thin allegations" regarding their trespass claim were enough to survive a motion to dismiss and place their trespass to chattels claim as alleged beyond the FTCA's discretionary function exception. 1-ER-54. The court also allowed Appellants' interference with prospective economic relations claim to proceed but only with regard to actions by Lee, not the Postal Inspection Service employees. 1-ER-57–58. The court held that Appellants only adequately alleged that Lee knew Quiñonez and his business and that an economic relationship existed between them and a third party when Quiñonez mailed the packages. 1-ER-58. The district court dismissed with prejudice Appellants' *Bivens* claims alleging unreasonable seizures and searches in violation of the Fourth Amendment. 1-ER-61. The court again determined that Appellants' claims presented a new *Bivens* context (the search and seizure of packages Postal Service employees), and special factors counseled against extending *Bivens* to this context (the available grievance procedure and potential

10

systemwide consequences that such a decision would have on the Postal Service).[2] *Id.* The district court again allowed Appellants to file an amended complaint, this time for the limited purpose of "amend[ing] to substitute Lee for one of the Doe defendants." 1-ER-62.

### C. The District Court's August 30, 2023 Order Denying Appellants' Motion for Leave to Amend

Appellants filed a Third Amended Complaint effecting that change, 5-ER-925–990, and also sought leave to amend to add claims under California's Bane Civil Rights Act against Individual Defendants Agster, Chan, Fajardo, Hodges, and Lee, as well as the United States. 1-ER-45. The Bane Act creates a state-law cause of action against persons who "interfere[] by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States." Cal. Civil Code § 52.1(b). Appellants sought to allege unreasonable seizures and searches in violation of the Fourth Amendment and retaliation in violation of the First Amendment, 5-ER-1020–1027, again asserting that they could proceed directly against the Individual Defendants under the Westfall Act's exception for suits "brought for a violation of the Constitution of the United

---

[2] Because the district court dismissed the claims against Individual Defendants, the court did not address the United States' arguments that even if a *Bivens* remedy existed for the Postal Inspectors, the Individual Defendants were entitled to qualified immunity on Appellants' Fourth Amendment Claims.

States." 28 U.S.C. § 2679(b)(2)(A).

The district court denied leave to amend, concluding that an amendment would be futile. 1-ER-41–45. The court explained that this maneuver fared no better than Appellants' prior efforts to circumvent the Westfall Act and FTCA, noting the Supreme Court's explanation that the Westfall Act "is not the exclusive remedy for torts committed by government employees in the scope of their employment" when a plaintiff brings "a *Bivens* action." 1-ER-44 (quoting *United States v. Smith*, 499 U.S. 160, 167 (1991)).

### D. The District Court's November 8, 2024 Order Granting the Motion to Dismiss in Part and Denying Appellants' Motion for Partial Summary Judgment

After discovery, Appellants filed a Fourth Amended Complaint ("operative complaint") with their only two remaining claims: trespass to chattels and interference with prospective economic relations against the United States under the FTCA based on the alleged conduct of Lee, Hodges, Fajardo, Ruiz, and Aaron Doo, another Postal Inspector. 4-ER-815–834. The United States moved to dismiss the trespass to chattels claim to the extent that it was based on allegations of a "search" by means of squeezing or sniffing a parcel and the interference with prospective economic relations claim to the extent it was based on the alleged conduct by Postal Inspection contractors related to the detention of the parcels at issue. 4-ER-793–814. Appellants sought summary judgment on their trespass to chattels claim. 4-

12

ER-736–753.

The district court denied Appellants' motion for summary judgment and granted the United States' motion to dismiss in part. 1-ER-24–40. The court dismissed without leave to amend the trespass to chattels claim to the extent it was based on the "squeeze and sniff" theory of trespass liability.[3] 1-ER-30–34. The court did not dismiss the interference with prospective economic relations claim, finding Appellants plausibly alleged that Hodges and Doo knew of Appellants' business relationships when they allegedly interfered with Appellants' economic relations. 1-ER-36. The court held the FTCA's detention of goods exception did not bar this claim because the Postal Inspectors' conduct in issuing an investigatory report was independent of, and subsequent to, their detention of Appellants' packages. 1-ER-36–39.

### E. The District Court's March 25, 2025 Order Granting Summary Judgment for the United States on the Remaining Claims

The United States filed a motion for summary judgment on Appellants' trespass to chattels and interference with prospective economic relations, which the court granted in its entirety. 1-ER-9–23. For the trespass to chattels claim, the court found that there was no material dispute that Appellants' packages were detained by

---

[3] Because the district court dismissed this claim, the court did not address the United States' argument that even if the court found that squeezing or sniffing by Fajardo or Ruiz could be the basis of liability for the trespass to chattels claim, the independent contractor exception would bar any liability for these acts.

13

Postal Inspection Service officials for less than two days before being returned to the mail stream without being opened or searched. 1-ER-16–19.

As for the interference with prospective economic relations claim, the court concluded that Appellants failed to show either a reasonable probability of a future economic benefit stemming from their relationship with a third-party (M4BL) or actual disruption. 1-ER-19–22. The only evidence Appellants proffered was Quiñonez's self-serving declaration, and the court found this could not create a dispute of material fact because the declaration contained inadmissible hearsay, matters outside the declarant's knowledge, and contradicted his own sworn testimony. *Id.* The district court dismissed the action in its entirety and entered judgment on April 15, 2025. 1-ER -2.

This appeal followed.

## SUMMARY OF ARGUMENT

The district court correctly granted judgment to the United States on Appellants' tort claims for trespass to chattels and interference with prospective economic relations. As to trespass to chattels, Appellants do not dispute the district court's conclusion that the actions of Postal Inspection Service contractors in detaining the packages would be subject to the FTCA's detention of goods exception. *See* 28 U.S.C. § 2680(c). They instead argue for the first time that a postal clerk, Robin Lee, was the one who detained the packages, and that the

14

detention of goods exception would not apply to someone in Lee's position. That argument was never presented to the district court and is forfeited, and even if it were not, the FTCA's postal exception would apply to Lee's processing of the parcels at issue and bars those claims. 28 U.S.C. § 2680(b).

The district court also correctly rejected Appellants' trespass to chattels claim premised on an alleged unconstitutional search of their packages by Postal Inspection Service officials who "squeezed" and "sniffed" the packages without opening them. Even assuming—as the district court believed—that Appellants' claims could proceed under the FTCA despite the FTCA's discretionary function exception if they demonstrated a constitutional violation, the district court correctly recognized that neither sniffing nor squeezing a package handed over to the U.S. Postal Service for mailing constitutes a search under the Fourth Amendment, and Appellants cite no cases holding otherwise.[4]

The district court also correctly granted summary judgment to the United States on Appellants' interference with prospective economic relations claim. Appellants claimed that M4BL had plans to make Movement Ink its national screen-printing partner and place future orders that were dashed by the government's alleged conduct. But M4BL's representative testified that M4BL had no future plans

---

[4] Appellants have abandoned any argument that the district court erred in granting summary judgment on their trespass to chattels claim based on a search of their packages by physically opening them.

15

to place orders with Movement Ink, had no specific reason for doing so, had no concerns that working with Movement Ink could lead to scrutiny from law enforcement, and never had an agreement for Movement Ink to become the national and consistent screen-printing partner of M4BL. In response, the only evidence that Appellants submitted was a self-serving declaration. But the declaration was insufficient to create a disputed material fact for two reasons: it purported to contain the statements of others (inadmissible hearsay) and contained testimony regarding the thoughts and intentions of others (for which the declarant lacked personal knowledge). Without any evidence to support two necessary elements of the claim (the probability of future economic benefit to the plaintiff and actual disruption to the relationship), the district court correctly concluded that summary judgment was proper.

Finally, the district court correctly rejected Appellants' efforts to bring suit against federal employees in their individual capacities under *Bivens*, state-law tort, or a state-law statutory cause of action. As to the *Bivens* claims, Appellants do not contend that the Supreme Court has recognized a *Bivens* remedy in these circumstances or that they meet the standard the Supreme Court has articulated for expansion of a *Bivens* remedy. They instead argue that by preserving *Bivens* actions against federal employees in enacting the Westfall Act, Congress sought to ensure that a wide range of *Bivens* suits never before recognized by the Supreme Court

16

could proceed. That argument cannot be squared with the Supreme Court's *Bivens* precedent and has been squarely rejected. *See Buchanan v. Barr*, 71 F.4th 1003, 1008 (D.C. Cir. 2023). Similarly meritless are Appellants' arguments that the Westfall Act's exception for *Bivens* claims—which provides that the FTCA is not the exclusive remedy for suits "brought for a violation of the Constitution of the United States," 28 U.S.C. § 2679(b)(2)(A)—also sweeps in state-law tort claims or state-law claims in which the defendant's conduct is alleged to be unconstitutional. The Supreme Court and this Court have repeatedly recognized that the Westfall Act's exception is limited to *Bivens* claims and that no cause of action exists outside of *Bivens* to pursue damages claims against federal employees in their individual capacities. *E.g.*, *Hui v. Castaneda*, 559 U.S. 799, 809-10 (2010); *Smith*, 499 U.S. at 166-67; *Hernandez v. Mesa*, 589 U.S. 93, 111 n.9 (2020); *Saleh v. Bush*, 848 F.3d 880, 889 (9th Cir. 2017). Unlike *Bivens* claims, the claims Appellants brought here under state tort law and state statute are brought for violations of those state laws, not "brought for a violation of the Constitution of the United States." *See Pompy v. First Merchants Bank*, No. 24-1249, 2025 WL 2694801, at *10 (6th Cir. May 23, 2025); *Henry v. Essex County*, 113 F.4th 355, 364 (3d Cir. 2024).

For these reasons, this Court should affirm the district court.

## STANDARD OF REVIEW

A district court's grant of summary judgment is reviewed *de novo*. *Donell v.*

17

*Kowell*, 533 F.3d 762, 769 (9th Cir. 2008). A district court's dismissal of claims as a matter of law is reviewed *de novo*. *Garcia v. Serv. Emps. Int'l Union*, 993 F.3d 757, 762 (9th Cir. 2021). A district court's evidentiary rulings at summary judgment are reviewed for abuse of discretion. *Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017). This Court "may affirm the district court's holding on any ground raised below and fairly supported by the record." *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1030 (9th Cir. 2013) (citations omitted).

## ARGUMENT

### I.     The District Court Correctly Granted Judgment to the United States on Appellants' FTCA Claims.

#### A.     Appellants' Trespass to Chattels Claim Fails

The district court granted judgment to the United States on Appellants' trespass to chattels claim after concluding that the detention of goods exception to the FTCA bars claims based on the initial detention of the packages and that Appellants failed to state a claim for trespass to chattels based on assertions that Postal Inspection Service contractors squeezed and sniffed Appellants' unopened packages. Judgment was proper on those claims.

##### 1.     The Detention of Goods Exception to the FTCA Applies to the Initial Detention of Appellants' Packages, and Appellants' New Theory is Forfeited and Meritless

Appellants argue that the district court wrongly barred their FTCA trespass claim as to Lee. *See* Br. § II, at 26–27. But the district court properly applied to the

18

detention of goods exception to the officials that Appellants contend actually detained their packages: the Postal Inspection Service. Appellants now argue for the first time that the FTCA's detention of goods exception would not apply because the parcels were detained by Clerk Lee, not the Postal Inspection Service. Br. 27 (describing Lee as "the seizing official"). This fails for two reasons. First, the operative complaint contends that Postal Inspection Service personnel, not Clerk Lee, detained the parcels at issue. Second, Appellants never argued below that the district court incorrectly applied the detention of goods exception because Lee was not a law enforcement officer. That argument is now forfeited. And even if the Court considers this new argument on appeal (which it should not) and determines that the detention of goods exception does not cover Postal Clerk Lee, the separate postal exception plainly covers Lee's handling of the parcels prior to their delivery.

**a.** The operative complaint contends that Postal Inspection Service contractors made the decision to detain the parcels, and discovery confirmed this fact. 4-ER-821 ("Fajardo and Ruiz decided to detain Movement Ink's packages at USPIS."); *See* 4-ER-687; 12-ER-2920–24 (Parcel Detail Worksheets for the parcels at issue demonstrating that Postal Inspection Service contractors evaluated the parcels and made the decision to detain them). The district court correctly applied the detention of goods exception to this Postal Inspection Service conduct because Congress has barred "[a]ny claim arising in respect of the assessment or collection of any tax or

19

customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer[.]" 28 U.S.C. § 2680(c).

In *Ali v. Federal Bureau of Prisons*, the Supreme Court declined to limit the detention of goods exception to actions of law enforcement officers enforcing customs or excise laws, holding that "Section 2680(c) forecloses lawsuits against the United States for the unlawful detention of property by 'any,' not just 'some,' law enforcement officers." 552 U.S. 214, 228 (2008). This includes postal inspectors, as Appellants acknowledged. 6-ER-1351; *see also Ali*, 552 U.S. at 217 & n.1 (overruling *Bazuaye v. United States*, 83 F.3d 482 (D.C. Cir. 1996) which found postal inspectors were not covered by the exception).

Appellants now argue for the first time that the detention of goods exception does not apply because Lee, rather than Postal Inspection Service officials, detained their parcels and Lee is not an officer of customs or excise. Br. 26-27. Besides flatly contradicting their own complaint, this argument was not raised before the district court.

Appellants "concede[d] that their claims are partially foreclosed by the Supreme Court's interpretation of the exception in [*Ali*]" as it related to the detention of the parcels at issue, 6-ER-1351, and noted in a footnote that they "preserve for appellate reconsideration whether the detention of goods exception has been

20

erroneously extended beyond the tax or customs context." *Id.* at n.5 (citing *Ali*, 552 U.S. at 228–43 (Kennedy, J., dissenting), 243–47 (Breyer, J., dissenting)).[5] But Appellants never contended the exception was inapplicable to Clerk Lee because he is not an officer of customs or excise or because Lee actually seized the parcels. Appellants offer no reason this Court should consider this forfeited argument for the first time on appeal. *See One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1158 (9th Cir. 2009) ("A party normally may not press an argument on appeal that it failed to raise in the district court.").

**b.** Even if the Court considers this new argument (which it should not), Postal Clerk Lee's conduct processing the parcels would still be barred as Congress has precluded "any claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter." 28 U.S.C. § 2680(b).[6] The postal exception precludes claims "for injuries arising, directly or consequentially, because mail either fails to

---

[5] A similar footnote in later briefing observed that Appellants "skip the questions of seizure and detention because the Court held that the claims in Count 1 arising from those acts are barred by the detention of goods exception. Plaintiffs preserve for appeal the applicability of the detention of goods exception." 6-ER-1163 n.6. This footnote is not sufficient to preserve any argument that the exception does not apply to Lee.

[6] This argument is preserved for appeal, 7-ER-1409–11, and the United States may, as appellee, defend the district court's judgment on any ground supported by the record. *Mass. Mut. Life Ins. Co. v. Ludwig*, 426 U.S. 479, 480–81 (1976) (per curiam).

arrive at all or arrives late, in damaged condition, or at the wrong address." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 489 (2006) (emphasis added).

In *Dolan*, the Supreme Court clarified that the postal exception applied to injuries stemming from the *late delivery of mail* and the related personal and financial harms – the precise issue underpinning Appellants' claims here. *Dolan*, 546 U.S. at 489. The purpose of the exception, the *Dolan* Court reasoned, was to separate the acts the FTCA was intended to cover, such as postal truck accidents or slip-and-fall accidents involving packages, from actions directly related to the processing and delivery of mail. *See id.* at 485-89. As the Court observed, claims shielded by the exception include "personal or financial harms arising from nondelivery or late delivery of sensitive materials or information (e.g., medicines or a mortgage foreclosure notice) or from negligent handling of a mailed parcel (e.g., shattering of shipped china)" because such harms are "the sort primarily identified with the Postal Service's function of transporting mail throughout the United States." *Id.* at 489.

Appellants' alleged injuries (trespass to chattels and interference with prospective economic relations) directly stem from the late delivery of their packages such that no matter how Clerk Lee's conduct is framed, their claim is barred. The postal exception applies if Clerk Lee's conduct: caused parcels to be delivered late, *Sportique Fashions, Inc. v. Sullivan*, 597 F.2d 664, 665 (9th Cir.

22

1979) (untimely and undelivered mail claims barred by postal exception), resulted in their packages' detention and law enforcement investigation, *Johnson v. United States*, 529 F. App'x 474, 476–77 (6th Cir. 2013) ("delivery of the mail includes an array of governmental powers such as . . . the authority to make searches and seizures in the enforcement of laws protecting the mails" and "the fact that Johnson's alleged claim arises out of the performance of the USPS's authority to perform a search and seizure of the mail falls squarely within the exception of § 2680(b)."); *Marine Insurance Co. v. United States*, 378 F.2d 812, 813–15 (2d Cir. 1967) (postal exception applied to parcel removed from mail stream by postal and customs inspectors), and was intentional. *United States Postal Serv. v. Konan*, No. 24-351, 2026 WL 501765, at *2 (U.S. Feb. 24, 2026) (holding the "exception applies when postal workers intentionally fail to deliver the mail"). The Supreme Court in *Konan* clarified that the "loss" of mail under the postal exception is not limited to the destruction of mail but also includes "any deprivation" and does not have to be permanent. *Id.* at *7. The Court interpreted "miscarriage" as not being limited to when mail goes to the wrong address, but covering instances where mail is delayed, arrives too late, or is left in the post office. *Id.* at *5-6.

Here, the alleged conduct is covered by the postal exception's terms "loss" and "miscarriage." The intended recipients suffered a loss by being temporarily deprived of the packages even though they later received them. Further, the

23

packages' detention and delay fall under "miscarriage" as the packages subsequently arrived late. *See* ER-826 ("The four political mask shipments would not end up arriving at their destinations until June 6—two days and several protests late, only because they were baselessly diverted, searched, and detained by the government.") Just as in *Konan*, Appellants' FTCA claims stemming from the intentional non-delivery of their mail in a timely manner (i.e., the decision to detain and remove their packages temporarily from the mail stream) are shielded by the postal exception.

In sum, Appellants have forfeited any argument that the detention of goods exception does not cover Lee's conduct based on his status as a postal clerk. But even if the Court considers this new argument, the postal exception applies and bars these claims.

### 2. Appellants Fail to State a Trespass Claim Based on a "Search" of Their Packages

Appellants argue that the district court erred in rejecting their trespass to chattels claim by concluding that "officer Ruiz's information-gathering squeeze-and-sniff of Appellants' property was not a search." Br. at 41. Appellants have abandoned their argument that the package was opened and rely entirely on the "squeeze-and-sniff" theory of liability. The district court correctly rejected this novel theory.

Under the discretionary function exception, the United States has not waived sovereign immunity for "[a]ny claim . . . based upon the exercise or performance or

24

the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). A two-step test determines whether the exception applies. *Nieves Martinez v. United States*, 997 F.3d 867, 876 (9th Cir. 2021). First, the court must ask "whether the challenged actions involve an element of judgment or choice." *Id.* (citations and quotation marks omitted). If a federal statute, regulation, or policy "specifically prescribes a course of action for an employee to follow, the act is not discretionary because the employee has no rightful option but to adhere to the directive." *Id.* (same). If the court determines that the challenged actions involve an element of judgment or choice, it then must determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* (same). "[I]f the judgment involves considerations of social, economic, or political policy, the exception applies." *Id.* (citation omitted). The conduct at issue here satisfies both prongs.

First, conduct is non-discretionary only when "a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow." *United States v. Gaubert*, 499 U.S. 315, 322 (1991). As part of their authority to conduct postal inspections and investigations, it is undisputed that postal inspectors are authorized to serve warrants, make arrests, carry firearms, and make seizures of property as provided by law. 18 U.S.C. § 3061; 39 C.F.R. § 233.1(a). This authority

25

contains no requirement that postal inspections be conducted in a specific manner. And no regulation mandates the use of any specific techniques or course of action in postal inspections.

The second prong of the *Nieves Martinez* test also supported dismissal because the decision on how to investigate is the type of discretionary functions the exception was designed to shield. *Gray v. Bell*, 712 F.2d 490, 514 (D.C. Cir. 1983); *see also Dupris v. McDonald*, 554 F. App'x 570, 573 (9th Cir. 2014) ("We have further noted that investigations by federal officers include the type of policy judgments protected by the discretionary function test."). The fact that Appellants challenge a particular investigative action (here, sniffing or squeezing) does not take them outside the bounds of the discretionary function exception—indeed, even inadvisable investigative conduct (though not the case here) is covered by the exemption. *See Sabow v. United States*, 93 F.3d 1445, 1453–1454 (9th Cir. 1996) (civil action barred by discretionary function exception because "[a]lthough some of the actions and inactions alleged by the [plaintiffs] . . . represent alarming instances of poor judgment and a general disregard for sound investigative procedure, the investigative agents took discretionary action involving considerations of social and political policy.").

Appellants assert that the discretionary function exception does not apply because the discretionary-function exception does not "appl[y] to unconstitutional

26

conduct," Br. 27, and that the actions of the Postal Inspection Service contractors in squeezing and sniffing the packages amounted to an unconstitutional search, Br. 41-46. The district court stated that an unconstitutional search would not be shielded by the discretionary function exception, but concluded that no Fourth Amendment violation occurred. 1-ER-31.

At the outset, the district court's starting premise—that the availability of the discretionary function exception turns on whether "whether [Appellants] plausibly alleged a search that exceeds the bounds of the Constitution," 1-ER-53—was mistaken. Though a constitutional provision can preclude application of the discretionary function exception if it "specifically prescribes a course of action for an employee to follow," *Gaubert*, 499 U.S. at 322, not every alleged constitutional violation can be said to meet that standard. *See, e.g.*, *Nurse v. United States*, 226 F.3d 996, 1002 n.2 (9th Cir. 2000) (leaving open "the level of specificity with which a constitutional proscription must be articulated in order to remove the discretion of a federal actor"); *Xue Lu v. Powell*, 621 F.3d 944, 950 (9th Cir. 2010) (applying exception in absence of "any specific duty under the Fifth Amendment . . . to support a claim of unconstitutional policymaking"). The district court here did not explain what aspect of the Constitution or the Fourth Amendment's prohibition on "unreasonable searches" "specifically prescribe[d] a course of action" that federal employees were required to follow. *Gaubert*, 499 U.S. at 322. But the Court need

27

not address that issue here because even assuming the discretionary function exception would not apply to a Fourth Amendment violation, the district court correctly held that no violation occurred here because there was no "search" of the packages.[7]

This Court has repeatedly explained that sniffing does not constitute a search, whether conducted by "drug agents with inquisitive nostrils," *United States v. Johnston*, 497 F.2d 397, 398 (9th Cir. 1974), or through "the postal inspector's use of a well-trained narcotics-detection dog" on a mailed package, *United States v. Jefferson*, 566 F.3d 928, 933 (9th Cir. 2009) (quotation omitted); *see United States v. Quoc Viet Hoang*, 486 F.3d 1156, 1160 (9th Cir. 2007) (similar).

Nor does the squeezing of a package qualify as a search. As a general matter, someone who mails a package has "no reasonable expectation that postal service employees will not handle the package or that they will not view its exterior." *United States v. Hernandez*, 313 F.3d 1206, 1209-10 (9th Cir. 2002). Indeed, Appellants have cited no case—and we are not aware of one—in which a court has held that a Fourth Amendment search occurs when a mailed package is handled and inspected

---

[7] To the extent the district court relied on out-of-circuit precedent taking the view that the discretionary function exception is categorically inapplicable to claims of constitutional violations, *see* 1-ER-53 (citing *Xi v. Haugen*, 68 F.4th 824, 839 (3d Cir. 2023)), that precedent is mistaken, *see Shivers v. United States*, 1 F.4th 924, 929-35 (11th Cir. 2021); *Linder v. United States*, 937 F.3d 1087, 1090-91 (7th Cir. 2019).

without being opened. Instead, as the only other court to have addressed the issue explained, "[a]n expectation that the flexible outer packaging of an item handed over to postal employees will not be squeezed, even deliberately, when handled by them is simply not one that society is prepared to recognize as reasonable." *United States v. Taylor*, No. 14-cr-00065, 2015 WL 856840, at \*5 (S.D. W. Va. Feb. 27, 2015). And more generally, as the district court observed, "[i]n order to safely and securely deliver the mail, it is eminently reasonable for postal inspectors to handle and smell packages, and it would be wholly inappropriate to open a new theory of liability based on a practice that has obvious utility in protecting the public and government employees." 1-ER-34.

Appellants offer no serious argument that squeezing the packages violated a reasonable expectation of privacy. They briefly cite this Court's decision in *Hernandez v. United States*, 353 F.2d 624 (9th Cir. 1965), in which an officer was said to have conducted a search by squeezing checked luggage at an airport. *Id.* at 626. But as the district court explained, *Hernandez* involved personal luggage, which has been treated as subject to a greater expectation of privacy. As this Court has long recognized, "[a] person who deposits an item in the United States mail retains far less of an interest in the mailed item than does a person which checks his luggage for transport with a common carrier." *United States v. England*, 971 F.2d 419, 420 (9th Cir. 1992).

29

Appellants instead rest almost entirely (Br. 44-46) on the argument that squeezing constituted a "physical intrusion" and was thus a search under *United States v. Jones*, 565 U.S. 400 (2012), and related cases. In *Jones*, the Supreme Court held that a search occurred when police attached a GPS tracking device to a vehicle and used it to monitor the vehicle's movements for 28 days, *id.* at 403, and in *Florida v. Jardines*, 569 U.S. 1 (2013), the Court held that using a drug-sniffing dog on a homeowner's porch to investigate the contents of the home is a "search within the meaning of the Fourth Amendment," *id.* at 12. As the district court correctly recognized, the impermissible conduct in both *Jones* and *Jardines* was the physical intrusion into, or encroachment upon, private property. Here, by contrast, "squeezing and sniffing mail that plaintiffs have voluntarily placed in the stream of commerce beyond their possession" looks nothing like that sort of physical intrusion into constitutionally-protected areas like the home or a car. 1-ER-32. The other cases Appellants cite applying the *Jones* standard only underscore this distinction, as all simply illustrate the principle that physical intrusions on a car (such as inserting a key into a lock or opening the car door and leaning inside) qualify as searches. Br. 45.

## B. The District Court Correctly Granted Summary Judgment to the United States on the Interference with Prospective Economic Relations Claim

Appellants challenge the district court's summary judgment order on the

interference with prospective economic relations claim. *See* Br. at 47. But the district court correctly granted summary judgment because Appellants failed to produce any admissible evidence for two of the elements of this tort: the probability of future economic benefit to the plaintiff and actual disruption to that relationship.

### 1. The Tort Exception Bars Appellants' Claims for Interference with Prospective Economic Relations.[8]

As an initial matter, this Court does not even need to address whether the district court correctly granted summary judgment on Appellants' interference with prospective economic relations claim because the claim is barred under the FTCA's intentional tort exception. The FTCA precludes certain intentional torts, including claims "arising out of interference with contract rights." 28 U.S.C. § 2680(h).

Appellants conceded that the intentional tort exception likely encompassed their interference with contractual relations claim and do not challenge the court's dismissal of that claim on appeal. 1-ER-75, 7-ER-1352. The district court equivocated on whether the intentional tort exception barred Appellants' interference with prospective economic relations claim and ultimately allowed Appellants to amend that claim. 1-ER-76–78.

But courts have routinely found that claims for interference with prospective

---

[8] This argument is preserved for appeal. 7-ER-1326–27.

economic relations are barred by the intentional tort exception because "[t]he tort of interference with prospective or potential advantage is simply an extension of tort liability for interference with existing contractual relations[.]" *Dupree v. United States*, 264 F.2d 140, 143 (3d Cir. 1959); *see Cooper v. American Automobile Insurance Co.*, 978 F.2d 602, 613 (10th Cir. 1992) ("[C]laims against the government [that] could be construed as claims of tortious interference with present or future contractual relations [are] barred by 28 U.S.C. § 2680(h)"); *Chen v. United States*, 854 F.2d 622, 628 n.2 (2d Cir. 1988) (noting that "nearly every court that has addressed th[e] issue has held . . . [that] actions for tortious interference with business (i.e., prospective) advantage are barred as claims arising out of interference with contract rights" under 28 U.S.C. § 2680(h)) (citations and quotations omitted); *Moessmer v. United States*, 760 F.2d 236, 237 (8th Cir. 1985) ("Allowing an action for interference with a prospective contract but not for interference with an existing contract achieves an anomalous result. We hold that Moessmer's claim for interference with prospective economic advantage is the equivalent of a claim for interference with contract rights, and thus falls within the section 2680(h) exemption."); *Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1155 (D.C. Cir. 1985) ("We therefore hold, as has nearly every court that has addressed this issue, that Art Metal's claims for interference with prospective advantage are

32

barred as claims arising out of interference with contract rights.").

The same intentional acts underpin Appellants' claims for interference with contractual relations and interference with prospective economic relations. This Court should dismiss Appellants' interference with prospective economic relations claims under the intentional tort exception because it would be illogical to hold the United States liable for interfering with the mere expectancy of entering a contract, but not liable for interfering with an existing contract.

### 2. No Admissible Evidence Demonstrated the Probability of Future Economic Benefit to Plaintiff-Appellees from M4BL

Even if not barred, Appellants' interference with prospective economic relations still fails because they did not establish: "an economic relationship between the plaintiff and some third party, *with the probability of future economic benefit to the plaintiff*." *CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007) (citation omitted) (emphasis added). "Overall, courts have narrowly construed this element, requiring specific facts to show that a benefit was almost certain." *Republican Nat'l Comm. v. Google LLC*, 742 F. Supp. 3d 1099, 1122 (E.D. Cal. 2024), aff'd sub nom. *Republican Nat'l Comm. v. Google Inc.*, No. 24-5358, 2026 WL 125195 (9th Cir. Jan. 16, 2026). "The fact that a plaintiff has a preexisting business relationship with a party is not sufficient; the plaintiff must provide details about the impending contract or other economic benefit." *Id.* "Allegations that amount to a mere hope for an economic relationship and a desire

for future benefit are inadequate to satisfy the pleading requirements of the first element of the tort." *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, No. C 03-05340 JF, 2005 WL 832398, at *8 (N.D. Cal. Mar. 30, 2005) (quoting *Blank v. Kirwan*, 39 Cal. 3d 311, 331 (1985)).

Here, M4BL's testimony was unequivocal: even before the allegedly tortious conduct, M4BL had no future plans to place orders with Movement Ink. 11-ER-2602. M4BL did not have any specific reason for this, and confirmed that no one at M4BL had expressed any concern in June 2020, that working with Movement Ink could lead to scrutiny from law enforcement. 11-ER-2605. M4BL also confirmed that it never had an agreement for Movement Ink to become the national and consistent screen-printing partner of M4BL in 2020. 11-ER-2603. And M4BL confirmed that Steez, who Quiñonez believed could potentially bestow upon Movement Ink an oral agreement worth tens of thousands of dollars, had no authority to do so. 11-ER-2603, 2596–97. This alleged benefit was not "almost certain[.]" *Republican Nat'l Comm.*, 742 F. Supp. 3d at 1122. Indeed, there is no evidence that the future benefit Quiñonez claims existed at all. While Quiñonez hoped that the four orders placed by M4BL might lead to more work in the future, 3-ER-600, mere unilateral hope is not enough. *Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 527 (1996) ("Without an existing relationship with an identifiable buyer, [plaintiff's] expectation of a future sale was

34

at most a hope for an economic relationship and a desire for future benefit" that was not actionable) (citations and quotations omitted).

### 3. Plaintiff-Appellants Cannot Show Actual Disruption to a Relationship with M4BL

Appellants must also show "actual disruption of the relationship" in order to prove this claim. *CRST*, 479 F.3d at 1107-08. Disruption means that, for example, "it lost a contract []or that a negotiation with a [c]ustomer failed." *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008). Appellants failed on this element too: before the allegedly tortious conduct occurred, M4BL had no plans to place future orders with Movement Ink LLC. 11-ER-2602. There was accordingly nothing to disrupt.

The only evidence cited by Appellants to establish that their relationship with M4BL was actually disrupted is the self-serving declaration of Quiñonez. 3-ER-539 (testifying to Steez's expectations and statements). But Quiñonez cannot testify to the statements or beliefs of third persons for two reasons. *First*, such information is not within his personal knowledge. *See* Fed. R. Evid. 602; *see also Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412 (9th Cir. 1995) (declarant on summary judgment cannot testify to matters outside their personal knowledge); *Boyd v. City of Oakland*, 458 F. Supp. 2d 1015, 1025 (N.D. Cal. 2006) (declarant's testimony regarding what others allegedly knew was not within declarant's personal knowledge and thus inadmissible). Here, Quiñonez attempted to testify via declaration as to M4BL's

35

"expectation" about receiving "more national M4BL work for Movement Ink." 3-ER-542. But Quiñonez cannot testify to M4BL's knowledge or intentions. He can only testify as to his own hope that future orders were coming, which he did. 3-ER-600.[9]

*Second*, testimony regarding the statements of others is textbook inadmissible hearsay: out of court statements offered for the truth of the matter asserted, *see* Fed. R. Evid. 801(c), that would not become admissible even if Quiñonez testified in court as to these statements by other people. *See Jacobsen v. Filler*, 790 F.2d 1362, 1367 (9th Cir. 1986) (testimony about "what his attorneys told him" was inadmissible hearsay); *Persian Gulf Inc. v. BP W. Coast Prods. LLC*, 632 F. Supp. 3d 1108, 1130 (S.D. Cal. 2022) ("The Court does sustain Plaintiff-Appellants' hearsay objections where the evidence takes the form of out-of-court statements offered for their truth and no hearsay exception appears to apply.").

Appellants have never contended that any hearsay exception applies; they only argue that the statements are not hearsay at all because they could conceivably call these witnesses at trial and hope that their testimony is the same as what Quiñonez declared it would be. Br. at 52. But the district court correctly declined

---

[9] Appellants' reliance on *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990) (Br. at 51) does not help them here. In that case, this Court observed that personal knowledge may be inferred from the declarant's position and the nature of their role. *Id.* at 1018. *Barthelemy* contains no holding that a declarant may testify to the knowledge or intentions of other people.

to consider the statements of others in the declaration that was actually before it because they were inadmissible hearsay. *See, e.g.*, *Boyd*, 458 F. Supp. 2d at 1025 ("Paragraphs three and four [of the declaration] are based not on the personal knowledge of Ms. Boyd, but on the hearsay statements of the four alleged witnesses. Ms. Boyd is not competent to testify as to this evidence. There is no basis for a hearsay exception here, so these statements are not admissible."); *Thomas v. Kuo*, No. 116CV00524DADEPGPC, 2019 WL 2369898, at *10 (E.D. Cal. June 5, 2019), report and recommendation adopted, No. 116CV00524DADEPG, 2019 WL 3003955 (E.D. Cal. July 10, 2019) (where declaration was based on statements of others and offered these statements for the truth of the matter asserted, such declarations were "inadmissible hearsay and the Court decline[d] to consider this hearsay on summary judgment."); *Chao v. Westside Drywall, Inc.*, 709 F. Supp. 2d 1037, 1048 (D. Or. 2010), as amended (May 13, 2010) ("The last two sentences of Paragraph 4 and the first sentence of Paragraph 12 of Clark's amended declaration relate statements made to her by third persons, thus they are hearsay and subject to exclusion unless an exception to the hearsay rule applies.").

In response, Appellants argue that they need not "depose [their] own witnesses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (cited Br. at 52). But "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings

37

themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred." *Id.* Thus, while Appellants were not required to depose Karissa Lewis and Steez, statements purporting to be from those witnesses had to take some non-hearsay form in order to be admissible, such as by their "own affidavits," not Appellant's *Id.*

The Supreme Court in *Celotex* did not provide carte blanche for parties to attach self-serving declarations containing the statements of others. The observation that a party did not need to depose its own witness simply reflected the fact that a party could easily get a declaration from their own witness (like Quiñonez did for himself). But Appellants presented no such declaration. They instead relied on a declaration containing hearsay, arguing that "the other participants in the discussions he recounted" would simply "provide[] testimony at trial." Br. at 52. That is not admissible evidence and the district court correctly granted summary judgment as a result.

Once the improper hearsay statements in Quiñonez's declaration were stripped away, all that was left was (1) Quiñonez's own testimony that he saw the M4BL orders as a "trial run" and hoped more orders were coming and (2) M4BL's unequivocal testimony that it did not plan to place any future orders. There was no admissible testimony presented that Quiñonez and M4BL would have any relationship going forward after the orders at issue in this case were fulfilled and

38

paid for. Accordingly, there was nothing to disrupt. The district court properly granted summary judgment on Appellants' interference of prospective economic relations claim.[10]

## II. The District Court Correctly Rejected Appellants' Claims Against the Individual Defendants.

Although the FTCA is generally the "exclusive mode of recovery for the tort of a Government employee," *United States v. Smith*, 499 U.S. 160, 166 (1991), Appellants here have advanced a variety of theories seeking to hold individual federal employees and contractors liable for asserted constitutional violations. In particular, plaintiffs urge that Congress, through the Westfall Act, has authorized both a wide range of *Bivens* actions never before recognized by the Supreme Court and a variety of state-law claims premised on alleged constitutional violations. Br. 28-40. The district court correctly rejected these theories, which are inconsistent with the text of the Westfall Act and the Supreme Court's precedents and have never been accepted by any court.

A brief synopsis of the relationship between the FTCA, the Westfall Act, and

---

[10] Appellants finally assert that M4BL "became vocally concerned about the federal government's seizure of their protest apparel." Br. at 53. This assertion omits M4BL's testimony that no one at M4BL expressed a concern in June 2020 (after the alleged interference) that working with Movement Ink could lead to scrutiny from law enforcement. 11-ER-2605. When asked whether there was a reason that M4BL opted not to place any further orders with Movement Ink, M4BL testified that there was none. 11-ER-2603.

39

*Bivens* actions helps to explain why. Congress has waived sovereign immunity for specified torts allegedly committed by federal employees through the FTCA. *See* 28 U.S.C. § 1346(b)(1), 2672. In 1988, in response to the Supreme Court's decision in *Westfall v. Erwin*, 484 U.S. 292 (1988), which allowed a state tort suit to proceed against a federal employee in his individual capacity for conduct within the scope of his federal employment, Congress enacted the Westfall Act. *See De Martinez v. Lamagno*, 515 U.S. 417, 425-26 (1995). The Westfall Act granted immunity to federal employees for state-law tort claims based on conduct within the scope of their employment, providing that the United States would be substituted as the defendant in any such action, and that a suit under the FTCA "is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim." 28 U.S.C. § 2679(b)(1).

On its own, the sweeping language of the Westfall Act would be sufficient to cut off even *Bivens* claims against federal employees. Thus, although Congress "intended to substitute the United States as the solely permissible defendant in all common law tort actions against Federal employees who acted in the scope of employment," Congress also sought to ensure "that the exclusive remedy expressly does not extend to so-called constitutional torts" under *Bivens*. H.R. Rep. 100-700, at 6 (1988). The Westfall Act thus provides that the FTCA remedy is not

exclusive (and that substitution does not occur) for "a civil action . . . brought for a violation of the Constitution of the United States." 28 U.S.C. § 2679(b)(2)(A). Accordingly, the Supreme Court and this Court have repeatedly recognized the Westfall Act's "*Bivens* exception" as allowing *Bivens* claims against federal employees to proceed where the Supreme Court has recognized such causes of action. *Hui*, 559 U.S. at 809-10; *accord Smith*, 499 U.S. at 166-67 (describing exception for "a *Bivens* action"); *Hernandez*, 589 U.S. at 111 n.9 (explaining that Westfall Act "was not attempting to abrogate *Bivens*" and "simply left *Bivens* where it found it"); *Saleh*, 848 F.3d at 889 (noting Westfall Act "preserves claims against federal officers under *Bivens*").

Over the past few decades, the Supreme Court has "consistently refused to extend" *Bivens* actions beyond the three specific contexts in which it has previously endorsed a constitutional tort action, and has emphasized that any further extension would be "a disfavored judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (quotations omitted); *see Egbert*, 596 U.S. at 490-91. The Supreme Court has also repeatedly stressed that Congress is "in a better position to decide whether or not the public interest would be served by imposing a damages action" than the courts. *Egbert*, 596 U.S. at 499 (quotation omitted).

As this Court has observed, the debate over the availability and scope of *Bivens*-type actions for damages reflects the fact that Congress "has not created a

41

general cause of action to redress violations of the Constitution by *federal* officers." *Pettibone v. Russell*, 59 F.4th 449, 454 (9th Cir. 2023). Appellants here, however, seek to convert the Westfall Act's exception for *Bivens* claims into a general-purpose constitutional damages statute authorizing a vast range of suits against federal employees in their individual capacities for alleged constitutional violations. *See* Br. 28-29, 36, 40. Appellants offer two theories, neither of which succeeds.

For one, Appellants contend that the Westfall Act's *Bivens* exception embraces not only the three specific circumstances in which the Supreme Court has recognized a *Bivens* remedy, but also allows essentially all constitutional tort actions premised on the Fourth Amendment, as well as a vast swathe of actions premised on the First Amendment. Br. 36, 39. In advancing this argument, Appellants do not contend that their claims fall within a *Bivens* action recognized by the Supreme Court or satisfy the two-part inquiry the Supreme Court has prescribed before extending *Bivens* and implying a damages remedy. *See Abassi*, 582 U.S. at 136 (to recognize a new *Bivens* cause of action, courts first ask whether the case presents a new context; and if so, whether special factors counsel hesitation against extending *Bivens*). Appellants instead contend that the Westfall Act's *Bivens* exception codified "the heady days in which" the federal courts "assumed common-law powers to create causes of action," *Egbert*, 596 U.S. at 491, by silently embracing decisions

42

from the courts of appeals extending *Bivens* to contexts never endorsed by the Supreme Court. Br. 36, 39.

Yet the Supreme Court has made quite clear that the Westfall Act "is not a license to create a new *Bivens* remedy in a context [the Supreme Court] ha[s] never before addressed," and does not demonstrate "that Congress intended for a robust enforcement of *Bivens* remedies." *Hernandez*, 589 U.S. at 111 n.9 (quotation omitted). And more generally, the Supreme Court has repeatedly emphasized that no extension of *Bivens* beyond the three circumstances in which it has recognized a damages remedy may occur "unless [the plaintiff] also satisfies the analytic framework prescribed by the last four decades of intervening case law," and that decisions "predat[ing] our current approach to implied causes of action and diverg[ing] from the prevailing framework" are not a basis to extend *Bivens* to new contexts. *Egbert*, 596 U.S. at 500-01. Indeed, Appellants' apparent theory is that the Westfall Act would permit *Bivens* suits even in circumstances where the Supreme Court has recently expressly declined to extend *Bivens*. *See Hernandez*, 589 U.S. at 96 (declining to extend *Bivens* to Fourth Amendment excessive force claim); *Egbert*, 596 U.S. at 486, 498 (declining to extend *Bivens* to First Amendment retaliation and Fourth Amendment excessive force claims). As the D.C. Circuit recognized in rejecting an identical argument, the Supreme Court's "admonition against expanding the range of the *Bivens* remedy, as recognized by Supreme Court

43

precedent at the time," is equally applicable here, and the Westfall Act's *Bivens* exception does not drastically expand the reach of that remedy. *Buchanan v. Barr*, 71 F.4th 1003, 1008 (D.C. Cir. 2023).

Alternatively, plaintiffs contend that the Westfall Act's *Bivens* exception encompasses not only *Bivens* actions, but also any state-law cause of action through which a plaintiff might seek damages for an alleged constitutional violation by a federal employee. Br. 28-35. In other words, in Appellants' view, the last several decades of litigation over whether or not to extend *Bivens* remedies to new contexts and the debate over whether Congress should enact a statutory cause of action was pointless, because the Westfall Act has always permitted damages actions against federal employees based on a "state statutory cause of action for constitutional violations" or "state common-law torts brought for the purpose of remedying the violation of Plaintiffs' constitutional rights." Br. 29.

Unsurprisingly, courts have uniformly rejected that argument. As noted, the entire purpose of the Westfall Act was to immunize federal employees from individual liability for state-law torts they commit when acting within the scope of their federal employment. Congress accomplished this purpose by making "the FTCA the exclusive remedy for most claims against Government employees arising out of their official conduct." *Hernandez*, 589 U.S. at 111 (quotation omitted). Although Congress provided an express exception to that exclusivity for

44

a civil action "brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized," 28 U.S.C. § 2679(b)(2)(B), it notably did not include any such exception for civil actions brought under *state* statutes authorizing suits against federal officers acting within the scope of their employment. Instead, the lone additional exception Congress provided was for *Bivens* claims, as those suits are "brought for a violation of the Constitution of the United States." 28 U.S.C. § 2679(b)(2)(A). After all, a *Bivens* cause of action is one "based on the Constitution itself," as no federal cause of action "authorize[s] such a claim." *Hernandez*, 589 U.S. at 99; *see Abbasi*, 582 U.S. at 135 (explaining that a *Bivens* suit is "an implied cause of action under the Constitution itself").

Suits under state tort law or state statutes, by contrast, are not "brought for a violation of the Constitution of the United States" under the Westfall Act. 28 U.S.C. § 2679(b)(2)(A). They are brought for violations of state tort or statutory law, not directly "under the Constitution itself." *Abbasi*, 582 U.S. at 135. That distinction is clear here. Appellants' tort claims for trespass to chattels and interference with prospective economic relations seek damages for those violations of California law. *See, e.g.*, *Pompy*, 2025 WL 2694801, at *10 (Sixth Circuit rejecting argument that trespass claim fell within Westfall Act exception where federal employee allegedly "trespassed in violation of state law . . . and that the

45

trespass constituted a warrantless search and seizure in violation of the Fourth Amendment"). And a claim for violation of the Bane Act is likewise simply a claim for violation of the state statute, not for "a violation of the Constitution." That point is underscored by the Bane Act's incorporation of laws beyond the U.S. Constitution, encompassing all federal law, the California constitution, and all California law; the Bane Act's extension to various behaviors not necessarily unconstitutional in themselves; and the Bane Act's authorization of suit by the state Attorney General and any district or city attorney in the state, including its imposition of civil penalties in such actions. Cal. Civil Code § 52.1(b). There is no textual basis in the Bane Act for limiting the California-law actions the statute permits to those triggered by violations of the U.S. Constitution—nor for altering the penalties available—if a federal official is the defendant. *See Henry v. Essex County*, 113 F.4th 355, 364 (3d Cir. 2024) (rejecting claim under New Jersey state statute analogous to the Bane Act, N.J. Stat. § 10:6-2(c), and explaining that such a suit does not "fit[]" the Westfall Act's exception "for *Bivens* actions").

That fundamental distinction explains why, as noted, the Supreme Court and this Court have repeatedly recognized that the Westfall Act exception exists to preserve "a *Bivens* action." *Smith*, 499 U.S. at 166-67; *accord Hui*, 559 U.S. at 809-10; *Hernandez*, 589 U.S. at 111 n.9; *Saleh*, 848 F.3d at 889. Any other interpretation would not only disregard Congress's considered choice to enact an

46

exclusive federal scheme to resolve claims arising from federal officials' discharge of their official duties, but would also disregard the Supreme Court's admonition that "Congress is best positioned to evaluate whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government," *Hernandez*, 589 U.S. at 101 (quotation omitted), by supplanting Congress's judgment with the individualized determinations of each of the fifty States about what suits to authorize and under what circumstances. *See* Br. 29 (emphasizing that States would have discretion to create "a new cause of action allowing plaintiffs to directly allege federal constitutional violations against federal officials" (quotation omitted)). Moreover, that interpretation would raise other serious constitutional questions, such as issues of obstacle preemption, given Congress's extensive regulation of federal employees' official conduct and the consequences thereof through the Westfall Act, the Civil Service Reform Act, 5 U.S.C. § 1101 *et seq.*, statutes creating Inspectors General, *see id.* § 401 *et seq.*, and statutes authorizing compensation where FTCA damages are unavailable, *see, e.g.*, 31 U.S.C. § 3724. And actions that seek to regulate chiefly governmental conduct, rather than apply general common-law tort principles, would likely run afoul of the principle that states may not regulate federal activities absent explicit congressional consent. *See, e.g.*, *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 180 (1988).

47

It is thus no surprise that Appellants' arguments have been rejected by every court ever to consider them.[11] Even the author of the concurring opinion on which Appellants rely acknowledged that he was "not certain" the argument was correct and that "the Westfall Act's constitutional-tort exception has been read more narrowly" to encompass only *Bivens* actions. *Buchanan*, 71 F.4th at 1016 (Walker, J., concurring).

Finally, there is no merit to Appellants' last-ditch argument that if they are foreclosed by the FTCA and Westfall Act from obtaining money damages for the specific claims they have alleged, the Westfall Act is unconstitutional as applied. Br. 21-26. Appellants' argument appears to simply rehash the now-rejected logic of *Bivens* itself. As the Supreme Court recently explained, the Court's early *Bivens* cases indicated that extension of a damages remedy for a constitutional violation was appropriate "if there is 'no effective means other than the judiciary to vindicate'" a given right, but the Court has since "explained that the absence of relief 'does not by any means necessarily imply that courts should award money damages.'" *Egbert*, 596 U.S. at 501 (first quoting *Davis v. Passman*, 442 U.S. 228, 243 (1979), and then quoting *Schweiker v. Chilicky*, 487 U.S. 412, 422

---

[11] *See, e.g.*, *Pompy*, 2025 WL 2694801, at *10; *Henry*, 113 F.4th at 364; *Pearsons v. United States*, 723 F. Supp. 3d 825, 833 (C.D. Cal. 2024); *Mellein v. United States*, No. 23-cv-7970, 2024 WL 1601802, at *5 (C.D. Cal. Mar. 14, 2024); *Black Lives Matter D.C. v. Barr*, No. 20-CV-1469 (DLF), 2024 WL 3300158, at *4-9 (D.D.C. July 4, 2024).

(1988)); *see DeVillier v. Texas*, 601 U.S. 285, 291 (2024) ("Constitutional rights do not typically come with a built-in cause of action to allow for private enforcement in courts."). Here, too, Appellants have pointed to no case remotely suggesting that such damages remedies are constitutionally required, as they would have this Court hold. And this case would hardly be an appropriate one in which to discover such a principle. Money damages for conduct by federal officials are, of course, available under the FTCA.[12] As discussed above, the district court rejected Appellants' trespass to chattels claim by concluding that no Fourth Amendment violation occurred, and rejected Appellants' claim for interference with prospective economic relations under California law on the merits. That several of Appellants' tort claims were meritless—and that they forfeited the primary argument they now raise in support of a trespass claim based on the initial seizure of their packages—undercuts any argument that Appellants were denied some constitutional entitlement to a judicial forum.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court.

---

[12] That is to say nothing of suits for injunctive relief, which may often be pursued against federal agencies or officers related to ongoing or threatened constitutional violations. Moreover, though as noted Appellants have abandoned on appeal the argument that *Bivens* should be extended here, the district court observed that Appellants had access to an alternative remedial scheme through the Postal Service's Office of the Inspector General. 1-ER-60-61, 1-ER-84-85.

49

Dated: March 4, 2026                  Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Michael A. Keough*
MICHAEL A. KEOUGH
Assistant United States Attorney

Attorneys for Defendant-Appellees
United States of America, Jeff Agster,
Eva Chan, Mark Hodges, and Robin
Lee

50

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 25-3386

I am the attorney or self-represented party.

**This brief contains** | 11,705 | **words, including** | | words

manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated | | .

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Michael A. Keough | **Date** | March 4, 2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** | *Rev. 12/01/22*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form17instructions.pdf

**9th Cir. Case Number(s)** | 25-3386

The undersigned attorney or self-represented party states the following:

☉ I am unaware of any related cases currently pending in this court.

○ I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

○ I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** | s/ Michael A. Keough     **Date** | March 4, 2026

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* [http://www.ca9.uscourts.gov/forms/form15instructions.pdf](http://www.ca9.uscourts.gov/forms/form15instructions.pdf)

**9th Cir. Case Number(s)** | 25-3386

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

ANSWERING BRIEF OF DEFENDANT-APPELLEES
UNITED STATES OF AMERICA, JEFF AGSTER, EVA CHAN, MARK HODGES, AND ROBIN LEE

**Signature** | s/ Michael A. Keough      **Date** | March 4, 2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at [forms@ca9.uscourts.gov](mailto:forms@ca9.uscourts.gov)*